## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Charlotte Russe Holding, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 19-10210 (___)<br><br>(Joint Administration Requested) |

### DEBTORS' APPLICATION FOR AN ORDER, PURSUANT TO 28 U.S.C. § 156(c), BANKRUPTCY RULE 2002(f), AND LOCAL RULE 2002-1(f), APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors (the "Debtors") submit this application (the "Application"), by and through their undersigned counsel, for the entry of an order, substantially in the form attached hereto as **Exhibit C** (the "Proposed Order"), pursuant to section 156(c) of title 28 of the United States Code, Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), appointing Donlin, Recano & Company, Inc. ("DRC") as claims and noticing agent ("Claims and Noticing Agent") in this chapter 11 case, *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors rely on the declaration of Nellwyn Voorhies (the "Voorhies Declaration"), filed contemporaneously herewith. In further support of this Motion, the Debtors submit as follows:

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding Inc., (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456). The Debtors' headquarters are located at 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought herein are section 156(c) of title 28 of the United States Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f).

3.      Pursuant to Local Rule 9013-1(f), the Debtors hereby consent to the entry of a final order or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed with the Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing the above-captioned Chapter 11 cases.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No creditors' committee has been appointed in these cases.  No trustee or examiner has been appointed.

6.      A detailed description of the Debtors' business operations, corporate structure, capital structure, and reasons for commencing this case is set forth in full in the *Declaration of Brian M. Cashman, Chief Restructuring Officer for Charlotte Russe Holding, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which was filed contemporaneously herewith and is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

## RELIEF REQUESTED AND BASIS THEREFOR

7.      The Debtors request entry of an order appointing DRC as the Claims and Noticing Agent for the Debtors in these cases.  DRC's services will include assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these cases.  The Debtors have not yet filed their schedules of assets and liabilities, however, the Debtors anticipate that they have well in excess of 200 creditors and parties in interest, many of whom will require notice and are expected to file proofs of claim in the Debtors' chapter 11 cases.  In view of the number of anticipated claimants, parties requiring notice, and the complexity of the Debtors' business, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

8.      The terms of DRC's retention are set forth in the *Standard Claims Administration and Noticing Agreement*, attached hereto as **Exhibit B** (the "Services Agreement").  However, DRC is seeking approval solely of the terms and provisions of the Services Agreement as set forth in this Application and the Proposed Order.

9.      The Debtors submit that their selection of DRC to act as the Claims and Noticing Agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted on February 1, 2012 (the "Claims and Noticing Agent Protocol"), in that the Debtors have obtained, reviewed and competitively compared engagement proposals from three (3) Court-approved claims and noticing agents to ensure selection through a competitive process.  The Debtors submit, based on the engagement proposals obtained and reviewed, that DRC's rates are competitive and reasonable given DRC's quality of services and expertise.

10.     By separate application, the Debtors will seek authorization to retain and employ DRC as administrative advisor in this chapter 11 case pursuant to section 327(a) of title 11 of the

United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), because the administration of this case will require DRC to perform duties outside the scope of 28 U.S.C. § 156(c).

### DRC'S QUALIFICATIONS

11.     DRC is one of the country's leading chapter 11 administrators with vast experience in noticing and claims processing.  DRC has a proprietary claims management system in which claims are effectively managed for the Office of the Clerk of the Bankruptcy Court (the "Clerk"). The Debtors have selected DRC as the Claims and Noticing Agent because of DRC's abilities and experience serving in such capacity in chapter 11 cases of this size, as well as the reasonableness of its fees.

12.     DRC has provided claims and noticing services in numerous cases in this District, including, most recently: *In re Beauty Brands, LLC, et al.* (Case No. 19-10031(CSS)); *In re David's Bridal, Inc., et al*. (Case No. 18-12635 (LSS)); *In re Open Road Films, LLC, et al*. (Case No. 18-12012 (LSS)); *In re Velocity Holding Company, Inc., et al.* (Case No. 17-12442) (KJC)); *In re Mac Acquisition LLC, et al*. (Case No. 17-12224 (MFW)).

13.     By appointing DRC as the Claims and Noticing Agent in this chapter 11 case, the distribution of notices and the processing of claims will be expedited, and the Clerk will be relieved of the administrative burden of processing claims.

