## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| Charlotte Russe Holding, Inc. *et al.*,[1] | Case No.: 19-10210 (____) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' COMBINED MOTION FOR ENTRY OF AN ORDER (I) APPROVING BID AND SALE PROCEDURES, (II) APPROVING CERTAIN BIDDING PROTECTIONS, (III) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (IV) SCHEDULING AN AUCTION AND SALE HEARING, AND (V) APPROVING THE SALE

Charlotte Russe Holding, Inc. and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion"), pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of:

(i)     an order (the "Bidding Procedures Order"), substantially in the form attached hereto as **Exhibit A**:[2]

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding, Inc. (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456). The Debtors' headquarters are located at 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121.

[2] As is further set forth herein, and in accordance with milestones established by the Debtors' proposed post-petition financing facility, the Debtors are pursuing a dual track process that requires the selection of either a going concern stalking horse bid or a full chain liquidation stalking horse bid prior to the date of the proposed Bidding Procedures Hearing. The proposed deadlines for the sale process vary depending on which path the Debtors pursue. As such, the

(a)      approving proposed auction and bid procedures (the "<u>Bidding Procedures</u>"), in connection with the sale (the "<u>Sale</u>") of substantially all of the Debtors' assets (collectively, the "<u>Assets</u>");[3]

(b)      scheduling an auction (the "<u>Auction</u>") and a final sale hearing (the "<u>Sale Hearing</u>") in connection with the Sale;

(c)      establishing procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale, including notice of proposed cure amounts (the "<u>Assumption and Assignment Procedures</u>"), and approving the form and manner of notice of the proposed assumption and assignment of executory contracts and unexpired leases in the form attached hereto as **Exhibit B** (the "<u>Assumption and Assignment Notice</u>"); and

(d)      approving the form and manner of notice of the Auction and the Sale Hearing, including the form and manner of notice (the "<u>Auction and Hearing Notice</u>") attached hereto as **Exhibit C**; and

(ii)      an order (the "<u>Sale Order</u>"):[4]

(a)      authorizing the Sale to the party or parties that are the successful bidders at the Auction, free and clear of all liens, claims and encumbrances, except for certain assumed liabilities;

---

Debtors will submit and serve an updated proposed Bidding Procedures Order prior to the Bidding Procedures Hearing that reflects either a Going Concern Path or a Liquidation Path (as defined herein).

[3] Contemporaneously herewith, the Debtors are filing *the Debtors' Emergency Motion for Interim and Final Orders (i) Authorizing the Commencement of Store Closing Sales in Accordance with the Store Closing Agreement and Sale Guidelines, with such Sales to be Free and Clear of All Liens, Claims and Encumbrances; (ii) Authorizing the Assumption of the Store Closing Agreement; and (iii) Granting Related Relief* (the "<u>Store Closing Motion</u>"). The Assets as defined herein do not include the assets and merchandise set forth in the Store Closing Motion.

[4] The Debtors propose to file a proposed form of the Sale Order no later than 14 days prior to the Sale Hearing, subject to modifications by the Debtors and the Successful Bidders following the Auction.

(b)    authorizing the assumption and assignment, or rejection, as the case may be, of certain executory contracts and unexpired leases in connection with the Sale; and

(c)    granting certain related relief as described herein.

In support of this Motion, the Debtors incorporate the statements contained in the (a) *Declaration of Brian M. Cashman, Chief Restructuring Officer of Charlotte Russe Holding, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[5] filed contemporaneously herewith, and further respectfully represent as follows:

## JURISDICTION

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.    The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1.

---

[5] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

## BACKGROUND

4.     On the date hereof (the "Petition Date"), each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.     The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     Founded in 1975, Charlotte Russe is a specialty fashion retailer of young women's apparel and accessories.   Headquartered in San Diego, California, the Debtors sell their merchandise to customers in the contiguous 48 states, Hawaii and Puerto Rico through their online store and 512 brick-and-mortar stores located in various regional malls, outlet centers, and lifestyle centers.

7.     In addition, the Debtors acquired the Peek brand in 2016, which offers playfully inspired designer clothing for babies, boys and girls ranging in age from infant to 12 years old. The Peek brand allows the Debtors to reach a secondary market, offering an array of children's apparel and shoes as well as toys and accessories.  The Debtors operate ten Peek store locations in seven states as well as an e-commerce website, www.peekkids.com.  Peek is also distributed at wholesale to a few third-party retailers, most significantly Nordstrom.

8.     As is further discussed in the First Day Declaration, the Debtors commenced these Cases to either (i) effectuate the Sale of the Debtors' Assets pursuant to a Court-approved bidding and auction process; or (ii) otherwise dispose of their Assets pursuant to store closing sales and other value maximizing transactions.

9.     By this Motion, the Debtors seek approval of (i) Bidding Procedures in connection with a Sale of substantially all of the Debtors' Assets, to market and sell the balance of the

Debtors' business and assets through a section 363 asset sale process, which process may include a stalking horse going concern bid or liquidation stalking horse bid subject to the terms of the Bidding Procedures, the DIP Order and the DIP Documents, and (ii) approval of a sale to the successful bidder or bidders following such process.

## I.    **Prepetition Sale and Marketing Efforts**

10.    The Debtors retained Guggenheim Securities, LLC ("Guggenheim Securities") as their investment banker in December 2018 to explore possible strategic alternatives.  The Debtors (with the assistance of Guggenheim Securities) began testing the market for potential purchasers of substantially all of the Debtors' assets on a going concern basis.  The Debtors (with the assistance of Guggenheim Securities) cast a wide net in soliciting interest from potential purchasers.

11.    While doing so, the Debtors' financial condition continued to deteriorate to the point that they can no longer operate in the ordinary course without immediate access to additional financing.  Unfortunately, the Debtors' assets cannot adequately collateralize additional financing, and in order to sustain further operations (including payment of payroll and inventory purchases), the Debtors are left with no choice but to immediately seek the Court's approval of the sale of substantially all of their assets through the consummation of one or more transactions.

12.    As of the Petition Date, certain potential buyers have already signed non-disclosure agreements and begun due diligence in consideration of a potential acquisition of a material portion of the Debtors' business operations.  In addition, an electronic data room has been made available for potential bona fide bidders.  Despite some interest, no party has yet submitted a final proposal for a sale transaction.  In order to finalize an already robust pre-petition marketing and sales process, the Debtors have negotiated a timeline for the sale of their business that will provide

existing potential going concern bidders the opportunity to finalize and submit a bid while simultaneously obtaining liquidation bids for the Debtors' assets.  The Debtors and their advisors believe that this process is appropriate under the circumstances, particularly given the extensive pre-petition marketing, and that it will maximize value for all stakeholders.

