## **EXHIBIT A**

**Bidding Procedures Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Charlotte Russe Holding, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 19-10210 (\_\_\_)<br><br>(Joint Administration Requested) |

**ORDER (I) APPROVING BID AND SALE PROCEDURES,
(II) APPROVING CERTAIN BIDDING PROTECTIONS,
(III) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE
AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, (IV) SCHEDULING AN AUCTION AND
SALE HEARING, AND (V) APPROVING THE SALE**

Upon the motion (the "Motion"),[2] of Charlotte Russe Holding, Inc. and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), seeking, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), an order (i) authorizing and approving the procedures that are attached hereto as Annex 1 (the "Bidding Procedures") for the sale of certain of the Debtors' assets (the "Sale"), (ii) scheduling an Auction and Sale Hearing in connection with the Sale, and (iii) approving the form and manner of notice of the Auction and

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding, Inc. (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456).  The Debtors' headquarters are located at 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

the Sale Hearing; the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "<u>Bidding Procedures Hearing</u>"); and the Court having considered the First Day Declaration and the statements of counsel and the evidence presented at the Bidding Procedures Hearing, it is hereby

**FOUND AND DETERMINED THAT**:[3]

A.    The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9007, 9008, and 9014.  Venue of these Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The Debtors have offered good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the Motion to the extent provided in this Order, including approval of (i) the Bidding Procedures, attached hereto as Annex 1, (ii) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed and Assigned Agreements so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Assumed and Assigned Agreements, and (iii) the form and manner of notice of the Auction and Sale Hearing described in the Motion and this Order.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

C.     Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.     In accordance with Local Rules 6004-1(c), Debtors have properly filed and noticed the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

E.     The proposed notice of the Auction, the Sale Hearing and the Bidding Procedures and the Assumption and Assignment Notice, as set forth in the Motion and this Order, is appropriate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, and the assumption and assignment of executory contracts and unexpired leases, and no other or further notice shall be required for the Sale or the assumption and assignment of executory contracts and unexpired leases.

F.     The Bidding Procedures were negotiated in good faith and at arms' length.

G.     The Bidding Procedures are fair, reasonable and appropriate under the circumstances and are reasonably designed to maximize the value to be achieved for the Assets.

H.     **THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED to the extent provided herein.

2.      All objections to the entry of this Order or to the relief provided herein that have not been withdrawn with prejudice, waived, resolved or settled are hereby denied and overruled on the merits with prejudice.

3.      The Bidding Procedures, as attached as <u>Annex 1</u>, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid proceedings relating to the Assets.  The Debtors and their claims agent are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      The deadline for submitting a Qualified Bid shall be March __ at __:00 p.m. (prevailing Eastern Time), unless extended by the Debtors pursuant to the Bidding Procedures (the "<u>Bid Deadline</u>"), provided that the Debtors, with the consent of the DIP Agent, may extend the Bid Deadline without further order of the Court.

5.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

6.      If at least two Qualified Bids in respect of the Assets are received by the Bid Deadline, the Debtors shall conduct the Auction.  The Auction will take place at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 on March __, 2019 at 10:00 a.m. (prevailing Eastern Time) or such other place or time as the Debtors, with the consent of the DIP Agent, shall designate and notify to all Qualified Bidders, the Committee and the Prepetition Term Agent.  Only Qualified Bidders will be permitted to participate in the Auction.  The DIP Agent and the Prepetition Agents (each as defined in the DIP Order) are deemed to be a Qualified Bidder for all purposes, and shall be entitled (together with their respective retained professionals) to participate in the Auction.

