# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Charlotte Russe Holding, Inc., *et al.,*[1] | ) | Case No. 19-10210 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 15, 16** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "DIP Motion") of Charlotte Russe Holding, Inc. ("Holdings"), Charlotte Russe, Inc. (the "Company," or the "Borrower") and their chapter 11 affiliates (collectively, with Holdings, the "Guarantors"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Interim Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*:

(i)        authorizing the Debtors to obtain senior secured, superpriority postpetition

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding, Inc. (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456). The Debtors' headquarters are located at 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121.

financing on a superpriority basis consisting of a senior secured superpriority asset based credit facility (the "DIP Facility," and all amounts extended under the DIP Facility, the "DIP Loans") consisting of $50,000,000 in aggregate principal amount of revolving loans and commitments, and which shall include a $15,000,000 sublimit for the issuance of letters of credit, pursuant to the terms and conditions of that certain *Senior Secured Super-Priority Debtor-In-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Agreement"), by and among the Borrower, the Guarantors, Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "DIP Agent") for and on behalf of itself and the other lenders party thereto (such lenders, collectively with the DIP Agent, the "DIP Lenders"), substantially in the form of **Exhibit B**, attached to the DIP Motion;[2]

(ii)       authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements and other Loan Documents (as defined in the DIP Agreement) and documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)       granting to the DIP Agent, for the benefit of itself and the DIP Lenders on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documents (collectively, and including all "Obligations" as described in the DIP

---

[2] Upon entry of this Interim Order, all Prepetition ABL Obligations (as defined herein) and all accrued and unpaid interest thereon and fees and expenses shall be fully-rolled into the DIP Facility and shall constitute DIP Obligations (as defined herein) hereunder.

Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein), subject only to the Carve Out (as defined below);

(iv)        granting to the DIP Agent, for the benefit of itself and the DIP Lenders and the other Secured Parties (as defined in the DIP Agreement) under the DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

(v)         authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, arrangement fees, upfront fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vi)        authorizing the Debtors to use, on the terms described herein, the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition ABL Parties under the Prepetition ABL Documents and the Prepetition Term Loan Parties under the Prepetition Term Loan Documents (each as defined herein);

(vii)       providing adequate protection to the Prepetition ABL Parties and the Prepetition Term Loan Parties for any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, resulting from the imposition of the automatic stay, the

Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in the Prepetition Collateral, including Cash Collateral (including by the Carve Out) ("Diminution in Value");

(viii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(ix)     scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion, on a final basis, and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Brian M. Cashman In Support of Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing Debtors And Debtors In Possession To Obtain Postpetition Financing, (ii) Authorizing Use Of Cash Collateral, (iii) Granting Liens And Super-Priority Claims, (iv) Granting Adequate Protection To Prepetition Secured Lenders, (v) Modifying The Automatic Stay, (vi) Scheduling A Final Hearing, And (vii) Granting Related Relief* (the "DIP Declaration") and the *Declaration of Brian M. Cashman, Chief Restructuring Officer of Charlotte Russe Holding, Inc., in Support of Debtor's Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the DIP Documents, and the evidence submitted and argument made at the interim hearing held on February 5, 2019 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the

interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the maximization of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    **Petition Date**.   On February 3, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    **Debtors in Possession**.   The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**.   This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.   Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.  **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.  **Notice**.  Notice of the DIP Motion and the Interim Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F.  **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 43 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)  *Prepetition ABL Facility*.  Pursuant to that certain Second Amended and Restated Credit Agreement dated as of May 22, 2013 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the Borrower, (b) the Guarantors, (c) Bank of America, N.A., as administrative agent, collateral agent and letter of credit issuer (in such capacity, the "Prepetition ABL Agent"); and (d) the several lenders from time to time party thereto (and including the Prepetition ABL Agent, the "Prepetition ABL Lenders," and

collectively with the Prepetition ABL Agent, the "Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Borrower pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").

       (ii)   *Prepetition ABL Obligations.*   The Prepetition ABL Facility provided the Borrower with, among other things, up to $80,000,000 aggregate principal amount of Revolving Loan Commitments (as defined in the Prepetition ABL Agreement), including letters of credit obligations.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was approximately $25 million in outstanding revolving loans and approximately $11 million in issued and outstanding letter of credit obligations (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrower's or the Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations").

       (iii)   *Prepetition ABL Liens and Prepetition ABL Priority Collateral.*

As more fully set forth in the Prepetition ABL Documents and the DIP Motion, prior to the Petition Date, the Borrower and the Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the Secured Parties (as defined in the Prepetition ABL Agreement), a security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all of their assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the Revolving Priority Collateral (as defined in that certain Intercreditor Agreement referred to below) (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), and (b) a second priority security interest in and continuing lien on the Term Priority Collateral (as defined in the Intercreditor Agreement, and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral"), subject only to the Prepetition ABL Permitted Prior Liens (as defined herein) and the liens of the Prepetition Term Loan Agent on the Term Priority Collateral.

        (iv)    *Prepetition Term Loan Facility.*  Pursuant to that certain Amended and Restated Credit Agreement dated as of May 22, 2013, which was amended and restated effective February 2, 2018 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Agreement," collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents and the Intercreditor Agreement, the "Prepetition Documents"), among (a) the Borrower, (b) Jefferies Finance LLC, as lead arranger, administrative agent and collateral agent (in such capacity, the

"Prepetition Term Loan Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents"), (c) the Guarantors, and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, the "Prepetition Secured Parties"), the Prepetition Term Loan Lenders provided term loans to the Borrower (the "Prepetition Term Loan Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities").

(v)    *Prepetition Term Loan Obligations*.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility was $89.3 million (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrower's and the Guarantors' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(vi)    *Prepetition Term Loan Liens and Term Priority Collateral*.  As more fully set forth in the Prepetition Term Loan Documents and the DIP Motion, prior to the Petition Date, the Borrower and the Guarantors granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, a security interest in and continuing

lien on (the "Prepetition Term Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all of their assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the Term Priority Collateral, and (b) a second priority security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the Prepetition Term Loan Permitted Prior Liens and the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral.

(vii)    *Priority of Prepetition Liens; Intercreditor Agreement.*    The Prepetition Agents and others are parties to that certain Intercreditor Agreement dated as of May 22, 2013 (as may be further amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement") to govern the respective rights, interests, obligations, priority and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors and other obligors.    Each of the Borrower and the Guarantors acknowledged and agreed to the Intercreditor Agreement.

(viii)    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Term Priority Collateral, and (2) liens senior by operation of law or permitted by the Prepetition ABL Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Prepetition ABL Permitted Prior Liens"); (c) the Prepetition

ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the aggregate value of the Prepetition ABL Priority Collateral exceeds the amount of the Prepetition ABL Obligations and the claims of the Prepetition ABL Parties arising under, or secured by, the Prepetition ABL Documents constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ix)    *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.*  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the

benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, and (2) liens senior by operation of law or permitted by the Prepetition Term Loan Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Prepetition Term Loan Permitted Prior Liens," and, together with the Prepetition ABL Permitted Prior Liens, the "Permitted Prior Liens"); (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and

priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of section 502 and 506 of the Bankruptcy Code.

(x)     *No Control.*   None of the DIP Agent, the DIP Lenders or the Prepetition ABL Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Documents, the Prepetition Secured Facilities, and/or the Prepetition Documents.

(xi)     *Cash Collateral.*  All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

(xii)     *Default by the Debtors.*  The Debtors acknowledge and stipulate that they are in default of their obligations under the Prepetition Documents, including as a result of the Cases, and that an Event of Default has occurred under the Prepetition Documents.  As of the Petition Date, therefore, interest was accruing on the Prepetition ABL Obligations at the default rate.

G.     **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.   Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority,

avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claims had with respect to the Prepetition Liens.