### SERVICES TO BE PROVIDED

14.     This Application pertains only to the work to be performed by DRC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any work to be performed by DRC outside of this scope is not covered by this Application or the Proposed Order.  Specifically, DRC will perform the following tasks in its role as the Claims and Noticing

Agent (collectively, the "<u>Claims and Noticing Services</u>"), as well as all quality control relating thereto:

(a)     Prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, if applicable in this chapter 11 case, (i) notice of the commencement of the chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a sale of the Debtors' assets or a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

(b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and update and make said lists available upon request by a party in interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served;

(g)    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)    Maintain the official claims register for the Debtors (the "Claims Register") on behalf of the Clerk, and upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register, and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

(i)    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(j)    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of DRC, not less than weekly;

(l)    Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

(m)    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(n)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(o)    If the chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk within three days of notice to DRC of entry of the order converting the case;

(p)    Thirty days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing DRC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the chapter 11 case;

(q)     Within seven days of notice to DRC of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the chapter 11 case; and

(r)     At the close of this chapter 11 case, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk.

15.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by DRC.

## PROFESSIONAL COMPENSATION

16.     The Debtors respectfully request that the fees and expenses incurred by DRC in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to, or order of, the Court.

17.     DRC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), proposed counsel for the Debtors, and counsel for any official committee appointed in this chapter 11 case (a "Committee"), if any, monitoring the expenses of the Debtors.

18.     If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

19.     Prior to the Petition Date, DRC received a retainer in the amount of $25,000.00 (the "Retainer").  DRC seeks to first apply the Retainer to all prepetition invoices and to retain any unapplied portion as a retainer throughout the pendency of this case.

20.     As part of the overall compensation payable to DRC under the terms of the Services Agreement, the Debtors have agreed to certain limitations of liability and indemnification obligations, as described in paragraph 7 of the Services Agreement.  Specifically, the Debtors have agreed to indemnify, defend and hold DRC harmless from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges, and expenses as incurred, to which DRC may become subject or involved in any capacity arising out of or relating to the Services Agreement or DRC rendering of services pursuant thereto, regardless of whether DRC is a party thereto; provided, however, that the Debtors shall not have any indemnification obligation for any matters arising out of gross negligence or willful misconduct by DRC.

## DISINTERESTEDNESS

21.     In connection with its retention as the Claims and Noticing Agent, DRC represents in the Voorhies Declaration, among other things, that:

(a)     DRC is not a creditor of any of the Debtors;

(b)     DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c)     By accepting employment in this chapter 11 case, DRC waives any rights to receive compensation from the United States government in connection with the chapter 11 case;

(d)     In its capacity as the Claims and Noticing Agent in this chapter 11 case, DRC will not be an agent of the United States and will not act on behalf of the United States;

(e)     DRC will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f)     DRC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)    In its capacity as the Claims and Noticing Agent in this chapter 11 case, DRC will not intentionally misrepresent any fact to any person;

(h)    DRC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)    DRC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by DRC as the Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk.

DRC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

22.    The Debtors submit that this Application complies with the Claims and Noticing Agent Protocol and conforms to the standard section 156(c) application in use in this Court.  To the extent that there is any inconsistency between this Application, the Proposed Order and the Services Agreement, the Proposed Order shall govern.

## *NUNC PRO TUNC* RELIEF IS APPROPRIATE

23.    Pursuant to the Debtors' request, DRC has served in the capacity as Claims and Noticing Agent since the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that the Claims and Noticing Agent may be compensated for services prior to entry of an order approving DRC's retention.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided herein, because the Claims and Noticing Agent has provided and continues to provide valuable services to the Debtors' estates in the interim period. Courts in this jurisdiction have routinely approved *nunc pro tunc* employment similar to that requested herein in matters comparable to this matter.  *See, e.g.*, *In re Trump Entertainment*

*Resorts, Inc.*, No. 14-12103 (KG) (Bankr. D. Del. Sept 10, 2014) (approving *nunc pro tunc* employment of a claims and noticing agent to perform claims and noticing services); *In re AWI Delaware, Inc.,* No. 14-12092 (KJC) (Bankr. D. Del. Sept. 10, 2014) (same); *In re Dolan Co.,* No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re Sorenson Commc'ns, Inc.,* No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same).  Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Judicial Code, the Local Rules, and the Claims and Noticing Agent Protocol.  Accordingly, the Debtors respectfully request entry of an order pursuant to section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims and Noticing Agent Protocol authorizing the Debtors to retain and employ the Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date.