**II.**    **The Proposed Sale Process**

13.    Among other things, the First Day Motions are designed to meet the Debtors' goals of: (i) continuing their operations in chapter 11 with as little disruption and loss of productivity and value as possible; (ii) maintaining the confidence and support of their customers, employees, vendors and service providers; and (iii) establishing procedures for the smooth and efficient administration of these Cases.  Through these chapter 11 proceedings, the Debtors will continue their turn-around and marketing efforts towards the goal of consummating a going-concern sale, or if necessary, a liquidation.

14.    Accordingly, through this Motion, the Debtors seek the approval of an expedited sale process that provides the Debtors with an opportunity to obtain a going concern bid.  The Debtors continue to believe that, if available, a going concern sale would provide the best result for all interested parties (the "Going Concern Path").

15.    In accordance with the milestones (the "Sale Milestones") established by the Debtors' proposed DIP facility (the "DIP Facility"), the Debtors are required to obtain a firm commitment from a Going Concern Stalking Horse Bidder (as defined below) by February 17, 2019, and an order approving the Going Concern Stalking Horse Bid (as defined below) by February 25, 2019.  In the event that no such commitment or order is obtained by the respective dates, the Sale Milestones require the Debtors to pursue a full chain liquidation pursuant to the timeline set forth herein (the "Liquidation Path") in order to maximize value for all stakeholders.

16.     In light of the foregoing, the Debtors propose the following deadlines in connection with their post-petition Sale process:

| Proposed Action | Liquidation Path | Going Concern Path |
|---|---|---|
| **Deadline to Obtain Stalking Horse Agreement for Liquidation Sale on Equity Bid Basis Pending Court Confirmation** | **February 17, 2019** | |
| **Deadline to Obtain Firm Commitment Stalking Horse for Going Concern Sale Pending Court Confirmation –** *If Obtained, Going Concern Path Available* | **February 17, 2019** | |
| **Bidding Procedures Hearing** | **February 19, 2019** | |
| **Deadline for Debtors to File Notice of Proposed Cure** | *N/A* | **February 20, 2019** |
| **Deadline to Object to Proposed Cure and General Sale Objections** | **March 4, 2019 (General Sale Objections Only)\*** | **March 6, 2019** |
| **Deadline for Bids** | **March 3, 2019** | **March 7, 2019** |
| **Deadline to Notify Potential Bidders of Qualified Status** | **March 4, 2019** | **March 8, 2019** |
| **Auction (if held)** | **March 5, 2019** | **March 11, 2019** |
| **Deadline to Object to Adequate Assurance** | *N/A* | **March 13, 2019** |
| **Sale Hearing** | **March 6, 2019** | **March 13, 2019** |
| **Deadline to Close Sale** | **March 7, 2019** | **March 14, 2019** |

\*The Debtors do not anticipate any contracts or leases will be assumed pursuant to the Liquidation Path, and therefore, no cure objections will need to be filed.

17.     The Debtors propose to sell the Assets free and clear of liens, claims and encumbrances, and if the Going Concern Path is pursued, contemplate the potential assumption and assignment of certain executory contracts and unexpired leases in connection therewith.  As outlined above, with the assistance of Berkeley Research Group, LLC ("BRG") and Guggenheim Securities, the Debtors anticipate engaging in a comprehensive post-petition marketing process for either a going concern transaction (the "Going Concern Transaction") or a full chain liquidation (the "Liquidation Transaction") pursuant to section 363 of the Bankruptcy Code with financial and strategic buyers.  The proposed Bidding Procedures are designed to permit the Debtors to pursue any available transaction to maximize the value of the Debtors' assets for the benefit of their

estates.  Moreover, for the reasons set forth in the First Day Declaration, the Debtors believe that the proposed deadlines summarized above provide these estates with a full opportunity to market the Debtors' business as a going concern or a full chain liquidation and maximize value for all stakeholders.

## RELIEF REQUESTED AND BASIS FOR RELIEF

18.    By this motion, the Debtors seek entry of the Bidding Procedures Order:

    a.    approving (i) the Debtors' proposed Bidding Procedures for marketing the Assets, which procedures are attached as Annex 1 to the Bidding Procedures Order; (ii) the Auction and Hearing Notice; and (iii) if a Going Concern Stalking Horse Bid is obtained in accordance with the Sale Milestones, the Assumption and Assignment Notice;

    b.    if a Going Concern Stalking Horse Bid is obtained in accordance with the Sale Milestones, approving procedures to determine cure amounts for the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale;

    c.    establishing March 3, 2019 at 4:00 p.m. (prevailing Eastern Time) as the deadline for the submission of liquidation bids (the "Liquidation Bid Deadline") or establishing March 7, 2019 at 4:00 p.m. (prevailing Eastern Time) as the deadline for the submission of going concern bids (the "Going Concern Bid Deadline");

    d.    scheduling the Auction, if necessary, for the Liquidation Path, no later than March 5, 2019 or, for the Going Concern Path, no later than March 11, 2019; and

    e.    scheduling the Sale Hearing for March 6, 2019 for the Liquidation Path or March 13, 2019 for the Going Concern Path, subject to the Court's availability, to consider the Sale of the Assets to the Buyer or such other party that is the successful bidder at the Auction.

19.    In addition, the Debtors respectfully request the entry of the Sale Order:

    a.    approving the Sale of all or any of the Assets to such party that is the successful bidder at the Auction;

    b.    if a Going Concern Stalking Horse Bid is obtained in accordance with the Sale Milestones, approving the assumption and assignment

of executory contracts and unexpired leases in connection with the Sale;

c.      finding that the party that is the successful bidder is a "good faith purchaser," as that term is defined in section 363(m) of the Bankruptcy Code, and has not violated section 363(n) of the Bankruptcy Code;

d.      waiving the 14 day stay requirements of Bankruptcy Rules 6004(h) and 6006(d); and

e.      granting certain related relief.

## I.      **The Proposed Bidding Procedures.**[6]

20.      The Debtors are requesting that the Court approve Bidding Procedures for the Sale of the Assets with a final sale hearing (the "Sale Hearing") to occur either (x) no later than March 6, 2019 (the "Liquidation Sale Hearing") if the Liquidation Path is pursued or, (y) no later than March 13, 2019 (the "Going Concern Sale Hearing") if the Going Concern Path is pursued.[7]  The following is a summary of the Debtors' proposed Bidding Procedures as required by Local Rule 6004-1.