7.      The DIP Agent and the Prepetition Agents shall be entitled to credit bid all or a portion of their respective DIP Obligations or Prepetition Secured Obligations (each as defined in the DIP Order) for the Assets at any such auction, in each case in accordance with their respective rights under section 363(k) of the Bankruptcy Code

8.      Each Qualified Bidder participating at the Auction will be required to confirm in writing, that (a) it has not engaged in any collusion with respect to the bidding process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

9.      The Auction will be conducted openly and will be transcribed or videotaped, at the Debtors' option.

10.     Within 24 hours following the conclusion of the Auction, the Debtors will file a notice identifying the Successful Bidder and the Next-Highest Bidder.

11.     The Court shall convene the Sale Hearing on March __, 2019 at __:__ _.m. (prevailing Eastern Time) or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale to the Successful Bidder(s) and the entry of the Sale Order.  The Debtors shall file a form of Sale Order no later than 14 days before the Sale Hearing.  At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s).  Subject to consultation with the Consultation Parties, and with the consent of the DIP Agent, the Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with the Court.

12.     Objections to approval of the Sale, including the Sale of the Debtors' assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, must be in writing, state the basis of such objection with specificity and be filed with this Court and served so as to be received on or before __:00 p.m. (prevailing Eastern Time) on March __, 2019 at __:__.m. (prevailing Eastern Time) (the "Objection Deadline") by:

(a)  Charlotte Russe, Inc., 575 Florida Street, San Francisco, CA 94110 (Attn: Marie Satterfield, Esq.), email: marie.satterfield@charlotterusse.com;

(b)  counsel to the Debtors, (i) Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Seth Van Aalten, Esq. and Michael A. Klein, Esq.), email: svanaalten@cooley.com and mklein@cooley.com; (ii) Bayard, P.A., 600 North King Street, Suite 400, P.O. Box 25130, Wilmington, DE (Attn: Justin Alberto, Esq. and Erin Fay, Esq.) email: jalberto@bayardlaw.com and efay@bayardlaw.com;

(c)  counsel to the Prepetition ABL Agent and the DIP Agent, (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Julia Frost-Davies, Esq. and Christopher L. Carter, Esq.), email: julia.frost-davies@morganlewis.com and christopher.carter@morganlewis.com; and (ii) Richards, Layton & Finger, PA, One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq.), email: collins@rlf.com;

(d)  counsel to the Prepetition Term Agent (i) King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael Collins Rupe, Esq. and W. Austin Jowers, Esq.), email: mrupe@kslaw.com and ajowers@kslaw.com;

(e)  counsel to the Steering Committee, (King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael Collins Rupe, Esq. and W. Austin Jowers, Esq.), email: mrupe@kslaw.com and ajowers@kslaw.com;

(f)  once it is formed, counsel to each Committee; and

(g)  the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane Leamy), email: Jane.M.Leamy@usdoj.gov) (collectively, the "Notice Parties").

Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all

transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

13.     On _____, the Debtors will file an Assumption and Assignment Notice, which shall include a schedule of cure obligations (the "Cure Schedule") for the Assumed and Assigned Agreements, and serve such Assumption and Assignment Notice on each of the non-Debtor parties listed therein by first class mail.  The Cure Schedule will include a description of each Assumed and Assigned Agreement potentially to be assumed and assigned by a potential buyer and the amount, if any, the Debtors believe is necessary to cure, or compensate the non-Debtor parties for, any defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").

14.     Objections to (a) the Cure Costs set forth in the Cure Schedule or (b) the assumption and assignment of any executory contract or unexpired lease identified in the Cure Schedule must be in writing, state the basis of such objection with specificity and be filed with the Court, and be actually received on or before _____ at __:__ _.m. (prevailing Eastern Time) by the Notice Parties; *provided*, *however*, that if the Successful Bidder is not the Stalking Horse Purchaser, the deadline for objecting to the assignment of the Assumed and Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance shall be the commencement of the Sale Hearing.