    H.  **Findings Regarding Corporate Authority.** Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

    I.  **Intercreditor Agreement**. Pursuant to section 510 of the Bankruptcy Code, except as expressly provided by the terms of this Interim Order, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents shall (i) remain in full force and effect, (ii) continue to govern the relative obligations, priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this Interim Order or otherwise and the modification of the automatic stay), and (iii) not be deemed to be amended, altered, or modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth herein or therein.  Upon entry of this Interim Order, the DIP Facility shall be deemed to be a "Refinancing" of the Prepetition ABL Facility as such term is used in the Intercreditor Agreement, and any repayment of the Prepetition ABL Obligations pursuant to this Interim Order shall not be deemed to constitute a "Discharge of Revolving Obligations" of the Prepetition ABL Obligations as such

term is used in the Intercreditor Agreement.

J.    **Findings Regarding Postpetition Financing**

(i)    *Request for Postpetition Financing*.  The Debtors seek authority to (a) use Cash Collateral on the terms described herein, and (b) enter into the DIP Facility on the terms described herein and in the DIP Documents to refinance the Prepetition ABL Obligations, to administer their Cases, and to fund the Debtors' operations.  At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the DIP Agent.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and

otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*.  The DIP Facility is the best source of debtor-in-possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the DIP Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof; (2) superpriority claims and liens; (3) the other protections set forth in this Interim Order; and (4) a full refinancing of the Prepetition ABL Obligations.

(v)    *Use of proceeds of the DIP Facility*.  As a condition to entry into

the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set forth in paragraphs 20 and 21 hereof, the "Budget"),[4] solely for: (a) the roll-up of the Prepetition ABL Obligations into DIP Obligations to the extent provided for in this Interim Order and the DIP Documents, and subject to the rights preserved in paragraph 43 of this Interim Order; (b) working capital and letters of credit; (c) permitted payment of costs of administering the Cases; (d) payment of such other prepetition obligations consented to by the DIP Agent in its sole discretion, and as approved by the Court; (e) payment of interest, fees and expenses (including without limitation, legal and other professionals' fees and expenses of the DIP Agent) and all other "Obligations" owed under the Prepetition ABL Documents and the DIP Documents; (f) payment of certain adequate protection amounts to the Prepetition ABL Parties, as set forth in paragraphs 16 hereof; and (g) other general corporate purposes of the Debtors permitted by the Budget and the DIP Documents.  The roll-up of the Prepetition ABL Obligations into DIP Obligations in accordance with this Interim Order is necessary as the Prepetition ABL Parties have not otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders will not otherwise consent to providing the DIP Facility and extending credit to the Debtors thereunder. In addition, the roll-up of the Prepetition ABL Facility is subject to the reservation of rights in

---

[4]  A summary of the initial Budget is attached hereto as **Schedule 1**.

paragraph 43 below and will not prejudice the rights of any party in interest.

(vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Interim Order and as provided in the DIP Documents.

(vii)    *Roll-up Loans.*    Upon entry of this Interim Order and the occurrence of the Closing Date (as defined in the DIP Agreement), without any further action by the Debtors or any other party, all outstanding Prepetition ABL Obligations shall be converted into DIP Obligations (the "DIP Roll-Up Obligations").  The conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition ABL Lenders to fund amounts, and provide other consideration to the Debtors, under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition ABL Obligations.  Notwithstanding any other provision of this Interim Order, the DIP Agreement or the Intercreditor Agreement, all rights of the Prepetition ABL Lenders shall be fully preserved.  The Prepetition ABL Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder without the inclusion of the DIP Roll-Up Obligations in the DIP Obligations.  Moreover, the roll-up of all outstanding Prepetition ABL Obligations into DIP Obligations will (a) create greater availability through the relaxing of minimum availability covenants under the DIP Facility, (b) benefit the Debtors and their estates as a result of the DIP

Lenders' agreement to make modifications to certain reserves in a manner favorable to the Debtors and to waive certain default interest to which they are entitled under the Prepetition ABL Agreement, and (c) enable the Debtors to obtain urgently needed financing that they need to administer these Cases and fund their operations. Because the DIP Roll-Up Obligations are subject to the reservation of rights in paragraph 43 below, they will not prejudice the right of any other party in interest.

K. **Adequate Protection**. Until the Prepetition ABL Obligations or Prepetition Term Loan Obligations, as applicable, are Paid in Full,[5] the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral as set forth in this Interim Order.

L. **Sections 506(c) and 552(b).** In light of: (i) the DIP Agent's and DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out, (ii) the Prepetition ABL Parties' agreement that their liens shall be subject to the Carve Out and subordinate to the DIP Liens, and (iii) the Prepetition Term Loan Parties' agreement that their liens shall be subject to the Carve Out and subordinate, in the case of the Prepetition ABL

[5] "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, expenses, indemnities) under the applicable credit facility, the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable credit facility. No facility shall be deemed to have been Paid in Full until such time as, with respect to the applicable facility, (a) (i) the Challenge Deadline (as defined in paragraph 43 of this Interim Order) shall have occurred without the timely and proper commencement of a Challenge or (ii) if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge; and (b) the applicable Prepetition Agent or DIP Agent has received (i) a countersigned payoff letter in form and substance satisfactory to such Agent and (ii) releases from the Debtors (including any liquidator acting on behalf of any of the Debtors or their Estates, if applicable) in form and substance satisfactory to such Agent, each in its sole discretion.

Priority Collateral, to the DIP Liens, (a) subject to entry of a Final Order, the Prepetition Secured Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.    **Good Faith of the DIP Agent and DIP Lenders**.

(i)    *Willingness to Provide Financing*.    The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Facility and the DIP Documents, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.    The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, with

the assistance and counsel of their respective advisors.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

N.    **Immediate Entry**.    Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

O.    **Interim Hearing**.  Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Agent; (iv) counsel to the Prepetition Term Loan Agent and the Steering Committee (as defined herein); and (v) all other parties entitled to notice under the Local Rules.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion, the DIP Declaration, the First Day Declaration and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    <u>Interim Financing Approved</u>.  The DIP Motion is granted as set forth herein, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in the DIP Documents and this Interim Order.  All objections to this Interim Order to the extent not

withdrawn, waived, settled, or resolved are hereby denied and overruled.

**DIP Facility Authorization**

2.      Authorization of the DIP Facility.    The DIP Facility, including the DIP Roll-Up Obligations, is hereby approved.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Documents, including, without limitation, each Guarantor providing its joint and several guarantee of all of the DIP Obligations.  The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and payable and without need to obtain further Court approval, including, without limitation, closing fees, arrangement fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees and collateral agent's fees, subject to paragraph 35 herein, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or

equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3. <u>Authorization to Borrow</u>. To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Date (as defined below), and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit (in the form of loans and letters of credit) up to an aggregate outstanding principal amount of not greater than $50,000,000 at any one time outstanding under the DIP Facility (the "<u>Interim Financing</u>").

4. <u>DIP Obligations</u>. The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). Upon entry of this Interim Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owing under the DIP

Documents, and all cash management and bank product exposure and hedging exposure and obligations to the extent provided under the DIP Documents.  Upon entry of this Interim Order and the occurrence of the Closing Date (as defined in the DIP Agreement), all letters of credit issued for the account of the Debtors under the Prepetition ABL Agreement shall continue in place and all obligations under or in connection with such letters of credit shall be subject to the DIP Agreement and shall constitute DIP Obligations.  The Debtors shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, on the DIP Termination Date and the use of Cash Collateral shall automatically cease (i) if the DIP Obligations and Prepetition ABL Obligations are then outstanding, on the DIP Termination Date (as defined herein), except as provided in paragraph 34 herein, or (ii) if the DIP Obligations and Prepetition ABL Obligations have been Paid in Full, the Term Loan Termination Date (as defined herein).  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below), and including, subject to paragraph 43 herein, in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    <u>DIP Liens</u>.  In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors (the "<u>DIP Collateral</u>"), including without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock or equivalents of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of leased real property; (c) all proceeds of actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other

than actions brought pursuant to section 549 of the Bankruptcy Code); (e) subject to entry of a Final Order, proceeds of the Debtors' rights under section 506(c) (solely to the extent such rights result from the use of the DIP Facility or the DIP Collateral, and are, therefore, enforceable against parties other than the DIP Agent, DIP Lenders, or Prepetition Secured Parties) and 550 of the Bankruptcy Code; and (f) all other DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date.  DIP Collateral that is of a type that would be Revolving Priority Collateral (as defined in the Intercreditor Agreement), the proceeds, products and offspring thereof, proceeds of any avoidance actions brought pursuant to chapter 5 of the Bankruptcy Code or applicable state law equivalents and all other assets of the Debtors' estates which were, as of the Petition Date, unencumbered, shall, in each case, constitute "DIP ABL Priority Collateral."  Notwithstanding the foregoing, DIP Collateral shall not include (a) real property leases, (b) avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents, or (c) the Debtors' rights under section 506(c) or 550 of the Bankruptcy Code; *provided*, *however*, that DIP Collateral shall include proceeds of all of the foregoing, subject to entry of the Final Order in the case of clauses (b) (other than with respect to actions brought pursuant to section 549 of the Bankruptcy Code) and (c).