## NOTICE

24.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (iii) the Prepetition ABL Agent; (iv) Prepetition Term Agent; (v) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (vi) the Office of the United States Attorney General for the District of Delaware; (vii) the Internal Revenue Service; and (viii) any other party entitled to notice under Local Rule 9013-1(m).  As this Motion is seeking "first day" relief, within forty-eight hours of the entry of an order approving this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated:    February 3, 2019

**BAYARD, P.A.**

*/s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Erin R. Fay (No. 5268)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: jalberto@bayardlaw.com
         efay@bayardlaw.com

- and -

**COOLEY LLP**
Seth Van Aalten
Michael Klein
Summer M. McKee
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: svanaalten@cooley.com
         mklein@cooley.com
         smckee@cooley.com

*Proposed Co-Counsel for the Debtors*

## Exhibit A

**Voorhies Declaration**

{BAY:03435523v1}

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Charlotte Russe Holding, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 19-10210 (___)<br><br>(Joint Administration Requested) |

**DECLARATION OF NELLWYN VOORHIES IN SUPPORT**
**OF DEBTORS' APPLICATION FOR AN ORDER, PURSUANT**
**TO 28 U.S.C. § 156(c), BANKRUPTCY RULE 2002(f), AND LOCAL RULE**
**2002-1(f), APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND**
**NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE**

I, Nellwyn Voorhies, under penalty of perjury, declare as follows:

1.      I am the Executive Director of Donlin, Recano & Company, Inc. ("DRC"), with offices located at 6201 15th Avenue, Brooklyn, New York 11219.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the *Debtors' Application for an Order, Pursuant to 28 U.S.C. § 156(c), Bankruptcy Rule 2002(f), and Local Rule 2002-1(f), Appointing Donlin, Recano & Company, Inc. as the Claims and Noticing Agent,* Nunc Pro Tunc *to the Petition Date*, which was filed contemporaneously herewith (the "Application").[2]

---

[1]  The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding Inc., (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456).  The Debtors' headquarters are located at 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

3.     As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), DRC will perform at the request of the Clerk the noticing and claims related services specified in the Application and the Services Agreement.  In addition, at the Debtors' request, DRC will perform such other claims and noticing services specified in the Application.  In performing such services, DRC will charge the Debtors the rates set forth in the Services Agreement, which is attached as **Exhibit B** to the Application.

4.     DRC is one of the country's leading chapter 11 administrators with expertise in claims processing and noticing services.  DRC has a proprietary claims management system in which claims are effectively managed for the Clerk.  Accordingly, I believe that DRC is well qualified to provide experienced claims and noticing services in connection with this chapter 11 case.  DRC serves or has served as the claims and noticing agent in numerous cases in this jurisdiction, including, most recently, the following: *In re Beauty Brands, LLC, et al.* (Case No. 19-10031(CSS)); *In re David's Bridal, Inc., et al.* (Case No. 18-12635 (LSS)); *In re Open Road Films, LLC, et al.* (Case No. 18-12012 (LSS)); *In re Velocity Holding Company, Inc., et al.* (Case No. 17-12442) (KJC)); *In re Mac Acquisition LLC, et al.* (Case No. 17-12224 (MFW)).

5.     DRC represents, among other things, the following:

(a)     DRC is not a creditor of any of the Debtors;

(b)     DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c)     By accepting employment in this chapter 11 case, DRC waives any rights to receive compensation from the United States government in connection with the chapter 11 case;

(d)     In its capacity as the Claims and Noticing Agent in this chapter 11 case, DRC will not be an agent of the United States and will not act on behalf of the United States;

(e)     DRC will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f)     DRC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     In its capacity as the Claims and Noticing Agent in this chapter 11 case, DRC will not intentionally misrepresent any fact to any person;

(h)     DRC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     DRC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by DRC as the Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk.

6.      In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in this chapter 11 case.  The list of Potential Parties in Interest was provided by the Debtors and includes, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, secured creditors, the Debtors' largest unsecured creditors and other parties.  The results of the conflict check were compiled and reviewed by employees of DRC, under my supervision.  At this time, DRC is not aware of any relationship which would present a disqualifying conflict of interest.  Accordingly, to the best of my knowledge, information and belief, DRC and each of its employees are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and neither DRC nor any of its employees hold or represent an interest adverse to the Debtors' estates related to any matter for which DRC will be employed.  Should DRC discover any new relevant facts or relationships

bearing on the matters described herein during the period of its retention, DRC will use reasonable efforts to file promptly a supplemental declaration.