21.      Participation Requirements. Unless otherwise ordered by the Court, to participate in the bidding process for either the Liquidation Path or the Going Concern Path, each person or entity (each, an "Interested Party") will be required to deliver (unless previously delivered) the following materials to (a) Charlotte Russe, Inc., 575 Florida Street, San Francisco, CA 94110 (Attn: Marie Satterfield, Esq.), email: marie.satterfield@charlotterusse.com; (b) counsel to the Debtors, (i) Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Seth Van Aalten, Esq. and Michael A. Klein, Esq.), email: svanaalten@cooley.com and

---

[6] Unless explicitly set forth herein, the proposed Bidding Procedures are the same regardless of whether the Debtors pursue the Liquidation Path or the Going Concern Path.

[7] The form of Bidding Procedures Order will contain dates proposed by the Debtors. These dates will be subject to the availability of the Court and may change.

mklein@cooley.com; and (ii) Bayard, P.A., 600 North King Street, Suite 400, P.O. Box 25130, Wilmington, DE 19899 (Attn: Justin Alberto, Esq. and Erin Fay, Esq.) email: jalberto@bayardlaw.com and efay@bayardlaw.com; (c) BRG, 75 State Street, Boston, MA 02109 (Attn: Brian Cashman), email: bcashman@thinkbrg.com; and (d) Guggenheim Securities, LLC, 330 Madison Avenue, New York, NY 10017 (Attn: Stuart Erickson and Stephen Preefer), email:stuart.erickson@guggenheimpartners.com and stephen.preefer@guggenheimpartners.com, so as to be received no later than the Bid Deadline:

     a. an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

     b. a statement and other factual support demonstrating to the Debtors' satisfaction (determined following consultation with the Consultation Parties)[8] a *bona fide* interest in purchasing or liquidating the Assets;

     c. sufficient information, as determined by the Debtors, to allow the Debtors to determine that the Interested Party has the financial wherewithal, and any required internal corporate, legal or other authorizations, to complete a Going Concern Transaction or a Liquidation Transaction, as applicable (a "Sale Transaction"), including financial statements of the Interested Party (or such other form of financial disclosure reasonably acceptable to the Debtors in their discretion); and

     d. the items comprising a bid.

A person or entity that has a *bona fide* interest in any of the Assets and delivers the required information (other than the bid) to the Debtors is hereinafter referred to as a "Potential Bidder."

---

[8] The "Consultation Parties" shall be: (A) the professionals retained by any statutory committee appointed in the Debtors' Cases (each a "Committee"); (B) counsel to Bank of America, N.A., as Prepetition ABL Agent and DIP Agent, (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Julia Frost-Davies, Esq. and Christopher L. Carter, Esq.), email: julia.frost-davies@morganlewis.com and christopher.carter@morganlewis.com; and (ii) Richards, Layton & Finger, PA, One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq.), email: collins@rlf.com; (C) counsel to Jefferies Finance LLC, as Prepetition Term Agent, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael Collins Rupe, Esq. and W. Austin Jowers, Esq.), email: mrupe@kslaw.com and ajowers@kslaw.com; and (D) counsel to certain of the Prepetition Term Loan Lenders (collectively, the "Steering Committee"), King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael Collins Rupe, Esq. and W. Austin Jowers, Esq.), email: mrupe@kslaw.com and ajowers@kslaw.com).

After a Potential Bidder delivers all of the materials required above (other than the bid), the Debtors will allow each such Potential Bidder access to the data room.

22.    <u>Stalking Horse Bids</u>.  The Bidding Procedures contemplate that the Debtors will continue to solicit "stalking horse" bids (a "<u>Stalking Horse Bid</u>" and each entity, a "<u>Stalking Horse Bidder</u>") for both the Liquidation Path and the Going Concern Path, which bid or bids (each a "<u>Liquidation Stalking Horse Bid</u>" or "<u>Going Concern Stalking Horse Bid</u>" and any asset purchase agreement memorializing the proposed transaction set forth in the Liquidation Stalking Horse Bid or Going Concern Stalking Horse Bid, a "<u>Liquidation Stalking Horse APA</u>" or "<u>Going Concern Stalking Horse APA</u>") will be binding on such bidder (the "<u>Liquidation Stalking Horse Bidder</u>" or "<u>Going Concern Stalking Horse Bidder</u>") and set the floor for all Qualified Bids for applicable Assets at the Auction pursuant to the Liquidation Path (the "<u>Liquidation Auction</u>") or the Auction pursuant to the Going Concern Path (the "<u>Going Concern Auction</u>").

23.    In the event that following consultation with the Consultation Parties, and with the consent of the DIP Agent, the Debtors obtain one or more Going Concern Stalking Horse Bid(s) on or before February 17, 2019 (the "<u>Stalking Horse Bid Deadline</u>", applicable to either the Going Concern Path or Liquidation Path), the Debtors will announce the designation of such Going Concern Stalking Horse Bidder by filing a notice (the "<u>Going Concern Stalking Horse Bid Notice</u>") on the Court's docket containing the identity of the Going Concern Stalking Horse Bidder and the Assets that are the subject of the Going Concern Stalking Horse Bid(s) and attaching any agreement accompanying the Going Concern Stalking Horse Bid as may be agreed between the Debtors and the Going Concern Stalking Horse Bidder, subject to the consent of the DIP Agent.

24.    In the event that a Going Concern Stalking Horse Bidder is identified prior to the Stalking Horse Bid Deadline, following consultation with the Consultation Parties, the Debtors

may seek Court approval, at the Bidding Procedures Hearing or on shortened notice thereafter, to provide customary bid protections to the Going Concern Stalking Horse Bidder, including but not limited to, a break-up fee and/or expense reimbursement.

25.    <u>Determination by the Debtors.</u>  Following consultation with the Consultation Parties, the Debtors will (a) determine, with the assistance of their advisors, whether any person or entity is a Qualified Bidder, (b) receive bids from Qualified Bidders, (c) evaluate and negotiate such bids, and (d) conduct the Liquidation Auction or Going Concern Auction; provided that the Debtors shall not consult with any Consultation Party (or its advisors) who is also a Potential Bidder.  Except as concerns the Consultation Parties as provided herein below, neither the Debtors nor their representatives will be obligated to furnish any information relating to the Debtors to any person who is not a Potential Bidder.

26.    <u>Due Diligence.</u>  The Debtors will establish an electronic data room into which substantial information about the Debtors and their businesses will be deposited.  All Potential Bidders and the Consultation Parties will be granted full access to the data room.  The Debtors, with the assistance of BRG and Guggenheim Securities, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders and the Consultation Parties.  In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to (a) all Potential Bidders, and (b) all Consultation Parties.  Except as provided above with respect to access to the data room, neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets or the Other Assets to any party; provided that nothing herein is intended to modify the Debtors' obligations to provide information to the DIP Agent, the Prepetition ABL Agent, or the Prepetition

Term Agent pursuant to any orders approved by this Court approving any debtor-in-possession financing for, or any use of cash collateral by, the Debtors (the "DIP Order").