15.     Unless a non-Debtor party to an Assumed and Assigned Agreement has timely and properly filed and served an objection to the assumption and assignment of its Assumed and Assigned Agreement, all counterparties to the Assumed and Assigned Agreements shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Debtors and the Successful

Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment; and (c) be forever barred, estopped and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Agreement. In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed and Assigned Agreements for all purposes in these Cases and otherwise, and will constitute a final determination of the total Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed and Assigned Agreements; *provided, however,* that the Cure Cost set forth in the Cure Schedule may be reduced by any amounts Debtors pay or value Debtors provide under an Assumed and Assigned Agreement on or after the Petition Date or by agreement of the parties.

16.     Where a non-Debtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amounts (the "Disputed Cure Amounts"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amounts, the Cure Amounts shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be heard at the Sale Hearing or, at the sole discretion of the Debtors (with the consent of the Consultation Parties and Successful Bidder, at such other date and time as may be fixed by this Court.  All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement will be heard at the Sale Hearing.

17.     The form of the Auction and Hearing Notice and the Assumption and Assignment Notice are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.  Within one (1) business day of the entry of this Order or as soon thereafter as practicable, the Debtors shall cause the Auction and Hearing Notice to be served upon, without limitation, (i) the U.S. Trustee; (ii) counsel to any Committee; (iii) counsel to the Prepetition ABL Agent and the DIP Agent; (iv) counsel to the Prepetition Term Agent; (v) counsel to the Steering Committee; (vi) the attorneys general and consumer protections agencies in jurisdictions in which the Assets are located; (vii) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (viii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002(i); (ix) all parties that are known or reasonably believed to have expressed an interest in acquiring the Acquired Assets or any of the Other Assets; (x) all parties that are known or reasonably believed by the Debtors to have asserted any lien, encumbrance, claim or other interest in the Acquired Assets; (xi) all governmental agencies that are known or reasonably believed by the Debtors to be an interested party with respect to the Sale and the related transactions; and (xii) all non-Debtor parties to the Debtors' real property leases.

18.     All Interested Parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

19.    The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

20.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon entry of this Order.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.


Dated: _____, 2019
          Wilmington, Delaware          _____

                                        UNITED STATES BANKRUPTCY JUDGE

## ANNEX 1

### Bidding Procedures

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures")[1] to be used with respect to the sale or disposition (the "Sale") of the Assets (as defined below) of Charlotte Russe Holding, Inc.; Charlotte Russe Holdings Corporation; Charlotte Russe Intermediate Corporation; Charlotte Russe Enterprise, Inc.; Charlotte Russe, Inc.; Charlotte Russe Merchandising, Inc.; and Charlotte Russe Administration, Inc. (collectively, the "Debtors").

**Additional information regarding the Assets can be obtained by contacting both Stuart Erickson and Stephen Preefer of Guggenheim Securities, LLC (email: stuart.erickson@guggenheimpartners.com and stephen.preefer@guggenheimpartners.com, phone: (212) 518-9970), the Debtors' proposed investment banker in these Cases.**

## I.    Description of the Assets to be Sold

The Debtors are seeking to sell all or substantially all of their business as a going concern or subsets of the operating business, including but not limited to the inventory, receivables, equipment, intellectual property, unexpired leases, contract rights and other assets related to or necessary to operate the business of selling clothing and related apparel to retail customers in store, online and by catalog, currently operated by the Debtors, (the "Assets"), in each case free and clear of all liens, claims and encumbrances thereon.

The Sale of the Assets shall be subject to a competitive bidding process as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

## II.    Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into (unless previously entered into) with the Debtors, on or before the Bid Deadline (as defined below), an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "Confidentiality Agreement"). Each person or entity that enters into the Confidentiality Agreement with the Debtors on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."