> 6.      DIP Lien Priority.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out and shall otherwise be junior only to: (a) as to the DIP ABL Priority Collateral, the Prepetition ABL Permitted Prior Liens; and (b) as to the Term Priority Collateral, (i) the Prepetition ABL Permitted Prior Liens; (ii) the Prepetition Term Loan Liens; and (iii) the

Prepetition Term Adequate Protection Liens.  Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.    <u>DIP Superpriority Claims</u>.  Upon entry of this Interim Order, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claim</u>") for all DIP Obligations.  Except as set forth herein, the DIP Superpriority Claim shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor other than the Carve Out, including without limitation any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be

*pari passu* with or senior to the DIP Superpriority Claim.

8.   <u>No Obligation to Extend Credit</u>.   The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent and in accordance with the terms of the DIP Agreement.

9.   <u>Use of Proceeds of DIP Facility</u>.   From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget (subject to such variances as permitted in this Interim Order and in the DIP Agreement), only for the purposes specifically set forth in this Interim Order and the DIP Documents, and in compliance with the terms and conditions in this Interim Order and the DIP Documents.

10.   <u>DIP Roll-Up Obligations</u>.   Upon entry of this Interim Order and the occurrence of the Closing Date, without any further action by the Debtors or any other party, all Prepetition ABL Obligations (including, without limitation, all outstanding letters of credit) shall be converted and "rolled-up" into DIP Roll-Up Obligations, and such DIP Roll-Up Obligations shall constitute DIP Obligations.  Upon entry of this Interim Order, without any further action by the Debtors or any other party, and as a condition to the provision of liquidity under the DIP Facility, all DIP Roll-Up Obligations shall constitute DIP Obligations.  The authorization of the DIP Roll-Up Obligations shall be subject to the reservation of rights set forth in paragraph 43 of this Interim Order.

<center><u>**Authorization to Use Cash Collateral**</u></center>

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Documents and in accordance with the Budget (subject to such variances as permitted in the DIP Agreement), the Debtors are authorized to use Cash Collateral until (i) if the DIP Obligations and Prepetition ABL Obligations are then outstanding, the DIP Termination Date (as provided herein) or (ii) if the DIP Obligations and Prepetition ABL Obligations have been Paid in Full, the Term Loan Termination Date (as provided herein); *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll obligations (other than severance) and sales taxes and pay expenses that the DIP Agent approves as critical to keeping the Debtors' business operating in accordance with the Budget, or as otherwise agreed by the DIP Agent in its sole discretion.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget.

12.    <u>Adequate Protection Liens</u>.

(a)    *Prepetition ABL Adequate Protection Liens*.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition ABL Adequate Protection Liens</u>").

(b)     *Prepetition Term Adequate Protection Liens.*  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "Prepetition Term Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens").

13.     Priority of Adequate Protection Liens.

(a)     The Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to: (i) with respect to the DIP ABL Priority Collateral, (1) the Prepetition ABL Permitted Prior Liens; (2) the DIP Liens; and (3) the Prepetition ABL Liens; and (ii) with respect to the Term Priority Collateral, (1) the Prepetition ABL Permitted Prior Liens; (2) the Prepetition Term Loan Liens; (3) the Prepetition Term Adequate Protection Liens; (4) the DIP Liens; and (5) the Prepetition ABL Liens.   The Prepetition ABL Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtors' assets.

(b)     The Prepetition Term Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to: (i) with respect to the DIP ABL Priority Collateral, (1) Prepetition Term Loan Permitted Prior Liens; (2) the DIP Liens; (3) the Prepetition ABL Liens; (4) the Prepetition ABL Adequate Protection Liens; and (5) the Prepetition Term Loan Liens; and (ii) with respect to the Term Priority Collateral, (1) the Prepetition Permitted Prior Liens and (2) the Prepetition Term Loan Liens.  The Prepetition

Term Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtors' assets.

(c)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections (a) 510 of the Bankruptcy Code with respect to the Prepetition Secured Obligations, and (b) 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14.    <u>Adequate Protection Superpriority Claims</u>.

(a)    *Prepetition ABL Superpriority Claim*.    As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Prepetition ABL Superpriority Claim</u>").

(b)    *Prepetition Term Loan Superpriority Claim*.    As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Parties, is hereby granted as

and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims").

15.     Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided, however*, that the Adequate Protection Superpriority Claims shall be subject to the Carve Out, junior to the DIP Superpriority Claim, and subject the lien priorities set forth herein.

16.     Adequate Protection Payments and Protections for Prepetition ABL Parties.  As further adequate protection, the Debtors are authorized and directed to provide adequate protection to the Prepetition ABL Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) to the extent any Prepetition ABL Obligations remain outstanding after entry of this Interim Order, interest (at the default rate) and principal due under the Prepetition ABL Documents, subject to the rights preserved in paragraph 43 below, (ii) immediately upon entry of this Interim Order and the occurrence of the Closing Date, payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and

other vendors) incurred by the Prepetition ABL Agent arising prior to the Petition Date, including reasonable and documented fees and expenses of (1) Morgan, Lewis & Bockius LLP, and (2) Richards, Layton & Finger, PA (collectively, the "ABL Advisors"), and (iii) in accordance with the procedures set forth in paragraph 35 hereof, the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent and arising subsequent to the Petition Date, including reasonable and documented fees and expenses of the ABL Advisors. Subject to the entry of a Final Order, upon the earlier to occur of (a) the DIP Termination Date or (b) delivery of the Carve Out Trigger Notice, the Debtors shall pay to the Prepetition ABL Administrative Agent, for the benefit of the Prepetition ABL Parties, $250,000 into a non-interest bearing account maintained at Bank of America, N.A. (the "Prepetition ABL Indemnity Reserve") to secure the contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition ABL Documents (the "Prepetition ABL Indemnity Obligations"); *provided* that the Debtors shall not be required to fund the Prepetition ABL Indemnity Reserve if, at the time of the occurrence of the Termination Date or the delivery of the Carve Out Trigger Notice the Prepetition ABL Obligations have been Paid in Full.  The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders, related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens granted to the Prepetition ABL Agent, as applicable, whether in these Cases or independently in another forum, court or venue. The Prepetition ABL Indemnity Obligations shall be secured, and not subject to the Carve Out,

by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein and by a lien on

the Prepetition Collateral and DIP Collateral.   Subject to paragraph 35 of this Interim Order,

payment of costs, expenses, and other amounts (including reasonable and documented attorneys'

fees) incurred in connection with the Prepetition ABL Indemnification Obligations shall be made

as and when they arise (and may be paid with the proceeds of the DIP Facility and/or from the

proceeds of DIP Collateral), without further order of this Court; *provided*, that (i) any such

indemnification claims shall be subject to the terms of the Prepetition ABL Documents

(including with respect to application of proceeds), (ii) the rights of parties in interest with

requisite standing to object to any such indemnification claim(s) are hereby reserved in

accordance with paragraph 43 hereof, and (iii) the Court shall reserve jurisdiction to hear and

determine any such disputed indemnification claim(s).  The Prepetition ABL Agent (for itself

and on behalf of the Prepetition ABL Parties) shall retain and maintain the Prepetition ABL

Liens and the Prepetition ABL Adequate Protection Liens granted to the Prepetition ABL Agent

as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being

satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve.