7.      In addition, DRC has identified numerous vendors appearing on the Conflicts List that are also vendors of DRC, but DRC has not in the past, and is not currently, representing any of those vendors.

8.      Certain of DRC's professionals were formerly employed by firms that may be creditors or may provide professional services to parties in interest in these cases.  Such firms include:  Paul Hastings LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP; Kaye Scholer LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Sheppard, Mullin, Richter & Hampton LLP; Baker & McKenzie LLP; Clifford Chance LLP; Hughes Hubbard & Reed LLP; Davis Polk & Wardwell LLP; Levene, Neale, Bender, Yoo & Brill L.L.P.; Blank Rome LLP; Morgan Stanley; Anderson Kill P.C.; Willkie Farr & Gallagher LLP; Dechert LLP; Pryor Cashman LLP; Schulte Roth & Zabel LLP; Kurtzman Carson Consultants LLC; Epiq Bankruptcy Solutions, LLC; Rust Consulting/Omni Bankruptcy; and Wells Fargo Bank. Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

9.      DRC is an affiliate of American Stock Transfer & Trust Company, LLC ("AST"). AST is a global financial communications and stakeholder management company.  Within the AST corporate structure, DRC operates as a separate and independent legal entity.  Given the legal and operational separateness of DRC from AST, DRC does not believe that any relationships that AST and its affiliates maintain would create an interest of DRC that would be materially adverse to the Debtor's estate or any class of creditors or equity security holders.

10.     There may be other creditors of the Debtors that Donlin Recano may have or may be presently representing, but in no event is Donlin Recano representing any other creditor with respect to the Debtors' bankruptcy proceeding.  To the extent I become aware of Donlin Recano having represented any other creditors of the Debtors, I will file a supplemental declaration advising the Court of the same.  To the extent that Donlin Recano discovers any facts bearing on matters described herein, Donlin Recano will supplement the information contained herein.

11.     Notwithstanding anything contained herein, as part of its diverse business, DRC is the noticing, claims, and balloting agent for debtors in numerous cases involving many different creditors (including taxing authorities), professionals, including attorneys, accountants, investment bankers, and financial consultants, some of which may be creditors or represent creditors; and parties-in-interest in these chapter 11 cases.  DRC is currently the claims agent for Peek, Aren't You Curious, Inc., which case is pending in the Northern District of California.  I understand that the Debtor purchased some assets from Peek prior to the bankruptcy filing.  In addition, DRC has in the past and will likely in the future continue working with other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.  Based upon my current knowledge of the parties involved, and to the best of my knowledge, none of these business relations constitute interests adverse to that of the creditors, or the Debtors' estates, with respect to the matter upon which DRC is to be engaged.  Additionally, DRC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these chapter 11 cases.

12.     Based upon the information available to me, I believe that DRC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that DRC and its

personnel: (a) are not creditors, equity security holders, or insiders of the Debtors; (b) are not and

were not, within two years before the date of the filing of these chapter 11 cases, a director, officer,

or employee of the Debtors; and (c) do not have an interest materially adverse to the interests of

the Debtors' estate or any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in, the Debtors. Prior to the filing of these

chapter 11 cases, the Debtors paid DRC a retainer of $25,000.

13.     To the best of my knowledge, information and belief, neither DRC nor any of its

personnel have any relationship with the Debtors that would impair DRC ability to serve as Claims

and Noticing Agent.  DRC may have relationships with certain of the Debtors' creditors as vendors

or in connection with cases in which DRC serves or has served in a neutral capacity as claims and

noticing agent for another chapter 11 debtor.  To the best my knowledge, information and belief,

such relationships are completely unrelated to this chapter 11 case.  DRC's personnel may have

relationships with some of the Debtors' creditors or other parties in interest.  However, to the best

of my knowledge, such relationships, to the extent they exist, are of a personal financial nature and

completely unrelated to this chapter 11 case.  DRC has, and will continue to represent clients in

matters unrelated to this chapter 11 case.  In addition, DRC has had, and will continue to have,

relationships in the ordinary course of its business with certain vendors, professionals and other

parties in interest that may be involved in the Debtors' case in matters unrelated to this case.

14.     DRC will comply with all requests from the Clerk and the guidelines promulgated

by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

15.     The services provided by DRC will be administrative in nature and DRC will not

provide services in the nature of legal representation and/or advice to the Debtors.