27.     Bid Deadline.  On or before the Liquidation Bid Deadline or the Going Concern Bid Deadline, a Potential Bidder that desires to make a bid is required to deliver written copies of its bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) format to the Debtors and their advisors.  As soon as reasonably practicable following the Liquidation Bid Deadline or Going Concern Bid Deadline, but in no event later than one day after the applicable Bid Deadline, the Debtors will identify the Baseline Bid(s) and provide to the Consultation Parties copies of all Qualified Bids (with such distribution permissible by electronic means).

28.     Bid Requirements.  All bids must: (a) identify the legal name of the Potential Bidder (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transaction); (b) with respect to bids for a Going Concern Transaction for any portion of the Assets, provide that the Potential Bidder offers to purchase the assets at the purchase price and upon the terms and conditions set forth in a copy of an asset purchase agreement enclosed therewith, marked to show any proposed amendments and modifications to the form agreement annexed hereto as **Exhibit D** (the "Marked Agreement"); (c) with respect to bids for a Liquidation Transaction, be presented on an equity/guaranteed basis, supported by cash consideration in an amount and payable at such times as is consistent with the terms of the proposed agency agreement provided by the Debtors to prospective Liquidation Transaction bidders or other agreement providing for the liquidation of the Debtors' stores; (d) state that all necessary filings under applicable regulatory, antitrust and other laws will be made (pursuant to the terms and conditions in the applicable bid documents) and that payment of the fees associated with such filings will be made by the Potential Bidder; (e) be formal, binding

and unconditional (except for those conditions expressly set forth in the applicable bid documents), and not subject to any due diligence and are irrevocable until (x) pursuant to the Liquidation Path, the later of March 16, 2019 and the first business day following the closing of the Sale Transaction or (y) pursuant to the Going Concern Path, the later of March 14, 2019 and the first business day following the closing of the Sale Transaction; (f) include a commitment to close the transactions contemplated by the bid no later than March 16, 2019 pursuant to the Liquidation Path or March 14, 2019 pursuant to the Going Concern Path; (g) other than as may be exclusively applicable to either a Liquidation Stalking Horse Bidder or a Going Concern Stalking Horse Bidder, does not entitle such Potential Bidder to a breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and include a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets; (h) be accompanied by a cash deposit to an escrow account selected by the Debtors equal to 10% of the gross cash consideration payable at closing pursuant to the applicable bid documents (the "Good Faith Deposit"); and (i) be received by the Liquidation Bid Deadline or Going Concern Bid Deadline.

29.     In addition, in the event that a Going Concern Stalking Horse Bid is selected prior to the Stalking Horse Bid Deadline, all subsequent bids must provide consideration to the Debtors of at least the sum of (i) the Stalking Horse Bid, (ii) any break-up fee or expense reimbursement approved by the Court, and (iii) a reasonable minimum overbid amount to be calculated in the Debtors' reasonable discretion (as may be determined by the Debtors following consultation with the Consultation Parties) (the "Stalking Horse Overbid").

30.     A Potential Bidder must accompany its bid with: (a) written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set

forth in the applicable bid documents), or such other evidence of ability to consummate the transaction contemplated by the bid documents (and, as applicable, to provide adequate assurance of future performance of all obligations to be assumed in such Sale Transaction) as the Debtors may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; (c) a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; and (d) if the Qualified Bid includes a Marked Agreement that is not executed, a signed statement that such bid is irrevocable until the later of (x) March 16, 2019 and the first business day following the closing of the Sale Transaction pursuant to the Liquidation Path or (y) March 14, 2019 and the first business day following the closing of the Sale Transaction pursuant to the Going Concern Path.  A bid received from a Potential Bidder for any portion of the Assets that is determined by the Debtors to meet the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits such a Qualified Bid will be considered a "Qualified Bidder."  The Debtors may, in their discretion, withdraw some or all of the Assets from the Auction or Sale at any time before entry of an order approving a Sale of the Other Assets to a Qualified Bidder.  For the avoidance of doubt, the DIP Agent and the Prepetition Agents shall each be deemed to be a Qualified Bidder for all purposes, and shall be entitled (together with their respective retained professionals) to participate in the Auction.  Further, for the avoidance of doubt, the DIP Agent and the Prepetition Agents shall each be entitled to credit bid for the Assets at the Auction in accordance with their respective rights under section 363(k) of the Bankruptcy Code.

31.     The Debtors may value a Qualified Bid based upon any and all factors that the Debtors deem pertinent, including, among others: (a) the purported amount of the Qualified Bid, including non-cash consideration, if applicable; (b) the value to be provided to the Debtors under the Qualified Bid; (c) contingencies with respect to the Sale Transaction and the ability to close the proposed Sale Transaction on a basis acceptable to the Debtors, and any incremental costs to the Debtors in closing delays; (d) the ability to obtain any and all necessary antitrust or other applicable regulatory approvals for the proposed transaction; and (e) any other factors the Debtors may deem relevant (as may be determined by the Debtors following consultation with the Consultation Parties).

32.     Baseline Bids. Qualified Bidders that have submitted Qualified Bids are eligible to participate in the Liquidation Auction or the Going Concern Auction.  Following consultation with the Consultation Parties, the Debtors will select what they determine to be the highest and/or otherwise best Qualified Bid or combination of Qualified Bids for any portion of the Assets (the "Baseline Bid(s)") to serve as the starting point at the Liquidation Auction or the Going Concern Auction taking into account all relevant considerations, including the financial condition of the applicable bidder and certainty of closing.

33.     Auction. If at least one Qualified Bid in respect of the Assets is received by the Bid Deadline, the Debtors will conduct the Auction.  If the Liquidation Path is pursued, the Liquidation Auction will take place at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 on March 5, 2019 at 10:00 a.m. (prevailing Eastern Time) or such other place or time as the Debtors may notify Qualified Bidders who have submitted Qualified Bids.  If the Going Concern Path is pursued, the Going Concern Auction will take place at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 on March 11, 2019 at 10:00 a.m. (prevailing

Eastern Time) or such other place or time as the Debtors may notify Qualified Bidders who have submitted Qualified Bids. Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose (following consultation with the Consultation Parties). At the Auction, participants will be permitted to increase their bids and improve their terms; provided that any such increased or improved bid must be a Qualified Bid (except that the Bid Deadline will not apply). Bidding for any part of the Assets will start at the purchase price and terms proposed in the applicable Baseline Bid. Following consultation with the Consultation Parties, the Debtors will announce the bidding increments for bids on one or more of the Acquired Assets or Other Assets at the outset of the Auction (the "Minimum Overbid"). Following consultation with the Consultation Parties, the Debtors may at any time adopt rules for the Auction that the Debtors reasonably determine to be appropriate to promote the goals of the Bidding Process and not in conflict with the Bidding Procedures, including one or more adjournments of the Auction.