After a Potential Bidder enters into the Confidentiality Agreement with the Debtors, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information (including, if applicable, financial data) with respect to the Assets.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

### III.  **Determination by the Debtors**

As appropriate throughout the Bidding Process, the Debtors will consult with (1) the Prepetition ABL Agent and DIP Agent, (2) the Prepetition Term Agent, (3) the Steering Committee, and (4) any statutory committee appointed in the Debtors' Cases, if any (each a "Committee" and, collectively with the Prepetition ABL, the DIP Agent, the Prepetition Term Agent, and the Steering Committee, the "Consultation Parties") and shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders on any or all of the Assets, (c) following consultation with the Consultation Parties, negotiate any bid made to acquire any or all of the Assets, and (d) following consultation with the Consultation Parties, make such other determinations as are provided in these Bidding Procedures (collectively, the "Bidding Process"); provided that the Debtors shall not consult with a Consultation Party (or its advisors) that is actively participating as a bidder for the Assets.  Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any party that is not a Potential Bidder or a Consultation Party.

### IV.  **Due Diligence**

Up to and including the Bid Deadline (as defined below) (such period, the "Diligence Period"), the Debtors shall afford any Potential Bidder such available due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. The Debtors will provide, in an electronic data room to be established for these purposes, a form of asset purchase agreements for the Sale of substantially all of the Debtors' Assets (the "Form APA"), and will grant each Potential Bidder or Consultation Party, as applicable, access to such data room.  The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or or Consultation Parties, as applicable.  Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

### V.  **Bid Deadline**

A Potential Bidder that desires to make a Bid shall deliver copies of its Bid to (a) Charlotte Russe, Inc., 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121 (Attn: Marie Satterfield, Esq.), email: marie.satterfield@charlotterusse.com; (b) counsel to the Debtors, (i) Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Seth Van Aalten, Esq. and Michael A. Klein, Esq.), email: svanaalten@cooley.com and mklein@cooley.com; and (ii) Bayard, P.A., 600 North King Street, Suite 400, P.O. Box 25130, Wilmington, DE (Attn: Justin Alberto, Esq. and Erin Fay, Esq.) email: jalberto@bayardlaw.com and efay@bayardlaw.com; (c) BRG, 75 State Street, Boston, MA 02109 (Attn: Brian Cashman), email: bcashman@thinkbrg.com; and (d) Guggenheim Securities, LLC, 330 Madison Avenue, New York, NY 10017 (Attn: Stuart Erickson and Stephen Preefer), email:stuart.erickson@guggenheimpartners.com and stephen.preefer@guggenheimpartners.com; and (e) counsel to the Prepetition ABL Agent and the DIP Agent (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA, 02110 (Attn: Julia Frost-Davies, Esq. and Christopher L.

Carter, Esq.) email: Julia.frost-davies@morganlewis.com and christopher.carter@morganlewis.com; and (ii) Richards, Layton & Finger, PA, One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq.), email:collins@rlf.com, by either (a) no later than March 3, 2019 at 5:00 p.m. (prevailing Eastern Time) pursuant to the Liquidation Path or (b) no later than March 7, 2019 at 5:00 p.m. (prevailing Eastern Time) pursuant to the Going Concern Path (as may be extended, with the consent of the DIP Agent, and each, a "Bid Deadline").  As soon as reasonably practicable following the Bid Deadline, but in no event later than one day after the Bid Deadline, the Debtors will identify the Baseline Bid(s) and provide to the Consultation Parties copies of all Qualified Bids (with such distribution permissible by electronic means).

## VI.    Bid Requirements

All bids (each hereinafter, a "Bid") must (collectively, the "Bid Requirements"):

(a)    be accompanied by a letter or email, or at the request of the Debtors, a non-binding letter of intent:

(i)    stating with specificity the Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(ii)    detailing the following:

(A)    a duly executed purchase agreement (the "Purchase Agreement");

(B)    a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Form APA and the applicable schedules and exhibits; and

(C)    with respect to bids for a Liquidation Transaction, such transaction shall be presented on an equity/guaranteed basis, supported by cash consideration in an amount and payable at such times as is consistent with the terms of any other agreement providing for the liquidation of the Debtors' stores.