The Prepetition ABL Indemnity Reserve (but not the Prepetition ABL Indemnification

Obligations) shall be released and the funds applied in accordance with paragraph 24 of this

Interim Order at such time as the Prepetition ABL Obligations are Paid in Full.

　　　　　17.    Adequate Protection Payments and Protections for Prepetition Term Loan

Parties.  As further adequate protection, the Debtors are authorized and directed to provide

adequate protection to the Prepetition Term Loan Parties in the form of payment in cash (and as

to fees and expenses, without the need for the filing of a formal fee application) of, (i) current

payment of interest (at the default rate) due under the Prepetition Term Loan Documents, subject

to the rights preserved in paragraph 43 below and (ii) in accordance with the procedures set forth in paragraph 35 hereof, the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders party to the King & Spalding LLP engagement letter (as supplemented from time to time) (collectively, the "Steering Committee") arising prior to, and subsequent to, the Petition Date, including reasonable and documented fees and expenses of (1) King & Spalding LLP, (2) Chipman Brown Cicero & Cole, LLP, and (3) Brincko Associates, Inc. (the "Term Advisors"); *provided*, *however*, that until the Prepetition ABL Obligations and the DIP Obligations have been Paid in Full, any adequate protection payments to be made pursuant to this paragraph 17 shall be paid solely from proceeds of the Term Priority Collateral, subject to the Intercreditor Agreement, and in accordance with the Budget.   If the claims of the Prepetition Term Loan Parties are determined by the Court to have been undersecured as of the Petition Date, then reimbursements made hereunder shall be reallocated and applied to reduce the outstanding principal balance owed to the Prepetition Term Loan Lenders.

18.   Adequate Protection Reservation.   Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.   The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.   Further, this Interim Order shall not prejudice or limit

the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection in a manner consistent with the Prepetition Documents, and all parties-in-interests' rights are reserved with respect thereto.

### Provisions Common to DIP Financing and Use of Cash Collateral

19.    Amendment of the DIP Documents.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) immaterial or non-adverse to the Debtors and (b) in accordance with the DIP Documents.  In the case of a material amendment, modification, or supplement to the DIP Documents that is adverse to the Debtors' estates, the Debtors shall provide notice (which shall be provided through electronic mail) to counsel to the Prepetition Term Loan Agent and the Steering Committee, counsel to a Committee (if appointed) and the U.S. Trustee (collectively, the "Notice Parties"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement, *provided* that approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate such amendment, modification or supplement.

20.    Budget Maintenance.  The use of borrowings and letters of credit under the DIP Facility and the use of Cash Collateral shall be in accordance with the Budget, as described in paragraph 21 below, depicting on a weekly and line by line basis, (a) projected cash receipts, (b) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors), asset sales and any other fees and expenses relating to the DIP Documents), (c) projected net cash flow, (d) projected inventory receipts and levels, (e) projected Borrowing Base, and Availability

(each as defined in the DIP Agreement), including detailed calculations with respect to advance rates and eligibility categories, (f) professional fees, (g) rent, and (h) total available liquidity for the first 13 weeks from the Closing Date (as defined in the DIP Documents) which shall be in form and substance satisfactory to, and approved by the DIP Agent in its sole discretion prior to the Closing Date.  The Budget shall be updated by the Debtors (with the consent and/or at the reasonable request of the DIP Agent) from time to time (provided that such updated Budget shall be in form and substance satisfactory to, and approved by, the DIP Agent in its sole discretion), and actuals and variances shall be reported on a weekly basis.  No such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the "Budget"; *provided, however* that in the event that the DIP Agent and the Debtors cannot agree as to an updated, modified or supplemented budget, the prior approved Budget shall continue in effect, with weekly details for any periods after the initial 13-week period to be derived in a manner reasonably satisfactory to the DIP Agent from the monthly budget prepared by the Debtors (and approved by the DIP Agent in its sole discretion prior to the Closing Date) for these Cases, and such disagreement shall give rise to an Event of Default under the DIP Agreement and this Interim Order once the period covered by the prior approved Budget has terminated.  A copy of any Budget (or updated Budget) shall be delivered to counsel to the Prepetition Term Loan Agent and the Steering Committee, counsel for a Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by the DIP Agent.

21.    <u>Budget Compliance</u>.  The Debtors shall not, without the consent of the DIP Agent: (a) pay any expenses or make any other operating disbursements other than as set forth in the Budget (subject to a 15% variance for each line item, in each case, for any rolling four-week period (or, if less, the amount of time elapsed from the Petition Date) and for the

cumulative period since the Closing Date), (b) permit aggregate cash receipts, for any time period, to be less than the levels set forth in the Budget for the corresponding period (subject to a 15% variance for any rolling four-week period (or, if less, the amount of time elapsed from the Petition Date) and for the cumulative period since the Closing Date), or (c) permit aggregate inventory receipts, for any time period, to be less than the inventory receipts set forth in the Budget for the corresponding period (such covenant to be tested (i) as of the end of the second week ending after the Petition Date for the 2-week period then ending, (ii) as of the end of the third week ending after the Petition Date for the 3-week period then ending, and (iii) as of the end of each week ending thereafter for the 4-week period then ending, in each case, subject to a 15% variance for the tested period).  The Debtors shall, commencing with the first full calendar week after the Petition Date, deliver to the DIP Agent and the Prepetition Term Loan Agent, by not later than Wednesday of each week, a reconciliation for the prior week, the prior four-week cumulative period and the cumulative period from the Closing Date of (a) actual cash receipts, (b) actual disbursements made (including ordinary course operating expenses and bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors)), (c) actual net cash flow, (d) actual inventory levels, (e) Availability (as defined in the DIP Agreement), and (f) total available liquidity to the amounts set forth in the Budget for such periods.  Commencing with the first full calendar week after the Petition Date, Budget compliance shall be tested weekly, on a rolling cumulative four-week basis (or such lesser cumulative period from the Closing Date) and on a cumulative basis from the Closing Date.

22.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the

Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, and this Interim Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order and the DIP Documents.

23.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to evidence or entitle the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agents are authorized to file, in the applicable registries of deeds and other appropriate public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Interim Order, and (ii) such financing statements, security agreements, mortgages, leasehold mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy

law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, leasehold mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agents all such financing statements, mortgages, leasehold mortgages, notices, and other documents as the DIP Agent or the Prepetition Agents may reasonably request.  Each of the DIP Agent and the Prepetition Agents, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that the Prepetition ABL Agent or the Prepetition Term Loan Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other collateral documents or relevant Prepetition ABL Documents then automatically and without further action, (i) the DIP Agent shall be deemed to be a secured party under such documents, (ii) the DIP Facility, together with any refinancings or replacements thereof, shall be deemed to be secured obligations under such documents, and (iii) the applicable provisions of such documents shall apply to the DIP Facility; all as fully and completely as if the DIP Agent was an original secured party in such documents and the DIP Facility was an original secured obligation in such documents.  To the extent either of the Prepetition Agents are listed as loss payee, lender loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party under such

documents or to be the loss payee, lender loss payee, mortgagee or additional insured, as applicable.  The Prepetition Agents shall serve as agents for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

24.    <u>Application of Proceeds of Collateral</u>.  As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, all net proceeds of DIP Collateral, including whether sold in the ordinary course, liquidated, or otherwise, shall be applied as follows: (a) with respect to DIP ABL Priority Collateral, (i) *first*, to costs and expenses, including fees and expenses of the ABL Advisors, of the DIP Agent; (ii) *second*, to permanently reduce the Prepetition ABL Obligations; (iii) *third*, to reduce the DIP Obligations; and (iv) *fourth*, after the Prepetition ABL Obligations and the DIP Obligations have been Paid in Full (including, in each case, provision for contingent obligations) and the DIP Facility has been terminated, to costs and expenses, including fees and expenses of the Term Advisors, of the Prepetition Term Loan Parties and to reduce the Prepetition Term Loan Obligations; and (b) with respect to Term Priority Collateral, (i) *first*, to costs and expenses, including fees and expenses of the Term Advisors, of the Prepetition Term Loan Parties; (ii) *second*, to reduce the Prepetition Term Loan Obligations; and (iii) *third*, after the Prepetition Term Loan Obligations have been Paid in Full (including, in each case, provision for contingent obligations), to costs and expenses, including fees and expenses of the ABL Advisors, of the DIP Agent and to permanently reduce the Prepetition ABL Obligations and DIP Obligations.  The reduction, roll-up, or payment of the Prepetition Secured Obligations is subject

to the preservation of rights provided in paragraph 43.