16.     In performing the services of claims and noticing agent, DRC will charge the Debtors the rates set forth in the Services Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on February 3, 2019

/s/ Nellwyn Voorhies
Name: Nellwyn Voorhies
Title: Director

**Exhibit B**

**Services Agreement**

{BAY:03435523v1}

## Donlin, Recano & Company, Inc.

## VOTING AND CONSULTING SERVICES AGREEMENT

## TERMS AND CONDITIONS

Donlin, Recano & Company, Inc. (hereinafter called "DRC") agrees to provide Charlotte Russe, Inc., including but not limited to any and all bankruptcy cases filed by any affiliate of Charlotte Russe, Inc. (hereinafter called the "Client") and Client agrees to purchase services upon the terms and conditions and in accordance with "Schedule A", attached hereto, and other provisions stated herein, including but not limited to services to be rendered by DRC in connection with solicitation, calculation and tabulation of votes under any plan of reorganization or liquidation (the "Voting Services"). Client agrees and understands that none of the services constitute legal advice.

1. **CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC rate schedule attached as Schedule A. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment, provided that no such rate adjustment shall occur in January 2019 and that the rates set forth in Schedule A hereto shall not be adjusted until January 2020. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as reasonably determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, pre-approved and necessary travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to Chapter 11 of title 11 of the United States Code, the parties intend that all fees and expenses due under this agreement shall be paid as administrative expenses of the Clients' chapter 11 estate(s). In the event the Clients' bankruptcy case(s) are converted to a Chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated first as a Chapter 7 administrative expense claim and second as a Chapter 11 administrative claim. In the event DRC has performed pre-petition services and/or incurred pre-petition costs which have not otherwise been paid in full at the commencement of the bankruptcy case(s), Client covenants and agrees to file (or cause the filing of) with the court, at the option of DRC, either (i) a motion to assume this Agreement and cure any defaults (in the event DRC is retained pursuant to 11 U.S.C. §§ 327 and 328), or (ii) file a request for the payment of all such unpaid and outstanding fees and costs without prejudice to DRC's retention hereunder.

2. **TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met,

### Donlin, Recano & Company, Inc.

but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**3. INVOICES:**   Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client. Notwithstanding anything contained in this Agreement, the payment terms under this Agreement shall be subject to any order of the Bankruptcy Court (as defined below) pursuant to (i) 11 U.S.C. § 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals or (ii) 11 U.S.C. § 330 Granting Interim or Final Compensation and Reimbursement of Expenses of Professionals.

**4. STORAGE:**   Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**5. E-MAIL COMMUNICATIONS:**   DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**6. SUPPLIES:**   All supplies shall be furnished at Client's expense.

**7. WARRANTY AND RELIANCE:**   Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the

### Donlin, Recano & Company, Inc.

accuracy of all programs, data and other information it submits to DRC (including all information for preparation of the Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). All Schedules and Statements filed on behalf of, or by, the Client are reviewed and ultimately approved by the Client, and DRC bears no responsibility for the accuracy or contents therein. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**8. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 3 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 3 and 10 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 11 U.S.C. §§ 327 (a) and 328, then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement.

**9. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**10. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**11. CONFIDENTIALITY**: Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may,

### Donlin, Recano & Company, Inc.

upon not less than five (5) business days' written notice to the other party, release the required information.

**12. <u>OWNERSHIP OF PROGRAMS</u>:** Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**13. <u>SYSTEMS IMPROVEMENTS</u>:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**14. <u>UNUSUAL MEASURES</u>:** Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**15. <u>JURISDICTION</u>.** This Agreement is subject to the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**16. <u>FORCE MAJEURE</u>.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**17. <u>NOTICE</u>.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219, Attention: Nellwyn Voorhies, Esq.; if to the Client, to Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attention: Seth Van Aalten, Esq.

**18. <u>GOVERNING LAW</u>.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**19. <u>SEVERABILITY</u>.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.