34.  Prior to the conclusion of the Auction, the Debtors will: (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) in the exercise of their good faith business judgment and consistent with the Bidding Procedures, identify the highest or otherwise best offer or collection of offers in respect of the Assets (the "Successful Bid(s)"); (c) inform and consult with the Consultation Parties regarding the foregoing, so long as the Consultation Party is not also a Potential Bidder; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder or bidders (the "Successful Bidder(s)") and the amount and other material terms of the Successful Bid(s). After determining the Successful Bid(s) for the

Assets, the Debtors may determine, in their reasonable business judgment, in consultation with the Consultation Parties, which Qualified Bid(s) are the next best bids for the Assets (the "Next Best Bid(s)").  The terms of each Successful Bid and Next Best Bid shall be reasonably acceptable to the DIP Agent and shall, among other things, either (a) provide for cash proceeds in an amount sufficient to repay in full in cash all of the DIP Obligations (as defined in the DIP Order) and, if applicable, all of the Prepetition ABL Obligations (as defined in the DIP Order), or (b) be approved and consented to by the DIP Agent and the Prepetition ABL Agent.

35.    Acceptance of Qualified Bids.  The Debtors' selection and submission to this Court of the selected bid as the Successful Bid will not constitute the Debtors' acceptance of the bid. The Debtors will have accepted a Qualified Bid only when a contract therefor has been executed and such Qualified Bid has been approved by the Court at the Liquidation Sale Hearing or the Going Concern Sale Hearing.  If the Successful Bidder does not close the Sale by the date agreed to by the Debtors and the Successful Bidder, then the Debtors shall be authorized, but not required, to close with the party that submitted the Next Best Bid (the "Next-Highest Bidder") pursuant to further order of this Court.

36.    Modification of Bidding Procedures.  Following consultation with the Consultation Parties, and with the consent of the DIP Agent, and consistent with the DIP Documents (as defined in the DIP Order), the Debtors may amend the Bidding Procedures or the bidding process at any time and from time to time in any manner that they determine in good faith will best promote the goals of the process, including extending or modifying any of the dates described herein; *provided, however*, that any such extension shall be subject to the prior consent of the DIP Agent and the Prepetition ABL Agent, and consistent with the DIP Documents (as defined in the DIP Order).

37.     <u>Return of Good Faith Deposit.</u>  The Good Faith Deposits of all Qualified Bidders will be held in escrow and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Court.  At the closing of a Sale Transaction contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.  The Good Faith Deposits of each Next-Highest Bidder shall be retained until three (3) business days after the applicable Closing Date.  The Good Faith Deposits of the other Qualified Bidders will be returned as soon as practicable but no later than seven business days following the Auction.

38.     The Debtors believe that the proposed Bidding Procedures provide an appropriate framework for selling the Assets and will enable the Debtors to fully review, analyze and compare all Bids received to determine which Bid is in the best interests of the Debtors' estates.

## II.     **The Flexibility to Obtain Stalking Horse Bids is Appropriate and Warranted.**

39.     As discussed above, the Bidding Procedures contemplate that the Debtors will continue to solicit potential bidders to serve as a Stalking Horse Bidder.  Accordingly, in the event that a Stalking Horse Bid is obtained prior to the Stalking Horse Bid Deadline, all bidders will be required to submit a bid in the amount of at least the Stalking Horse Overbid.  Further, the Bidding Procedures contemplate that the Debtors may seek Court approval to provide customary bid protections to the Stalking Horse Bidder, including a break-up fee and/or expense reimbursement.

40.     Approval of break-up fees and other forms of bid protections in connection with the sale of significant assets pursuant to section 363 of the Bankruptcy Code is an established practice in chapter 11 cases.  In the Third Circuit, termination or break-up fees are considered administrative expenses and, therefore, the payment of such fees must provide a post-petition benefit to the bankruptcy estate. *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl.*

*Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999).  In *O'Brien*, the Third Circuit provided two examples of a potential benefit accruing from the payment of a termination fee.  *Id.*  First, a benefit to the estate may arise if, "assurance of a break-up fee promoted [a] more competitive bidding [process], such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  *Id.* at 537.  Second, a break-up fee encourages potential bidders to evaluate thoroughly a debtor's value, thereby "increasing the likelihood that the price at which the debtor is sold will reflect its true worth."  *Id.*

41.    By conducting due diligence, participating in negotiations for a potential transaction and entering into a Stalking Horse APA, any Stalking Horse Bidder will have established a bid standard, including a price floor, and initiated a legitimate sales process that should serve as a catalyst for other bidders.  As a result, the Debtors would be in a favorable position to solicit competing bids that may be materially higher or otherwise more favorable than the Stalking Horse Bidder's bid.  In short, any Stalking Horse Bidder should be compensated for the risk they are taking and the benefit they are providing to the Debtors' estates.

42.    The Debtors submit that (i) the flexibility to designate a Stalking Horse Bidder and (ii) the Debtors' reservation of rights to seek bid protections for any such Stalking Horse Bidder is necessary and appropriate given the significant benefits that a Stalking Horse Bid may provide to the Debtors.

### III.    Proposed Notice of the Sale Hearing.

43.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide their creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time, and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested in the Sale Motion.  The Debtors propose that the

deadline for objecting to approval of the proposed Sale be (x) March 4, 2019 at 12:00 p.m. (prevailing Eastern Time) pursuant to the Liquidation Path or (y) March 6, 2019 at 4:00 p.m. (prevailing Eastern Time) pursuant to the Going Concern Path.