(iii)    Agreeing that, other than as agreed by the Debtors in connection with seeking approval of protections for a Stalking Horse Bidder (defined below), is not subject to any break up fee, transaction fee, expenses reimbursement or any similar type of reimbursement;

(iv)    agreeing that the Potential Bidder's offer is binding and irrevocable (x) under the Liquidation Path, the later of (i) March 7, 2019 or (ii) the first business day following the closing of the Sale, and (y) under the Going Concern Path, the later of (i) March 14, 2019 or (ii) the first business day following the closing of the Sale;

(iv) providing for a Closing Date (as defined below) (x) pursuant to the Liquidation Path, not later than March 7, 2019 or (y) pursuant to the Going Concern Path, not later than March 14, 2019;

(v) providing that such Bid is not subject to any due diligence or financing contingency; and

(vii) providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "Next-Highest Bid") with respect to the relevant Assets.

(b) be accompanied by any reasonable information requested by a consumer privacy ombudsman, if one is appointed pursuant to section 363(b)(1)(B) of the Bankruptcy Code;

(c) be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information") for Bids under the Going Concern Path, which may include (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.  By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected landlords, contract counterparties, and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below); and

(d) as and to the extent applicable, be accompanied by a proposed Letter of Intent sufficient for purposes of any required filing under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act") and a statement indicating that the Potential Bidder would cover any filing fees under the HSR Act.

A Bid must be accompanied by (a) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of ten percent (10%) of the cash consideration of the Bid, which funds will be deposited into an escrow account to be identified and established by the Debtors (a "Good Faith Deposit") and (b) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the relevant Assets (provided, however, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided that such commitments may have covenants and conditions acceptable to the Debtors).  The

Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after consulting with the Consultation Parties.

The Debtors may select a Stalking Horse APA, subject to the consent of the DIP Agent. Each Stalking Horse APA shall be subject to higher or better offers at the Auction (as defined below) and shall establish a minimum bid at the Auction for the Assets included in the Stalking Horse APA.  The Stalking Horse APA may contain customary terms and conditions providing the Stalking Horse Bidder with reasonable bid protections (the "Bid Protections") as may be agreed between the Debtors and the Stalking Horse Bidder, subject to the consent of the DIP Agent.  If the Debtors enter into any such Stalking Horse APA(s), (a) on or before the Stalking Horse Bid Deadline, the Stalking Horse APA(s) shall be placed on the Court's docket and notice thereof shall be given to all parties who received notice of this Motion, all parties on the Debtors' 2002 notice list and all potential bidders; and (b) the Court shall conduct a hearing on a date that is one (1) or more business days thereafter, subject to the Court's availability, to approve the Debtors' entry into any Stalking Horse APA and consider approval of the proposed Bid Protections.  The Bid Protections hearing may be adjourned or rescheduled without notice other than as stated on the record in court or in appropriate agenda letter.

The Debtors, in consultation with those Consultation Parties that have not submitted a Bid, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A Bid received from a Potential Bidder that meets the above requirements, and is otherwise satisfactory to the Debtors, will be considered a "Qualified Bid" and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder."  The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than 24 hours after such Bids are received. For the avoidance of doubt, (a) any Stalking Horse APA entered into by the Debtors will be deemed a Qualified Bid, and (b) any Stalking Horse Bidder, the DIP Agent and the Prepetition Agents are hereby each deemed a Qualified Bidder for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors reasonably deem pertinent in their reasonable business judgment, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (c) any excluded assets or executory contracts and leases, and (d) any other factors that the Debtors (in consultation with the Consultation Parties) may reasonably deem relevant.

The Debtors, in their business judgment, and in consultation with the Consultation Parties, reserve the right to reject any Bid if such Bid, among other things:

(a)     is on terms that are more burdensome or conditional than the terms of any stalking horse agreement (as defined below), if applicable;

(b)     requires any indemnification of the Potential Bidder in its Purchase Agreement;

(c)     is not received by the Bid Deadline;

(d)     is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

(e)     does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors estates or the Auction.

Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid; provided that the Debtors have the right to work with the parties to any rejected Bid to cure any such defects after cure. In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it within five (5) business days after the Bid Deadline.

The Debtors may, in consultation with the Consultation Parties, and with the consent of the DIP Agent, among other things, (i) extend such Bid Deadline with respect to the subject Assets and postpone the Auction, or (ii) cancel the Auction and terminate the proposed Sale for the subject Assets.

## VII.    Credit Bidding

In connection with the Sale of all or any of the Assets, the DIP Agent and the Prepetition Agents may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code. A Credit Bid may be applied only to reduce the cash consideration with respect to those Assets in which the party submitting such Credit Bid holds a security interest. The DIP Agent and the Prepetition Agents shall each be considered a Qualified Bidder with respect to its right to acquire all or any of the Assets by Credit Bid. Unless otherwise provided herein, all Qualified Bids shall be cash bids.

## VIII.    Auction

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below). The Consultation Parties shall be permitted to attend the Auction. In addition, any other creditor or party the Debtors deem appropriate may observe the Auction; provided, however, that any such party must provide notice of its intent to observe to the Debtors at least five (5) days before the Auction by electronic mail to Summer M. McKee, Esq., (email: smckee@cooley.com). At least one (1) day prior to the Auction, each Qualified Bidder must inform the Debtors in writing whether it intends to participate in the Auction. If the Debtors receive only one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Qualified Bidder will be named the Successful Bidder with respect to such Assets. At any point and at their sole discretion, the Debtors shall have the right to remove any class of Assets from the Auction.

If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction (the "Auction") with respect to such Assets and shall

determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for the relevant Assets (the "Starting Bid"), which determination will be communicated to Qualified Bidders prior to the commencement of the Auction.  If proceeding pursuant to the Liquidation Path, the Auction shall take place on March 5, 2019 at 10:00 a.m. (prevailing Eastern Time) at the offices of the Debtors' counsel, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 or such other place or time as the Debtors shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.  If proceeding pursuant to the Going Concern Path, the Auction shall take place on March 11, 2019 at 10:00 a.m. (prevailing Eastern Time) at the offices of the Debtors' counsel, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 or such other place or time as the Debtors shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.  Professionals and principals for the Debtors, the Stalking Horse Bidder(s) (if any), each Qualified Bidder and the Consultation Parties shall be able to attend and observe the Auction, along with any other parties the Debtors deem appropriate.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  Each Subsequent Bid at the Auction shall provide net value to the estates in an amount to be announced at or prior the Auction ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), as the case may be, as determined by the Debtors in the exercise of their reasonable business judgment and in consultation with the Consultation Parties; provided that: (i) if the Leading Bid was made by a Stalking Horse Bidder, such bid shall be deemed to include any Bid Protections that were previously approved by the Bankruptcy Court, and (ii) any Subsequent Bid made by any Stalking Horse Bidder shall only be required to equal the sum of the amount of (x) the Starting Bid or the Leading Bid, as applicable, and (y) the Incremental Overbid, less any bid protection amount (if applicable).  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bidding Procedures; provided that such rules (1) are not materially inconsistent with these Bidding Procedures, the Bankruptcy Code, the DIP Documents

or any order of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed or videotaped and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Immediately prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine, consistent with the Bidding Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder") with respect to the subject Assets, and the amount and other material terms of the Successful Bid. The Debtors may, in consultation with the Consultation Parties, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale. The terms of each Successful Bid and Next-Highest Bid shall be reasonably acceptable to the DIP Agent and shall, among other things, either (a) provide for cash proceeds in an amount sufficient to repay in full in cash all of the DIP Obligations (as defined in any orders approved by this Court approving any debtor-in-possession financing for, or any use of cash collateral by, the Debtors (the "DIP Order")) and, if applicable, all of the Prepetition ABL Obligations (as defined in the DIP Order)), or (b) be approved and consented to by the DIP Agent and the Prepetition ABL Agent. Unless the Bankruptcy Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

Following conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidders.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of any Stalking Horse APA (if applicable) and all other agreements entered into in connection with any proposed Sale transaction.