          25.    <u>Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties</u>.

          (a)    Unless the DIP Agent and the Prepetition Agents, as applicable, shall have provided their prior written consent, or all DIP Obligations and all Prepetition Secured Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been, or contemporaneously will be, Paid in Full and the lending commitments under the DIP Facility have terminated, in any of these Cases or any Successor Cases, the Debtors shall neither seek entry of, nor support any motion or application seeking entry of, and otherwise shall object to any motion or application seeking entry of, any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order; (iii) subject to the entry of a Final Order, except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code; or (iv) any modification of any of the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' rights under this Interim Order,

the DIP Documents or the Prepetition Documents, as applicable, with respect to any DIP Obligations or Prepetition Secured Obligations.  It shall be an Event of Default under the DIP Documents and this Interim Order if, in any of these Cases or any Successor Cases, any order is entered granting any of the relief enumerated in provisions (i) through (iv) of the previous sentence.

(b)     No Debtor shall object to the DIP Agent, any DIP Lenders or any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding DIP Obligations, Prepetition ABL Obligations (as applicable), and Prepetition Term Loan Obligations (as applicable), in each case including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

26.    _Credit Bidding_.  In connection with any sale process authorized by the Court, (i) the DIP Agent and the DIP Lenders and (ii) subject to entry of a Final Order and to the rights preserved in paragraph 43, Prepetition ABL Agent, Prepetition Term Loan Agent and Prepetition Secured Parties, or any assignee or designee of any of the foregoing, shall be authorized to credit bid, consistent with the applicable DIP Documents and/or Prepetition Documents, some or all of their claims for their respective priority collateral (each a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the rights and duties of the parties under the Intercreditor Agreement and to the provision of consideration sufficient to indefeasibly pay in full in cash any senior liens on the collateral that is subject to the Credit Bid except to the extent otherwise agreed by the holder of such senior lien in their sole and absolute discretion.  Subject to entry of a Final Order, each of the Prepetition Agents, the

Prepetition Secured Parties and the DIP Agent shall be deemed a "Qualified Bidder" with respect to their rights to acquire all or any of the assets by Credit Bid.

27.    <u>Proceeds of Subsequent Financing</u>.    If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all DIP Obligations, and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Documents.

28.    <u>Cash Collection</u>.

(a)    From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral (except as otherwise set forth in the DIP Agreement) that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Documents (or in such other accounts as are designated by the DIP Agent from time to time) (collectively, the "<u>Cash Collection Accounts</u>"), which accounts (except as otherwise set forth in the DIP Agreement) shall be subject to the sole dominion and control of the DIP Agent; *provided* that upon the occurrence of the DIP Obligations and the

Prepetition ABL Obligations being Paid in Full, the Debtor and the DIP Agent shall effectuate the assignment of the dominion and control over the Cash Collection Accounts to the Prepetition Term Loan Agent.  For the avoidance of doubt, the Prepetition Term Loan Parties shall have a junior and subordinate interest in such Cash Collection Accounts until the DIP Obligations and Prepetition ABL Obligations have been Paid in Full, upon which time the Prepetition Term Loan Parties shall have a first priority security interest in such Cash Collection Accounts.

(b)    Until such time as the DIP Obligations and the Prepetition ABL Obligations are Paid in Full, all proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP Agent for application in accordance with the DIP Documents and this Interim Order.  Upon the occurrence of the DIP Obligations and the Prepetition ABL Obligations being Paid in Full, all proceeds and other amounts in the Cash Collection Accounts shall be remitted to the Prepetition Term Loan Agent for application in accordance with the Prepetition Term Loan Documents and this Interim Order.  Unless otherwise agreed to in writing by the DIP Agent, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order").  The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order) are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Agent.

29.    Maintenance of DIP Collateral.    Until all DIP Obligations and all Prepetition Secured Obligations have been Paid in Full, and the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facilities has terminated, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facilities or the Prepetition Documents,

as applicable; and (b) maintain the cash management system which has been agreed to by the DIP Agent or as otherwise required by the DIP Documents and the Prepetition Documents.

30.    <u>Disposition of DIP Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Priority Collateral or Prepetition ABL Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent and Prepetition ABL Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent, Prepetition ABL Agent, Prepetition ABL Lenders, or Prepetition ABL Parties, or from any order of this Court), except as otherwise permitted by the DIP Documents, the Prepetition ABL Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreement.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Term Priority Collateral other than in the ordinary course of business without the prior written consent of the Prepetition Term Loan Agent (acting at the direction of the "Required Lenders" (as such term is defined in the Prepetition Term Loan Agreement) (the "<u>Required Term Loan Lenders</u>")) (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Term Loan Agent, Prepetition Term Loan Lenders, or Prepetition Term Loan Parties, or from any order of this Court), except as otherwise permitted by the Prepetition Term Loan Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreement.

31.    <u>DIP Termination Date</u>.  On the DIP Termination Date: (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facility will terminate, other than as required in paragraph 40 with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations constituting Obligations (as defined in the DIP Agreement) shall be cash collateralized, and all

letters of credit and bankers' acceptances outstanding shall be cash collateralized in an amount equal to 105% of the face amount thereof, and such cash collateral shall not be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll obligations (other than severance), sales taxes and other expenses that the DIP Agent approves as critical to keeping the Debtors' business operating subject to the Budget; and (c) upon the expiration of the Remedies Notice Period, the DIP Agent shall be entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order (including paragraph 34).  For the purposes of this Interim Order, "<u>DIP Termination Date</u>" shall mean the "Termination Date" as defined in the DIP Agreement.

32.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (an "<u>Event of Default</u>") of this Interim Order: (i) the failure of the Debtors to perform, in any respect, any of the terms, provisions, covenants, or obligations under this Interim Order, including the failure to comply with the Case Milestones (as defined herein), or (ii) the occurrence of an "Event of Default" under the DIP Agreement.  Subject to the DIP Obligations and Prepetition ABL Obligations having been Paid in Full, and subject to entry of a Final Order, the occurrence of any of the following events, unless waived by the Prepetition Term Loan Agent, shall constitute an Event of Default:

(a)    the failure of the Debtors to perform, in any respect, any of the terms, provisions, covenants, or obligations under this Interim Order, including the failure to comply with the Case Milestones (as defined herein) and such failure remains uncured for three (3) days after notice thereof to the Debtors, the Committee (if any) and the U.S. Trustee;

(b)       the bringing of a motion, taking of any action or the filing of any plan of reorganization or disclosure statement attendant thereto by any of the Debtors: (A) to obtain additional financing under Section 364(c) or Section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to this Interim Order; (B) to grant any lien other than Permitted Prior Liens upon or affecting any DIP Collateral; or (C) except as provided in this Interim Order or the Final Order, as the case may be, to use Cash Collateral of the Prepetition Term Loan Parties under Section 363(c) of the Bankruptcy Code without the prior written consent of the Prepetition Term Loan Agent;

(c)       (A) the filing of any plan of reorganization or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, by a Debtor that does not include provisions for the Prepetition Term Loan Obligations being Paid in Full without the written consent of the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders), or any of the Debtors seeking, supporting or failing to contest in good faith the filing or confirmation of any such plan or entry of any such order, (B) the entry or request for entry of any order terminating any Debtor's exclusive right to file a plan of reorganization (unless actively contested by the Debtors), or (C) the expiration of any Debtor's exclusive right to file a plan of reorganization;