## Donlin, Recano & Company, Inc.

**20.  ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

**21. GENERAL**:  The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client.  Client will not employ any DRC employee within two (2) years from the termination of this Agreement.   The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument.  A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy.  The Client shall file an application with the Bankruptcy Court under 11 U.S.C. §§ 327(a) and 328 seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC.  If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, NY 11219

By:        _____

Signature:    _____

Title:       _____

Date:       _____


Accepted and Approved:

**Charlotte Russe, Inc.**

By:        _Jenny J. Ming_____

Signature:    _____

Title:       _Pres & CEO_____

Date:       _1/14/2019_____

This Agreement is subject to the terms and conditions set forth herein.   Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

## Donlin, Recano & Company, Inc.

### SCHEDULE A
### Charlotte Russe
### Fee Schedule

| Professional Service | Hourly Rates |
|---|---|
| Executive Staff | No charge |
| Senior Bankruptcy Consultant | $117 - $149 |
| Case Manager | $81 - $117 |
| Technology/Programming Consultant | $54 - $90 |
| Consultant/Analyst | $45 - $72 |
| Clerical | $22 - $41 |

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.08 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Solicitation, Balloting, Schedule/SOFA | |
|---|---|
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $81 - $158 as needed |
| Public Securities Solicitation | N/A |
| Schedule/SOFA preparation | $81 - $176 |

| Claims Docketing and Management | |
|---|---|
| Website Development | $81 per Hour |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.05 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Data Room Services | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Set-up & Hosting WAIVED |
| Data Room Development | $81 per Hour |

| Miscellaneous | |
|---|---|
| Strategic Communications | $356 per Hour |
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $59 per hour |

## Donlin, Recano & Company, Inc.

### STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

### TERMS AND CONDITIONS

**Donlin, Recano & Company, Inc.** (hereinafter called "DRC") agrees to provide Charlotte Russe, Inc., including but not limited to any and all bankruptcy cases filed by any affiliate of Charlotte Russe, Inc. (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. SERVICES:** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. CHARGES:** All charges shall be based upon the time and materials incurred by DRC, billed at the DRC rate schedule attached hereto as Schedule A. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment, provided that no such rate adjustment shall occur in January 2019 and that the rates set forth in Schedule A hereto shall not be subject to adjustment until January 2020. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as reasonably determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, pre-approved and requested travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. TRANSPORTATION OF DATA:** Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**Donlin, Recano & Company, Inc.**

4. **EVERGREEN RETAINER & INVOICES**:    At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $25,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer.  Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client.  DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer.  Client shall pay the charges set forth in Schedule A, attached hereto.  DRC shall invoice the Client monthly for all services rendered during the preceding month.  Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing.  Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay").  Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC.  Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client.  The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute.  Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses.  The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach").  Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

5. **STORAGE**:  Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

6. **E-MAIL COMMUNICATIONS**:  DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use.  Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free.  It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

7. **SUPPLIES**:  All supplies shall be furnished at Client's expense.

8. **WARRANTY AND RELIANCE**:  Client acknowledges and agrees that DRC will take direction from the

### Donlin, Recano & Company, Inc.

Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. CONFIDENTIALITY**: Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the

DRC Donlin Recano

services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

13. **OWNERSHIP OF PROGRAMS**:  Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC.  All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

14. **SYSTEMS IMPROVEMENTS**:  DRC's policy is to provide continuous improvements in the quality of service to its clients.  DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

15. **UNUSUAL MEASURES**:  Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

16. **JURISDICTION.**  In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

17. **FORCE MAJEURE.**  Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

18. **NOTICE.**  Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier.  Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows:  if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, New York, New York 11219, Attention: Nellwyn Voorhies, Esq.; if to the Client, to Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attention: Seth Van Aalten, Esq.

19. **GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

20. **SEVERABILITY.**  All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

21. **ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall

## Donlin, Recano & Company, Inc.

bind and inure to the benefit of any successors or assigns thereto.

**22. GENERAL**: The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By: _____

Signature: _____

Title: _____

Date: _____


Accepted and Approved:

**Charlotte Russe, Inc.**

By: _JENNY V. MING_____

Signature: _____

Title: _PRES & CEO_____

Date: _1/14/2019_____

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

Donlin, Recano & Company, Inc.

**SCHEDULE A**
**Charlotte Russe**
**Fee Schedule**

| Professional Service | Hourly Rates |
|---|---|
| Executive Staff | No charge |
| Senior Bankruptcy Consultant | $117 - $149 |
| Case Manager | $81 - $117 |
| Technology/Programming Consultant | $54 - $90 |
| Consultant/Analyst | $45 - $72 |
| Clerical | $22 - $41 |

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.08 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Solicitation, Balloting, Schedule/SOFA | |
|---|---|
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $81 - $158 as needed |
| Public Securities Solicitation | N/A |
| Schedule/SOFA preparation | $81 - $176 |

| Claims Docketing and Management | |
|---|---|
| Website Development | $81 per Hour |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.05 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Data Room Services | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Set-up & Hosting WAIVED |
| Data Room Development | $81 per Hour |

| Miscellaneous | |
|---|---|
| Strategic Communications | $356 per Hour |
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $59 per hour |

DRC | Donlin Recano

## Exhibit C

## Proposed Order

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:

Charlotte Russe Holding, Inc., *et al.*,[1]

Debtors.