44.    As soon as practicable, but within one business day after entry of the Bidding Procedures Order, the Debtors will serve the Auction and Hearing Notice by first-class mail, postage prepaid upon the following parties: (a) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) upon appointment, counsel to any Committee; (c) the Debtors' 30 largest unsecured creditors on a consolidated basis, as identified in the Debtors' chapter 11 petitions, (d) all parties who have asserted a lien or security interest against any of the Assets, (e) all parties to the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (the "Assumed and Assigned Agreements"); (f) applicable taxing authorities, including the Internal Revenue Service; (g) all state attorneys' general and consumer protection agencies in jurisdictions in which the Assets are located; (h) all parties known to the Debtors who have expressed an interest to the Debtors' Assets during the past six months; and (i) all parties requesting notice in these Cases.  The Auction and Hearing Notice shall indicate that copies of the Sale Motion and the Stalking Horse APA (if any) can be obtained on the website of the Debtors' claims and noticing agent, Donlin, Recano & Company, Inc.  In addition, the Debtors will serve this motion, including a copy of the Stalking Horse APA (if any), on those persons in categories (a) through (d), above.  Further, within two business days after entry of the Bidding Procedures Order and if proceeding pursuant to the Going Concern Path, or as soon as practicable thereafter, the Debtors will place a publication version of the Auction and Hearing Notice for one day in the national edition of *The Wall Street Journal* or *USA Today*.

45.     The Auction and Hearing Notice will include, among other things, the date, time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested in the Sale Motion once they are set by the Court.  The Debtors submit that the methods of notice described herein substantially comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed Sale of the Assets.  Therefore, the Debtors respectfully request that this Court approve the notice procedures proposed above.

**IV.     Proposed Assumption and Assignment Procedures.**

46.     Pursuant to the Going Concern Path, the Debtors, as part of the Sale, may assume and assign Assumed and Assigned Agreements.  By no later than 21 days prior to the Going Concern Sale Hearing, the Debtors will file a schedule of cure obligations (the "Cure Schedule") for the Assumed and Assigned Agreements.  The Cure Schedule will include a description of each Assumed and Assigned Agreement potentially to be assumed and assigned by a potential buyer and the amount, if any, the Debtors believe is necessary to cure such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").  A copy of the Cure Schedule, together with the Assumption and Assignment Notice, will be served on each of the nondebtor parties listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Court.

47.     The Debtors propose that any objections to the assumption and assignment of any executory contract or unexpired lease identified on the Cure Schedule, including, but not limited to, the Cure Costs set forth on such schedule, must be in writing, filed with the Court, and be actually received on or before March 6, 2019 by (a) Charlotte Russe, Inc., 575 Florida Street, San Francisco, CA 94110 (Attn: Marie Satterfield, Esq.), email: marie.satterfield@charlotterusse.com; (b) counsel to the Debtors, (i) Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Seth Van Aalten, Esq. and Michael A. Klein, Esq.), email: svanaalten@cooley.com and mklein@cooley.com; and (ii) Bayard, P.A., 600 North King Street, Suite 400, P.O. Box 25130,

Wilmington, DE (Attn: Justin Alberto, Esq. and Erin Fay, Esq.) email: jalberto@bayardlaw.com and efay@bayardlaw.com; (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Julia Frost-Davies, Esq. and Christopher L. Carter, Esq.), email: julia.frost-davies@morganlewis.com and christopher.carter@morganlewis.com; and (ii) Richards, Layton & Finger, PA, One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq.), email: collins@rlf.com; (d) counsel to the Prepetition Term Agent, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael Collins Rupe, Esq. and W. Austin Jowers, Esq.), email: mrupe@kslaw.com and ajowers@kslaw.com; (e), counsel to the Steering Committee, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael Collins Rupe, Esq. and W. Austin Jowers, Esq.), email: mrupe@kslaw.com and ajowers@kslaw.com; (f) once it is formed, counsel to each Committee; and (g) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane Leamy), email: Jane.M.Leamy@usdoj.gov) (collectively, the "Notice Parties"); *provided*, *however*, that the deadline for objecting to the assignment of the Assumed and Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance will be the commencement of the Going Concern Sale Hearing.  Any such objection shall set forth a specific default in any Assumed and Assigned Agreements and claim a specific monetary amount that differs from the amount (if any) specified by the Debtors in the Cure Schedule.

48.     If no objections are received, then the Cure Costs set forth in the Cure Schedule will be binding upon the nondebtor parties to the Assumed and Assigned Agreements for all purposes in these Cases and will constitute a final determination of the total Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed and Assigned

Agreements.  In addition, all counterparties to the Assumed and Assigned Agreements will (a) be forever barred from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Debtors and the Successful Bidder will be entitled to rely solely upon the Cure Costs set forth in the Assumption and Assignment Notice; (b) be deemed to have consented to the assumption and assignment; and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Agreements.

49.     Where a nondebtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Costs (the "Disputed Cure Amount"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount, the Cure Amount shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Going Concern Sale Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Going Concern Sale Hearing or at such other date and time as may be fixed by this Court.  All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement will be heard at the Going Concern Sale Hearing, unless adjourned by agreement of the parties.  The Debtors intend to cooperate with counterparties to Assumed and Assigned Agreements to attempt to reconcile any differences with respect to a particular cure amount.

50.     The Debtors request that any party failing to object to the proposed transactions be deemed to consent to the treatment of its executory contract and/or unexpired lease under section

365 of the Bankruptcy Code. *See Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead v. Wooten (In re Gabeel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same). Moreover, the Debtors request that each such party be deemed to consent to the assumption and assignment of its executory contract and/or unexpired lease notwithstanding any anti-alienation provision or other restriction on assignment. *See* 11 U.S.C. §§ 365(c)(1)(B), (e)(2)(A)(ii), and (f).

## V.    **The Proposed Sale Order.**

51.    The Debtors anticipate that the Sale Order will contain certain provisions that require disclosure under Local Rule 6004-1 and the Debtors will highlight applicable provisions in connection with the notice of filing of proposed Sale Order. At this time, the Debtors make the following statements:

a)    Local Rule 6004-1(b)(iv)(A).   To the extent a proposed purchaser is an insider (within the meaning of section 101(31) of the Bankruptcy Code), the Debtors will make the necessary disclosures to the Court and take measures to ensure the fairness of the sale process and the proposed transaction.

b)    Local Rule 6004-1(b)(iv)(B).   The Debtors do not presently have any agreement between any interested bidder and the Debtors' management or key employees. If any agreements are reached, the Debtors will make the necessary disclosures.

c)    Local Rule 6004-1(b)(iv)(C).   To the extent that the Sale Order includes a release in favor of any entity, the Debtors will make the necessary disclosures.

d)    Local Rule 6004-1(b)(iv)(F).   The Debtors are requiring Qualified Bids to include a good faith deposit constituting 10% of the total cash consideration of the bid.

e)    Local Rule 6004-1(b)(iv)(G).   The Debtors do not currently have any interim management or other agreement with any party. If any agreements are reached, the Debtors will make the necessary disclosures.