## IX.    **Acceptance of Qualified Bids**

The Debtors may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' judgment, upon considering any comments of the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the DIP Documents (as defined in the DIP Order), or (iii) contrary to the best interests of the Debtors and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

**X.    No Fees for Potential Bidders or Qualified Bidders**

Potential Bidders or Qualified Bidders, other than a Stalking Horse Bidder if so approved by the Bankruptcy Court, shall not be allowed any bidding, break-up, termination or other fee (a "Bidding Fee") as a precondition to, or in consideration of, presenting any bid or participating in the Bidding Process provided for herein.

**XI.    Sale Hearing**

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Stalking Horse Bid or the Qualified Bidder, respectively) shall be subject to approval by the Bankruptcy Court.  The hearing to approve a Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bid is received with respect to the Assets (or subset thereof), then the Stalking Horse Bid or the Qualified Bid, respectively) shall take place on, (x) if proceeding pursuant to the Liquidation Path, March 6, 2019 at _____ (ET) (prevailing Eastern Time) or (y) if proceeding pursuant to the Going Concern Path, March 13, 2019 at _____ (ET) (prevailing Eastern Time) (the "Sale Hearing").  The Sale Hearing may be adjourned by the Debtors, consistent with the terms of the DIP Documents, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtors' Cases.

**XII.    Return of Good Faith Deposit**

The Good Faith Deposits of all Potential Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court.  The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder.  At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.  The Good Faith Deposits of each Next-Highest Bidder shall be retained until three (3) business days after the applicable closing date (the "Closing Date").  The Good Faith Deposits of the other Qualified Bidders will be returned as soon as practicable but no later than seven (7) Business Days following the Auction.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or the Stalking Horse APA, as applicable (and as such agreements may be amended or modified at the Auction), the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

## XIII.    Reservation of Rights and Modifications

Notwithstanding any of the foregoing, the Debtors and their estates, in consultation with the Consultation Parties, and with the consent of the DIP Agent, and consistent with the DIP Documents, reserve the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, and subject to the prior consent of the DIP Agent, and consistent with the DIP Documents, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) that actively bidding for the Assets, including by way of any credit bid, if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination is (a) likely to have a chilling effect on the potential bidding or (b) otherwise contrary to the goal of maximizing value from the Sale process for the Debtors' estates, their creditors, and all other parties in interest.

## XIV.    Next-Highest Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable Purchase Agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid as approved by further order of the Bankruptcy Court.

## XV.    DIP Order

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise: (a) any right of the DIP Agent to consent to the Sale of any portion of its collateral, including, without limitation, any Assets, on terms and conditions acceptable to the DIP Agent are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures; (b) unless otherwise ordered by this Court, all proceeds generated from the Sale of any Assets shall be subject to the DIP Liens and the Prepetition Liens (each as defined in the DIP Order) and all cash proceeds shall be paid to the DIP Agent upon the closing of such sale for permanent application against the obligations owing by the Debtors under the DIP Documents in accordance with the terms and conditions of the DIP Order and thereafter, if applicable, in accordance with the terms and conditions of the Prepetition Documents until such time as all DIP Obligations and Prepetition Secured Obligations (each as defined in the DIP Order) have been paid in full in accordance with the terms and conditions of the DIP Documents, the DIP Order, and the Prepetition Documents, as applicable; and (c) nothing in these Bidding Procedures shall amend, modify or impair any provision of the DIP Order, or the rights of the Debtors, the DIP Agent, the DIP Lenders or the Term Loan Agent thereunder.