(d)       the entry of an order in any of the Cases confirming a plan of reorganization that (A) is not acceptable to the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders in their sole discretion) or (B) does not contain a provision for the Prepetition Term Loan Obligations being Paid in Full on or before the effective date of such plan or plans;

(e)       (x) the entry of an order amending, supplementing, staying,

vacating or otherwise modifying this Interim Order, the Final Order or the Cash Management Order without the written consent of the Prepetition Term Loan Agent or the filing by a Debtor of a motion for reconsideration with respect to this Interim Order or the Final Order or this Interim Order, the Final Order or the Cash Management Order shall otherwise not be in full force and effect or (y) any Debtor shall fail to comply with this Interim Order in any material respect;

(f)     the Final Order is not entered immediately following the expiration of the Interim Order, and in any event within thirty (30) days of the Petition Date (or such other date as may be agreed by the Prepetition Term Loan Agent and fixed by the Court);

(g)     the payment of, or application for authority to pay, any prepetition claim without Prepetition Term Loan Agent's prior written consent unless in accordance with the Budget;

(h)     subject to entry of a Final Order, the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against the Prepetition Term Loan Parties or any of the DIP Collateral or Prepetition Collateral;

(i)     (A) the appointment of an interim or permanent trustee in the Cases, the appointment of a receiver, receiver and manager, interim receiver or similar official over any substantial portion of the assets of the Debtors, or the appointment of a trustee receiver or an examiner in the Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors; or (B) the sale without the Prepetition Term Loan Agent's consent (acting at the direction of the Required Term Loan Lenders) of all or substantially all of the Debtors' assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Cases or otherwise that does not result in the Prepetition Term Loan Obligations being Paid in Full;

(j)	the dismissal of any Case, or the conversion of any Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or any Debtor filing a motion or other pleading seeking the dismissal of the Cases under section 1112 of the Bankruptcy Code or otherwise or the conversion of the Cases to Chapter 7 of the Bankruptcy Code;

(k)	any Debtor shall file a motion seeking, or the Court shall enter an order granting, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (A) to allow any creditor (other than the Prepetition Term Loan Agent) to execute upon or enforce a lien on any DIP Collateral or the Prepetition Collateral, (B) approving any settlement or other stipulation not approved by the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders) with any secured creditor of any Debtor providing for payments as adequate protection or otherwise to such secured creditor, or (C) with respect to any lien on or the granting of any lien on any DIP Collateral or the Prepetition Collateral to any federal, state or local environmental or regulatory agency or authority, which in either case involves a claim of $250,000 or more;

(l)	the breach or failure of any Debtor to perform any of its obligations under this Interim Order, the Final Order, the Cash Management Order, or any order of the Court approving any sale or to perform in any material respect its obligations under any order of the Court approving bidding procedures;

(m)	the existence of any claims or charges, or the entry of any order of the Court authorizing any claims or charges, other than in respect of this Interim Order, or as otherwise permitted under this Interim Order, entitled to superpriority administrative expense claim status in any Case pursuant to Section 364(c)(1) of the Bankruptcy Code *pari passu* with or senior to the claims of the Prepetition Term Loan Parties under this Interim Order, or there

shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code or (ii) any lien on the DIP Collateral or the Prepetition Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except, in each case, as expressly provided in this Interim Order then in effect;

(n)    this Interim Order shall cease to create a valid and perfected lien on the DIP Collateral or the Prepetition Collateral or to be in full force and effect, shall have been reversed, modified, amended, stayed, vacated, or subject to stay pending appeal, in the case of modification or amendment, without prior written consent of Prepetition Term Loan Agent;

(o)    subject to entry of a Final Order, an order in the Cases shall be entered (i) charging any of the DIP Collateral or Prepetition Collateral under Section 506(c) of the Bankruptcy Code against the Prepetition Term Loan Parties, or (ii) limiting the extension under Section 552(b) of the Bankruptcy Code of the liens of the Prepetition Term Loan Agent on the DIP Collateral or Prepetition Collateral to any proceeds, products, offspring, or profits of the DIP Collateral or Prepetition Collateral acquired by any Debtor after the Petition Date, or the commencement of other actions that is materially adverse to the Prepetition Term Loan Parties or their respective rights and remedies under the Prepetition Documents in any of the Cases or inconsistent with any of the Prepetition Documents;

(p)    if the Final Order does not include a waiver, in form and substance satisfactory to the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders) of (i) the right to surcharge the DIP Collateral or Prepetition Collateral under Section 506(c) of the Bankruptcy Code and (ii) any ability to limit the extension under Section 552(b) of the Bankruptcy Code of the liens of the Prepetition Term Loan Agent on the DIP

Collateral to any proceeds, products, offspring, or profits of the DIP Collateral or Prepetition Collateral acquired by any Debtor after the Petition Date;

(q)     an order of the Court shall be entered denying or terminating use of Cash Collateral by the Debtors;

(r)     an order (or request for order, unless actively opposed by the Debtors) materially adversely impacting the rights and interests of the Prepetition Term Loan Parties, as determined by the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders), shall have been entered by the Court or any other court of competent jurisdiction;

(s)     any Debtor shall challenge, support or encourage a challenge of any payments made to any Prepetition Term Loan Party with respect to the Prepetition Term Loan Obligations, or without the consent of the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders), the filing of any motion by the Debtors seeking approval of (or the entry of an order by the Court approving) adequate protection to any Prepetition Term Loan Party that is inconsistent with the Order;

(t)     without the Prepetition Term Loan Agent's consent (acting at the direction of the Required Term Loan Lenders), the entry of any order by the Court granting, or the filing by any Debtor of any motion or other request with the Court (in each case, other than the orders and motions seeking entry thereof or permitted amendments or modifications thereto) seeking, authority to use any cash proceeds of any of the DIP Collateral without the Prepetition Term Loan Agent's consent (acting at the direction of the Required Term Loan Lenders)  or to obtain any financing under Section 364 of the Bankruptcy Code;

(u)     any Debtor or any person on behalf of any Debtor shall file any

motion seeking authority to consummate a sale of assets of the Debtors or the DIP Collateral or Prepetition Collateral to the extent having a value in excess of $250,000 outside the ordinary course of business and not otherwise permitted hereunder;

(v)    any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables other than payments (i) under customary "first day orders" in accordance with the Budget and approved by the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders) in writing (provided that this Interim Order and all orders relating to cash management shall be acceptable to the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders in their sole discretion), and (ii) payments approved (A) by the Court and (B) in writing by the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders);

(w)    without the Prepetition Term Loan Agent's consent (acting at the direction of the Required Term Loan Lenders), any Debtor or shall file any motion or other request with the Court seeking (a) to grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens or security interests in any DIP Collateral or Prepetition Collateral, whether senior, equal or subordinate to the Prepetition Term Loan Agent's liens and security interests; or (b) to modify or affect any of the rights of the Prepetition Term Loan Parties under this Interim Order by any plan of reorganization confirmed in the Cases or subsequent order entered in the Chapter 11 Cases;

(x)    any Debtor shall take any action in support of any matter set forth in this paragraph 32 or any other person shall do so and such application is not contested in good faith by the Debtors and the relief requested is granted in an order that is not stayed pending

appeal;

(y)    any Debtor shall be enjoined from conducting any material portion of its business, any disruption of the material business operations of the Debtors (other than as contemplated by the Case Milestones) shall occur, or any material damage to or loss of material assets of any Debtor shall occur;

(z)    the automatic stay shall be modified, reversed, revoked or vacated without prior written consent of the Prepetition Term Loan Agent or order from the Court, which has a material adverse impact on the rights and interests of the Prepetition Term Loan Agent or the Prepetition Secured Parties.