Chapter 11

Case No.: 19-10210 (___)

(Joint Administration Requested)

### ORDER PURSUANT TO 28 U.S.C. § 156(c), BANKRUPTCY RULE 2002(f), AND LOCAL RULE 2002-1(f), APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the application (the "Application")[2] of the above-captioned debtors (the "Debtors") for the entry of an order, pursuant to 28 U.S.C. § 156(c), Bankruptcy Rule 2002(f) and Local Rule 2002-1(f), appointing DRC as claims and noticing agent ("Claims and Noticing Agent"), *nunc pro tunc* to the Petition Date; and upon consideration of the Application and all pleadings related thereto, including the Voorhies Declaration and the First Day Declaration; and it appearing that no other or further notice of the Application is required; and the Court having found that (i) it has jurisdiction to consider the Application in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) the Court may enter a final order consistent with Article III of the United States Constitution, (iv) venue of this proceeding and the Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409, (v) the Debtors have estimated that there are hundreds of creditors in this

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding Inc., (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456). The Debtors' headquarters are located at 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

{BAY:03435523v1}

chapter 11 case, many of which may require notice or file proofs of claim, (vi) the provision of notice and the receipt, docketing and maintenance of proofs of claim would be unduly time consuming and burdensome for the Clerk, (vii) the Court is authorized under 28 U.S.C. § 156(c) to use, at the Debtors' expense, outside agents to provide such services, (viii) DRC has the experience and capability to provide such services, (ix) due and proper notice of the Application having been given, and (x) DRC is a "disinterested person" as that term is defined under the Bankruptcy Code; and it appearing that the relief requested in the Application and provided for herein is in the best interest of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      Notwithstanding the terms of the Services Agreement, the Application is approved solely as set forth herein.

2.      The Debtors are authorized to retain DRC as the Claims and Noticing Agent effective *nunc pro tunc* to the Petition Date under the terms of the Services Agreement, and DRC is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case, and all related tasks, all as described in the Application.

3.      DRC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case and is authorized and directed to maintain an official claims register for the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      DRC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      DRC is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate DRC in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by DRC and the rates charged for each, and to reimburse DRC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for DRC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      DRC shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any Committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.

8.      To the extent any dispute arises relating to the Services Agreement or DRC's monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute, and, if a resolution is not achieved, the parties may seek resolution of the matter from the Court.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of DRC under this Order shall be an administrative expense of the Debtors' estate.

10.     DRC may hold the Retainer under the Services Agreement during this chapter 11 case as security for the payment of fees and expenses incurred under the Services Agreement in connection with this case.

11.     The Debtors shall indemnify DRC under the terms of the Services Agreement, subject to the following clarifications:

      (a)     DRC shall not be entitled to indemnification, contribution or reimbursement pursuant to the Services Agreement for services other than the Claims and

Noticing Services, unless such services and the indemnification, contribution or reimbursement therefor are approved by this Court;

(b)     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from that person's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of DRC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution or reimbursement under the terms of the Services Agreement as modified by this Order; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (such order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the chapter 11 case, DRC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement, including without limitation the advancement of defense costs, DRC must file an application therefor in this Court, and the Debtors may not pay any such amounts to DRC before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by DRC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify DRC. All parties in interest shall retain the right to object to any demand by DRC for indemnification, contribution, or reimbursement.

12.     In the event DRC is unable to provide the services set out in this order, DRC will immediately notify the Clerk and counsel for the Debtors and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and counsel for the Debtors.

13.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by DRC but is not specifically authorized by this Order.

14.     The Debtors and DRC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

15.     Notwithstanding any term in the Services Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

16.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

17.     DRC shall not cease providing claims processing services during this chapter 11 case for any reason, including nonpayment, without an order of this Court.

18.     In the event of any inconsistency between the Services Agreement, the Application and this Order, this Order shall govern.


Dated: _____, 2019
       Wilmington, Delaware

_____
United States Bankruptcy Judge