f)    Local Rule 6004-1(b)(iv)(H).   The Debtors are not seeking to release or allocate any sale proceeds without further order of the Court.

g)   Local Rule 6004-1(b)(iv)(I).  The Debtors are not seeking pursuant to this Motion to have the Sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code.

h)   Local Rule 6004-1(b)(iv)(J).  The Debtors will retain necessary books and records, or copies thereof, to enable them to administer their bankruptcy cases in any Sale.

i)   Local Rule 6004-1(b)(iv)(K).  The Debtors may seek to sell avoidance actions.

j)   Local Rule 6004-1(b)(iv)(L).  The Debtors are seeking to sell the Assets free and clear of successor liability claims. The Debtors will have material unpaid prepetition unsecured claims after the closing of the Sale.  No party would likely be willing to purchase the Debtors' assets if it were at risk of liability for those claims under principles of successor liability.

k)   Local Rule 6004-1(b)(iv)(M).  The Debtors are seeking to sell the Assets free and clear of all liens, claims and encumbrances to the fullest extent permitted by sections 363 and 365 of the Bankruptcy Code.

l)   Local Rule 6004-1(b)(iv)(N).   Pursuant to the proposed Bidding Procedures, Qualified Bidders may credit bid some or all of their claims to the full extent permitted by section 363(k) of the Bankruptcy Code

m)   Local Rule 6004-1(b)(iv)(O).  The Debtors are seeking relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) for any sale, as further described below.

## VI.   **Approval of the Sale Is Warranted Under Section 363 of the Bankruptcy Code.**

52.   Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business.  *See, e.g.*, *In re Martin*, 91 F.3d 389 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

53.   Courts typically consider the following factors in determining whether a proposed sale meets this standard:

a.      whether a sound business justification exists for the sale;

b.      whether adequate and reasonable notice of the sale was given to interested parties;

c.      whether the sale will produce a fair and reasonable price for the property; and

d.      whether the parties have acted in good faith.

*In re Decora Indus., Inc.*, 2002 WL 32332749, at * 2 (D. Del. May 20, 2002) (citing *Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).

54.     When a debtor demonstrates a valid business justification for a decision, a strong presumption arises "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that Delaware business judgment rule has "vitality by analogy" in chapter 11) (citations omitted).

55.     In the instant case, a strong business justification exists for the Sale. Any extended delay in selling the Assets could have a severe detrimental effect on the Debtors' ability to continue operations and preserve value to the fullest extent possible. Furthermore, notice of the Sale has been reasonable and adequate. If proceeding pursuant to the Going Concern Path, the Debtors are publishing notice of the Sale in the national edition of *The Wall Street Journal* or *USA Today*. Further, the Sale has been proposed in good faith. Finally, because the Sale is subject to bid procedures and an auction, the price ultimately received as a result of the successful bid should, based on the process alone, be deemed fair and reasonable.

### VII. The Purchaser is a Good Faith Purchaser.

56.     The Debtors anticipate that that any party that is the Successful Bidder at the Auction will ask the Debtors to request that they receive the protections set forth in section 363(m) of the Bankruptcy Code.  Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the United States Court of Appeals for the Third Circuit previously addressed the meaning of the term:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

57.     The Debtors intend to introduce evidence at the Sale Hearing to support such a finding.

### VIII. Approval of the Sale Free and Clear of Liens, Claims and Encumbrances.

58.     The Debtors request approval to sell the Assets free and clear of any and all liens, claims, interests and encumbrances in accordance with section 363(f) of the Bankruptcy Code. Pursuant to section 363(f), a debtor in possession may sell estate property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> a.      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

     b.     such entity consents;

     c.     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

     d.     such interest is in bona fide dispute; or

     e.     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale even if only one of the subsections is met).

59.     Furthermore, it is well established that a bankruptcy court has the power, pursuant to section 363(f) of the Bankruptcy Code, to approve the sale of a debtor's assets free and clear of any claims against the debtor. *In re TWA Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (holding that successor liability claims are "interests in property" within the meaning of §363(f)); *United Mine Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) (same).

60.     The Debtors submit that the Sale of their Assets free and clear of liens, claims and encumbrances will satisfy the requirements of section 363(f) of the Bankruptcy Code. The Debtors also believe that the service of the Auction and Hearing Notice in accordance with the terms set forth in this Motion will afford creditors sufficient notice of the Sale and therefore provides additional justification for approval of the Sale free and clear of all liens, claims and encumbrances.

## IX.    Approval of the Assumption and Assignment of Executory Contracts and Unexpired Leases.

61.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court

approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g.*, *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court").

62.     The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten a court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir. 1985).  Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for "actual pecuniary loss" relating to such default.  11 U.S.C. 365(b)(1).

63.     Under section 365(f) of the Bankruptcy Code, a debtor, after assuming a contract, may assign its rights under the contract to a third party.  11 U.S.C. § 365(f); *see also In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."); *see also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist the

trustee in realizing the full value of the debtor's assets).  Section 365(f)(2)(B) requires, however, that adequate assurance of future performance by an assignee exist.  11 U.S.C. § 365(f)(2)(B). The purpose of the adequate assurance requirement is to protect the interests of the non-debtor party to an assigned contract, as section 365(k) of the Bankruptcy Code relieves a debtor from liability for any breach of a contract that may occur after an assignment.  *Cinicola v. Scharffeberger*, 248 F.3d 110, 120 (3d Cir. 2001).  Adequate assurance of future performance is not required for every term of an executory contract or unexpired lease, but only such terms that are "material and economically" significant.  *In re Fleming Cos., Inc.*, 499 F.3d 300, 305 (3d Cir. 2007).

64.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction."  *In re DBSI, Inc.,* 405 B.R. 698, 708 (Bankr. D. Del. 2009); *see also In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. 2002) ("[A]dequate assurance falls short of an absolute guarantee of payment.").  Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of success).

65.     The assumption and assignment of certain executory contracts and unexpired leases is an integral part of the Sale.  It is thus an appropriate exercise of business judgment for the Debtors to agree to assume and assign the contracts and leases as will be required by the Successful Bid.  Additionally, the Debtors submit that the notice provisions and the objection deadline for

counterparties to raise objections to the assumption and assignment of contracts and leases as proposed in this Motion are adequate to protect the rights of counterparties to the Debtors' contracts and leases.  Furthermore, the Debtors will demonstrate adequate assurance of future performance at the Going Concern Sale Hearing.

## X.    Basis for Relief for Liquidation Transaction.

66.    The proposed Bidding Procedures permit going concern and liquidation bids for the Assets.  In the event that the winning bid contemplates a Liquidation Transaction, the legal basis for relief in connection with a liquidation of the Debtors' Assets is discussed below.