33.    <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the Required Milestones (as defined on Schedule 5.17 to the DIP Agreement attached as <u>Exhibit B</u> to the DIP Motion), which are set forth on <u>Schedule 2</u> hereto (as may be amended from time to time in accordance with the DIP Documents and this Interim Order, the "<u>Case Milestones</u>").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones shall (a) constitute an Event of Default under the DIP Agreement and this Interim Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order; and (c) permit the DIP Agent, subject to paragraph 34, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents.

34.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default under any of the DIP Documents or this Interim Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject

to the terms of this Interim Order (a) the DIP Agent may declare (any such declaration shall be referred to herein as a "Termination Declaration") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable (including the cash collateralization of all outstanding letters of credit in accordance with the DIP Documents), (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and any other DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrower; and (b) the DIP Agent may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "Termination Date").  To the extent the DIP Obligations and the Prepetition ABL Obligations have been Paid in Full, the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders) may be entitled to make a Termination Declaration with respect to the foregoing clause (a), subclause (iv) and clause (b) in accordance with the same procedures set forth herein (the date upon which the Prepetition Term Loan Agent makes such Termination Declaration, the "Term Loan Termination Date").  The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Term Loan Agent and the Steering Committee, counsel to a Committee (if appointed), any affected landlord and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP Agent, the DIP Lenders and the Prepetition Secured Parties is hereby modified so that five (5) days after the date a Termination Declaration is delivered (the

"Remedies Notice Period"): (a) the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Interim Order to satisfy the DIP Obligations, DIP Superpriority Claim and DIP Liens, subject to the Carve Out; (b) the applicable Prepetition Secured Parties shall be entitled to exercise their rights and remedies in accordance with the applicable Prepetition Documents and this Interim Order to satisfy the relevant Prepetition Secured Obligations, Adequate Prepetition Superpriority Claims and Prepetition Adequate Protection Liens, subject to the Carve Out (to the extent applicable). During the Remedies Notice Period, the Debtors, a Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court.  Unless the Court orders otherwise, the automatic stay, as to all of the DIP Agent, DIP Lenders, and Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Agent, DIP Lenders, and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents, the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement and paragraph 30 of this Interim Order.

35.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have acted at arms' length in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.

36.    DIP and Other Expenses; Procedures for Payment of DIP Agent's, DIP Lenders' and Prepetition Secured Parties' Professional Fees and Expenses.  The Debtors are

authorized and directed to pay all reasonable and documented prepetition and postpetition fees and expenses of the DIP Agent and DIP Lenders in connection with the DIP Facilities, as provided in the DIP Documents, or incurred in connection with any proposed exit or acquisition financing, chapter 11 plan or transactions contemplated thereunder or sale transaction (including the preparation and negotiation of the documentation relating to any such exit or acquisition financing, plan or sale transaction), whether or not the transactions contemplated hereby are consummated, including reasonable and documented attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of reasonable and documented fees and expenses, including the fees and expenses of the ABL Advisors.  Payment of all professional fees and expenses of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties addressed in this Interim Order (including the ABL Advisors and the Term Advisors) shall not be subject to allowance by the Court.  Any time that professionals for the DIP Agent, DIP Lenders and the Prepetition Secured Parties (including the ABL Advisors and the Term Advisors) seek payment of fees and expenses from the Debtors, each professional shall provide copies of its invoices (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors.  Any objections raised by the Debtors, the U.S. Trustee or a Committee (if appointed) with respect to

the Debtors' payment of the amounts in such invoices must be filed with the Bankruptcy Court and served within ten (10) days of such party's receipt of such invoice, and any such objection shall be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay (or authorize the reimbursement from any prepetition retainers) on the Closing Date (as defined in the DIP Documents) all reasonable, undisputed and documented fees, costs and expenses, including fees and expenses of counsel, of the DIP Agent, the DIP Lenders and the Prepetition ABL Parties incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders or the Prepetition ABL Parties to first deliver a copy of its invoice as provided for herein.  No attorney or advisor to the DIP Agent, DIP Lenders or the Prepetition Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

37.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Agent and the DIP Lenders in accordance with the terms and conditions of the DIP Agreement. Upon the repayment in full in cash of the DIP Obligations, the Debtors shall pay $500,000 from proceeds of the DIP Collateral into an indemnity account (the "<u>DIP Indemnity Account</u>") subject to first priority liens of the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders. The DIP Indemnity Account shall secure contingent indemnification obligations and other contingent claims arising under the DIP Agreement, the other DIP Documents or otherwise in respect of the DIP Obligations until such time as the DIP Obligations are Paid in Full.

38.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the DIP Agent, the DIP Lenders, and Prepetition Secured Parties will not be required to

file proofs of claim in any of the Cases or Successor Cases for any claims arising under the DIP Documents or the Prepetition Documents.  The Debtors' stipulations, admissions, and acknowledgments and the provisions of this Interim Order shall be deemed to constitute a timely filed proof of claim for the DIP Agent, the DIP Lenders and the Prepetition Secured Parties with regard to all claims arising under the DIP Documents or the Prepetition Documents. Notwithstanding the foregoing, each of (a) the Prepetition ABL Agent on behalf of itself and the Prepetition ABL Parties and (b) the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in the Cases deemed to be filed in all Cases of the Debtors and asserted against all of the Debtors).  Any proof of claim filed by the Prepetition ABL Agent or Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties or Prepetition Term Loan Parties, respectively.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

39.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agent and DIP Lenders under the DIP Documents, the Debtors and their agents and advisors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent, DIP Lenders, and the Prepetition Secured Parties and their

respective advisors reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and Prepetition Documents, as applicable, including, without limitation, (a) upon reasonable advance notice, permit the DIP Agent and Prepetition Agents to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral; and (b) reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants, including Guggenheim Securities, LLC and Berkeley Research Group, LLC to cooperate, consult with, and provide to the DIP Agent, the Prepetition Agents, the Steering Committee, and their respective advisors all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Borrower or Guarantors.

40.    <u>Carve Out</u>.

(a)    Subject to the terms, conditions and limitations contained in this paragraph 40, but only to the extent and subject to the express exclusions set forth herein, the DIP Liens, DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "<u>Carve Out</u>"):

(i)    Allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(ii)    All accrued and unpaid fees (other than any "success," "restructuring," "transaction" or similar fees), disbursements, costs and expenses, allowed at any time by this Court and incurred by professionals retained by the Debtors or the Committee (the "Case Professionals"), at any time prior to the delivery of the Carve Out Trigger Notice (as defined below), but solely to the extent the same are incurred in accordance with the Budget and are reflected as estimated professional fees and disbursements in the most recent borrowing base certificate delivered to the DIP Agent by the Debtors prior to the delivery of a Carve Out Trigger Notice (which estimated professional fees and disbursements shall not be more than the amounts set forth in the Budget for such Case Professionals), less the amount of any prepetition retainers received by such Case Professionals and not previously returned or applied to fees and expenses; and

(iii)    All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $250,000 (the "Wind-Down Carve Out Amount") less the amount of any prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (ii) above.

(b)    So long as no Carve Out Trigger Notice has been issued by the DIP Agent, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code but solely to the extent the same are incurred in accordance with the Budget and are reflected as estimates in, and maintained as a reserve under, the most recent borrowing base certificate delivered to the DIP Agent by the Debtors prior to the delivery of the Carve Out Trigger Notice, as the same may be

due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve Out Amount.  The DIP Agent shall be entitled to maintain reserves against the borrowing base under the DIP Agreement at all times in an amount equal to: accrued and unpaid fees and expenses in accordance with the Budget and as reflected in the estimates provided on the most recent borrowing base certificate delivered to the DIP Agent by the Debtors *plus* the Wind-Down Carve Out Amount *plus* amounts payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and fees required to be paid to the Clerk of this Court pursuant to 28 U.S.C. § 156(c) *plus* an amount equal to the amounts reflected in the Budget for professional fees and expenses for the next three weeks.  The Carve Out shall not be deemed increased if actual fees are higher in fact than the Budget or the estimates provided on a borrowing base certificate.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtors and their counsel, the U.S. Trustee, the Prepetition Term Loan Agent and its counsel, and lead counsel to any Committee, which notice may be delivered at any time by the DIP Agent (i) at the time the DIP Obligations and the Prepetition ABL Obligations are to be Paid in Full or (ii) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice."  The DIP Agent, DIP Lenders, and Prepetition ABL Secured Parties shall have no liability whatsoever for the Carve-Out (including any amounts described in subsections (a)(1)-(iii) above following the earlier of (x) such time as the DIP Obligations and Prepetition ABL Obligations are Paid in Full and (y) funding of the Carve Out following delivery of a Carve Out Trigger Notice.  Any payment or reimbursement made on or after the delivery of the Carve Out Trigger Notice in respect of any fees or expenses of the Case Professionals shall permanently reduce the Wind-Down Carve Out Amount on a dollar-for-dollar

basis.  Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under the Interim Order, the DIP Documents, the Bankruptcy Code and applicable law.