### A.    Waiver of Compliance With Laws Regarding Liquidation Sales

67.    Many state and local laws, statutes, rules and ordinances require special and cumbersome licenses, waiting periods, time limits and other procedures for store closing, liquidation or similar sales.  By virtue of section 1334 of title 28 of the United States Code, however, this Court has exclusive jurisdiction over the Debtors' property wherever located. 28 U.S.C. § 1334 (2018).  As such, in the context of a bankruptcy case, when creditors receive notice of a proposed sale, as well as the opportunity to be heard in court, enforcement of such statutes and regulations is redundant and unnecessary.  As a result, the Debtors request that, in the event that the Successful Bid is a Liquidation Transaction, any order approving a Liquidation Transaction include a provision that specifically waives the Debtors' or their future agent's obligation to comply with any state or local laws restricting store closing, going out of business or similar sales.

68.    In general, debtors must comply with 28 U.S.C. § 959(b), which provides that a debtor in possession must "manage and operate the property . . . according to the requirements of the valid laws of the state in which such property is situated . . . ."  Courts, however, have held that a debtor in possession that is liquidating estate assets does not "manage and operate" the property for the purposes of 28 U.S.C. § 959(b). *Alabama Surface Mining  Comm'n v. N.P. Mining Co.,*

*Inc. (In re N.P. Mining Co., Inc.)*, 963 F.2d 1449, 1460-61 (11th Cir. 1992) (holding that 28 U.S.C. § 959(b) does not apply when debtor in possession is liquidating property and no longer operating its business).  In addition, the Bankruptcy Code preempts state and local laws that conflict with its underlying policies.  *Belculfine v. Aloe (In re Shenango Group, Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code. . . . [A] state statute [] cannot place burdens on [a debtor] where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd*, 112 F.3d 633 (3d Cir. 1997).[9]

### B.    Unenforceability of Any Restriction in the Leases

69.    Certain of the Debtors' leases governing the premises of the stores subject to any Liquidation Transaction may contain provisions purporting to restrict or prohibit the Debtors from conducting store closing, liquidation, or similar sales.  Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code.  *Ames Dep't Stores*, 136 B.R. at 359 (deciding that enforcement of such lease restrictions would "contravene overriding federal policy requiring debtor to maximize estate assets. . . ."); *In re R. H. Macy and Co., Inc.*, 170 B.R. 69, 73-74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open

---

[9] *See also In re Coldwater Creek*, Case No. 14-10867 (BLS) (Bankr. D. Del. May 7, 2014) (stating that debtors were authorized to conduct store closing sales "without the necessity of further showing compliance" with going out of business or liquidation laws); *In re Boscov's*, Case No. 08-11637 (Bankr. D. Del. Aug. 15, 2008) (ordering that "[g]overnmental units shall not fine, assess or otherwise penalize Debtors or Agent (or any of the landlords of the Closing Stores) for conducting or advertising the Store Closing Sales in a manner inconsistent with Liquidation Sales Laws, provided that the Store Closing Sales are conducted and advertised in compliance with this Order").

throughout the lease term, because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store.).[10]

70.    Thus, to the extent that such provisions or restrictions exist in any of the leases of the stores subject to any Liquidation Transaction, the Debtors request that the Court authorize the Debtors and/or the Successful Bidder to conduct any liquidation sales without interference by any landlords or other persons affected, directly or indirectly, by the liquidation sales.

### C.    Any Liquidation Sales Should Be Exempt From Any "Fast Pay" Laws

71.    Many states in which the Debtors operate also have laws and regulations that require the Debtors to pay an employee substantially contemporaneously with his or her termination (the "Fast Pay Laws").  In many cases, these laws require the payment to occur either immediately or within a period of only a few days from the date such employee is terminated.  To the extent that a Liquidation Transaction results in a significant number of employees being terminated, the Debtors respectfully submit that the Debtors should be granted relief from the Fast Pay Laws.  As set forth above, the Bankruptcy Code preempts state and local laws that conflict with its underlying policies.  *See, e.g.*, *Coldwater Creek Inc.*, Case No. 14-10867 (BLS) (waiving "fast pay" laws and regulations in connection with approval of store closing sales); *Filene's Basement, LLC*, Case No. 11-13511(KJC) (Bankr. D. Del. Nov. 2, 2011) (same); *In re Linens Holding Co.*, Case No. 08-10832 (Bankr. D. Del. Oct. 28, 2008) (same).

---

[10] In addition, bankruptcy courts in this District have held that restrictive lease provisions affecting store liquidation sales in chapter 11 cases are unenforceable.  *See, e.g.*, *In re Coldwater Creek*, Case No. 1410867 (ordering that store closing sales be conducted without the further need for compliance with, among other things, lease provisions); *In re Boscov's*, Case No. 08-11637 (same); *In re Goody's Family Clothing, Inc.*, Case No. 08-11133 (CSS) (Bankr. D. Del. June 13, 2008) (same); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del. May 30, 2008) (same).

## **WAIVER OF RULES 6004(h) AND 6006(d)**

72.     The Debtors request that, upon entry of the Sale Order, the Court waive the 14 day stay requirements of Bankruptcy Rules 6004(h) and 6006(d).  The waiver of the 14 day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is required to permit the sale to close expeditiously as required by the Debtors' post-petition financing.  The Debtors respectfully submit that the Court waive the 14 day stay requirements contained in Bankruptcy Rules 6004(h) and 6006(d).

## **NOTICE**

73.     Notice of this motion will be provided to the following, or their counsel, if known: (i) the U.S. Trustee; (ii) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (iii) the DIP Agent and Prepetition ABL Agent; (iv) the Prepetition Term Agent; (v) the Steering Committee; (vi) all parties who are known by the Debtors to assert liens against the Assets; (vii) all state attorneys general and consumer protection agencies in jurisdictions in which the Assets are located; (viii) all non-Debtor parties to the Debtors' unexpired real property leases; (ix) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Debtors' assets; and (x) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

74.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Bidding Procedures Order, in substantially the form attached hereto as **Exhibit A**, (ii) enter the Sale Order, or such other order approving a sale to such other party that is the successful bidder at the Auction and (iii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated:  February 3, 2019
　　　　Wilmington, Delaware

BAYARD, P.A.

*/s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Erin R. Fay (No. 5268)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: jalberto@bayardlaw.com
　　　　efay@bayardlaw.com

- and -

**COOLEY LLP**
Seth Van Aalten
Michael Klein
Summer M. McKee
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: svanaalten@cooley.com
　　　　mklein@cooley.com
　　　　smckee@cooley.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*