(c)    Nothing herein, including the inclusion of line items in the Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agent, the Prepetition Agents, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

41.    <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>.  The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' permitted enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent or as permitted by the DIP Documents; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (d) incurring

Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Agent, except to the extent permitted under the DIP Agreement; (e) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens within sixty (60) days from the date of

formation of a Committee unless otherwise extended by the Court.

42.     Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professional or shall affect the right of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, but solely to the extent the same are incurred in accordance with (and not in excess of those amounts set forth in) the Budget and are reflected as estimates in, and maintained as a reserve under, the most recent borrowing base report delivered to the DIP Agent by the Debtors.

43.     Effect of Stipulations on Third Parties.

(a)     *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, a Committee (if appointed), unless, and solely to the extent that, a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge (as defined below) (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished) (i) has timely filed the pleadings, and timely commenced the proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 43 of this

Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (A) for a Committee, (if appointed), sixty (60) days from the date of formation of a Committee (if appointed), or (B) seventy-five (75) days following the entry of the Interim Order for any other party in interest with requisite standing (the earlier to occur of (A) and (B), the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Case to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause, and (2) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

(b)    *Binding Effect*.  To the extent no Challenge is timely commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before,

this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above.  To the extent any such Challenge proceeding is timely commenced, the Prepetition Secured Parties shall be entitled, subject to paragraph 35 herein, to payment of the reasonable related costs and expenses, including, but not limited to reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection.  Upon a successful Challenge brought pursuant to this paragraph 43, the Court may fashion any appropriate remedy.

44.    No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

45.    Section 506(c) Claims.  Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105

or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

46.    No Marshaling/Applications of Proceeds.    Subject to entry of a Final Order, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

47.    Section 552(b).    Subject to entry of a Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

48.    Access to DIP Collateral.    Subject to entry of a Final Order, upon expiration of the Remedies Notice Period, the DIP Agent, DIP Lenders and the Prepetition Secured Parties, subject to the Intercreditor Agrement, shall be permitted to (a) access and recover any and all DIP Collateral, and (b) enter onto any leased premises of any Debtor and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the DIP Collateral, *provided*, *however*, in the case of clause (b), the DIP Agent, DIP Lenders and/or Prepetition Secured Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agent, DIP Lenders and the Prepetition Secured Parties, as applicable, and any applicable

landlord, (ii) pre-existing rights of the DIP Agent, DIP Lenders and the Prepetition Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable DIP Agent, DIP Lender, or Prepetition Secured Party on such notice to the landlord as shall be required by this Court; *provided*, *however*, solely with respect to rent due to a landlord of any such leased premises, the DIP Agent, DIP Lenders, and/or the Prepetition Secured Parties, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after delivery of the Termination Declaration in accordance with paragraph 34 herein that is payable during the period of such occupancy by the DIP Agent, DIP Lenders, and/or Prepetition Secured Parties, as applicable, calculated on a daily per diem basis; *provided*, *further*, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease.  Nothing herein shall require the DIP Agent, DIP Lenders or the Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

49.   <u>Limits on Lender Liability</u>.  Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, the Prepetition Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  Subject to entry of a Final Order, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not, solely by

reason of having made loans under the DIP Facility or permitting the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).    Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

50.    <u>Insurance Proceeds and Policies</u>.    Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders) and the Prepetition Agents (on behalf of the Prepetition Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insured, lender loss payee, mortgagee and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (which shall not include directors and officers policies).

51.    <u>Additional Rights of Prepetition Term Loan Agent</u>.    Subject to the DIP Obligations and Prepetition ABL Obligations being Paid in Full, and subject to entry of a Final Order, any reference in this Interim Order to the DIP Agent or the Prepetition ABL Agent agreeing to or having the right to do, or refraining from or having the right to refrain from doing, an act, or providing any consent or waiver hereunder, shall automatically, without further order of the Court, be construed as referring to the Prepetition Term Loan agent (acting at the direction of the Required Term Loan Lenders).

52.    <u>Joint and Several Liability</u>.    Nothing in this Interim Order shall be

construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

53.    <u>No Superior Rights of Reclamation</u>.    Based on the findings and rulings herein regarding the integrated nature of the DIP Facility and the Prepetition Documents, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the Prepetition Liens.

54.    <u>Rights Preserved</u>.    Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's, DIP Lenders' and Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, DIP Lenders and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, DIP Lenders or Prepetition Secured Parties.

55.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, DIP Lenders, or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, Prepetition Secured Parties, a Committee (if appointed) or any party in interest.

56.     <u>Binding Effect of Interim Order</u>.  Subject to paragraph 43, immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

57.     <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent or the Prepetition Agents, (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other

than the Carve Out; (b) without the prior written consent of the DIP Agent or the Prepetition Agents, for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral in a manner inconsistent with this Interim Order or the Final Order, as applicable; (c) without the prior written consent of the DIP Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agents, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent or the Prepetition Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agents.

58.    Continuing Effect of Intercreditor Agreement. The Debtors, DIP Agent, DIP Lenders and Prepetition Secured Parties each shall be bound by, and in all respects of the DIP Facility shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement, except as expressly modified herein.

59.    Interim Order Controls. In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

60.    Discharge. The DIP Obligations, and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid

in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agent, DIP Lenders, and each of the Prepetition Agents, as applicable, has otherwise agreed in writing.  None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the DIP Obligations being Paid in Full, and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the written consent of each of the DIP Agent, DIP Lenders, and the Prepetition ABL Agent, as applicable. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

61.    Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders and Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this

Interim Order, have been Paid in Full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated; (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents and this Interim Order, have been Paid in Full; and (iii) in respect of the Prepetition Term Loan Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Interim Order have been indefeasibly paid in full in cash.  The terms and provisions concerning the indemnification of the DIP Agent and DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment in full in cash of the DIP Obligations.  In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Term Loan Parties notwithstanding the repayment in full of or termination of the DIP Obligations or the Prepetition ABL Obligations.

62.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **March 6, 2019, at 1:00 p.m. (ET)** before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware.  On or before February 8, 2019, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal

Revenue Service.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than **February 27, 2019, at 4:00 p.m. (ET)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attn: Seth Van Aalten and Michael A. Klein, and Bayard, P.A., 600 North King Street, Suite 400, P.O. Box 25130, Wilmington, DE, Attn: Justin Alberto and Erin Fay; (ii) counsel to the DIP Agent and the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, One Federal Street, Boston, MA 02110, Attn: Julia Frost-Davies and Christopher L. Carter, and Richards Layton & Finger, P.A., One Rodney Square, 920 North King St., Wilmington, DE 19801, Attn: Mark D. Collins; (iii) counsel to the Prepetition Term Loan Agent and the Steering Committee, King & Spalding LLP, 1185 6th Ave., New York, NY 10036, Attn: Michael Collins Rupe and W. Austin Jowers and Chipman Brown Cicero & Cole, LLP, 1313 N. Market St. #5400, Wilmington, DE 19801, Attn: William E. Chipman, Jr.; (iv) counsel to the Committee (if appointed); and (v) Jane M. Leamy, Esquire, Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington DE, 19801.

       63.    *Nunc Pro Tunc* Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

64.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim Order.

**Dated: February 5th, 2019**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**