## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHARLOTTE RUSSE HOLDING, INC., *et al.*,[1] | Case No. 19-10210 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Hearing: March 6, 2019 at 1:00 p.m. (ET)**<br>**Objection Deadline: March 1, 2019 at 4:00 p.m. (ET)[2]**<br>**Re: Docket No. 15** |

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CHARLOTTE RUSSE HOLDING, INC., *ET AL.* TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through undersigned proposed counsel, hereby submits this objection (the "Objection") to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 15] (the "DIP Motion"). In support of this Objection, the Committee respectfully states as follows:

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding, Inc. (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456). The Debtors' headquarters are located at 5910 Pacific Boulevard, Suite 120, San Diego, CA 92121.

[2] Extended for the Committee by agreement.

10044775v3

## PRELIMINARY STATEMENT[3]

1.     The proposed Final DIP Order as it currently stands is an attempt by the Debtors' lenders to "have their cake and eat it too."  Through the Final DIP Order, the Prepetition Secured Parties seek overreaching protections that are unnecessary in light of their positions in the case and specifically designed to further limit the rights of unsecured creditors who are looking at potentially meager, if any, recoveries, in these Cases.

2.     The DIP Lenders and Prepetition ABL Lenders are sufficiently secured by their liens in their existing collateral.  Nonetheless, they seek additional liens and claims on avoidance actions.   Moreover, they seek to obtain all the benefits of a roll-up of their prepetition obligations, but seek specific language to abrogate the rights of reclamation claimants and not provide for payment of those claimants' potential administrative claims under section 503(b)(9) of the Bankruptcy Code.

3.     The undersecured Prepetition Term Loan Parties seek an overly expansive adequate protection package and rights that would give them excessive control over these Cases after payoff of the DIP Obligations.  The Court should limit these protections to only what is actually necessary to adequately protect the Prepetition Term Loan Parties.

4.     Specifically, first, the Court should not grant the Prepetition Secured Parties any waivers of the rights afforded pursuant to sections 506(c) and 552(b) of the Bankruptcy Code without an acceptable case Budget that includes provision of payment for all stub rent, all 503(b)(9) administrative expense claims, and an adequate budget for the Committee's professionals to represent the Committee in the exercise of its fiduciary obligations.

---

[3] All capitalized terms used but not defined shall have the meanings ascribed to them in the DIP Motion.

10044775v3

5.      Second, the request for a waiver of the equitable doctrine of marshaling should be denied in this case.  It is the Committee's understanding that the Prepetition ABL Parties do not have a first priority lien on all of the Debtors' assets and that the Prepetition Term Loan Parties have a first priority on certain of the Debtors' assets.  Accordingly, the utility of the marshaling doctrine in this case could be a significant tool if proven that either of the Prepetition Secured Parties are not properly perfected and secured.  This may be one of the only avenues for any recovery to general unsecured creditors and therefore, it is unusually important here.

6.      Third, the Court should deny the request for liens on previously unencumbered property, including liens on the proceeds of avoidance actions.  As is customary, at a minimum, these unencumbered assets should remain unencumbered for the benefit of general unsecured creditors.

7.      Finally, the Prepetition Term Loan Parties have inserted overbearing Events of Default in their favor into the Final DIP Order, which in large part should be denied or revised. Proceeds from the proposed sale are anticipated to pay off the DIP Obligations and Prepetition ABL Obligations.  If the proposed Events of Default are approved, the Prepetition Term Loan Parties will wield an inordinate amount of control over these Cases, in which they are not providing any new financing to the estate.  Given the Committee's ongoing investigation the validity of the Prepetition Secured Parties' liens, these provisions must be revised if the unsecured creditors are to have some hope of recovery.

8.      While the Committee has taken proactive steps to resolve as many of its issues as possible in advance of the hearing, there are certain key provisions of the Final DIP Order that must be revised or excised, as the case may be, in order for the Court to consider approving the DIP Motion on a final basis.  The Committee will continue to work with the parties to resolve or

10044775v3

significantly narrow the issues before the Court, but there are, at least, four issues that are the most significant to the Committee.

9.      Without certain modifications, the proposed Final DIP Order does not comply with applicable law and equitable principles that underlie the Bankruptcy Code.  This Objection details the Committee's objections and necessary modifications that address the Committee's concerns, all in an attempt to level the playing field and provide the Prepetition Secured Parties with appropriate—not over-reaching—protections for the use of the proceeds of the DIP and the Prepetition Secured Parties' Cash Collateral.  Absent these modifications, the DIP Motion should be denied.

## RELEVANT BACKGROUND

10.      On February 3, 2019 (the "Petition Date"), the Debtors filed voluntary cases with this Court for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue to operate their business and manage their property as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.      No trustee or examiner has been appointed in these Chapter 11 Cases.

12.      Also on the Petition Date, the Debtors filed the DIP Motion, seeking entry of an Interim Order (the "Interim DIP Order"), authorizing, among other things, (i) the DIP Facility, consisting of $50,000,000; (ii) execution of the DIP Agreement and DIP Documents; (iii) allowed superpriority administrative expense claims on account of the DIP Obligations; (iv) automatically perfected security interests in and liens on all of the DIP Collateral; (v) the payment of principal, interest, fees, expenses and other amounts payable under the DIP Documents; (vi) the use of the Prepetition Collateral, including the Cash Collateral of the Prepetition ABL Parties and the Prepetition Term Loan Parties; (vii) adequate protection of the

4

Prepetition ABL Parties and the Prepetition Term Loan Parties for any diminution in value of their interests in the Prepetition Collateral; (viii) the modification of the automatic stay to the extent necessary to implement and effectuate the terms of the DIP Documents; and (ix) scheduling a final hearing to consider the relief requested in the DIP Motion on a final basis.

13.    On February 5, 2019, the Court entered the Interim DIP Order [Docket No. 92], which incorporated the Court's comments and rulings on the record at the first day hearing. By the Interim DIP Order, the Debtors seek approval of a final order (the "<u>Final DIP Order</u>"), approving the financing and related relief requested in the DIP Motion, at a hearing scheduled for March 6, 2019 at 1:00 p.m. (ET) with any objections due to be filed by February 27, 2019 at 4:00 p.m. (ET).

14.    On February 13, 2019, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed the Committee, consisting of the following seven members: (i) Valueline Group Co Ltd.; (ii) Ven Bridge Co. Ltd.; (iii) Shantex Group LLC; (iv) Global Capital Fashion Inc.; (v) Jainson's International, Inc.; (vi) Simon Property Group, L.P.; and (vii) Brookfield Property REIT Inc. [Docket No. 156].

15.    On February 13, 2019, the Committee selected WTP as its proposed counsel and Province, Inc. as its proposed financial advisor in these Chapter 11 Cases.

<strong><u>OBJECTION</u></strong>

16.    Section 364 of the Bankruptcy Code permits a debtor to obtain post-petition financing that is necessary to preserve the debtor's estate, provided that the debtor has exercised its "basic business judgement consistent with [its] fiduciary duties" in negotiating and securing such financing. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990); 11 U.S.C. § 364. The debtors bear the burden of proving that: (i) the proposed financing is an

exercise of sound and reasonable business judgment; (ii) the financing is in the best interests of the estate and its creditors; (iii) the transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the debtor's business; (iv) the terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor-borrower and proposed lender; and (v) the financing was negotiated in good faith and at arm's length by the debtor, on the one hand, and the lender, on the other hand. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011); *In re St. Mary Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1998); *In re Tenney Vill. Co., Inc*., 104 B.R. 562, 569 (Bankr D.N.H. 1989) ("The [d]ebtor's pervading obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries."). In short, the financing's terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit" of a secured creditor. *Tenney Vill*., 104 B.R. at 568.

17.     Financing approved under section 364 should not allow secured creditors to undo the level "playing field" contemplated by the Bankruptcy Code. For this reason, courts have emphasized that they must guard against proposals that threaten to tilt a case in favor of one group over another and prejudice a party's rights at an early stage. Acknowledging that Congress, in Chapter 11 delicately balanced the hope of debtors to reorganize and the expectations of creditors for payment, the courts have focused their attention on proposed terms that would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits. *Ames Dept. Stores*, 115 B.R. at 37; *see also Tenney Vill.*, 104 B.R. at 568.

10044775v3

## I.    The Court Should Deny Section 506(c) and 552(b) Waivers and Reclamation Protections Unless an Adequate Budget Is Presented that Includes Payment of All Administrative Claims.

18.    Absent an adequate Budget that ensures the payment of all administrative claims of these estates, including the timely payment of all normal course operating expenses, payment of stub rent and 503(b)(9) claims, the advance waivers under sections 506(c) and 552(b) of the Bankruptcy Code requested by the Debtors and the Prepetition Secured Parties are inappropriate and must be denied. *See* Interim DIP Order ¶¶ 45, 47.[4]

19.    Section 506(c) of the Bankruptcy Code allows a debtor to charge the costs of preserving or disposing of a secured lender's collateral to the collateral itself. This provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor recoveries. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 12 (2000). This section is designed to "prevent a windfall to the secured creditor…[Section 506(c)] understandably shifts to the secured party…the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate." *Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995).

20.    Courts routinely reject the waiver of surcharge rights under § 506(c) where the costs of the administration of the cases are not included in the budget. *See, e.g.*, *In re Colad Grp., Inc.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005); *Hartford Fire Ins. Co. v. Norwest Bank Minn., N.A. (In re Lockwood Corp.)*, 223 B.R. 170, 176 (B.A.P. 8th Cir. 1998); *McAlpine v. Comerica Bank-Detroit (In re Brown Bros, Inc.)*, 136 B.R. 470, 474 (W.D. Mich. 1991). In this

---

[4] Likewise, the arguments contained herein apply with equal force to the Events of Default relating to sections 506(c) and 552(b). *See* Interim DIP Order ¶ 32(h), (o), and (v).

10044775v3

district, courts also refuse to enforce waivers of section 506(c) surcharge rights when a creditors' committee objects to the waiver. *See, e.g.*, Hr'g Tr. 20-21, *In re Mortg. Lenders Network USA, Inc.*, No. 07-10146 (PJW) (Bankr. D. Del. Mar. 27, 2007) [Docket No. 346] ("Well, let me tell you what the law in this Court's been for at least the last five years. If the Committee doesn't agree with the waiver, it doesn't happen.");[5] *see also* Hr'g Tr. 212:12-22, *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 5, 2014) [Docket No. 3927] (declining to approve a 506(c) waiver over objection and stating that "Judge Walsh once told me that he'd never approve a 506(c) waiver on a non-consensual basis"); Hr'g Tr. 101:7-9, *In re NEC Holdings Corp.*, No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) [Docket No. 224] (stating that "you don't give a 506 waiver over an objection by the committee").

### A. 503(b)(9) Claims Must Be Included in the Budget

21.     The Committee understands that stub rent is being provided for in the Budget in connection with approval of the DIP Motion on a final basis; however, there is no line item in the budget for 503(b)(9) claims. As Judge Sontchi has stated, "admin claims are admin claims" which should be treated with equality. Hr'g Tr. 78:14, *In re NEC Holdings Corp.*, No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) (countering an argument where counsel tried to distinguish between budgeting for other administrative claims and 503(b)(9) claims); Hr'g Tr. 23:25-24:9, *In re Townsends, Inc.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011) (holding, despite a settlement with the committee, that the Court was "[n]ot going to run an administratively insolvent estate. There are benefits to the current administrative claims that are accruing. There are benefits to the unsecured creditors. But it can't be done on the back of the 503(b)(9) admin

---

[5] All hearing transcripts cited herein will be provided to the Court or parties-in-interest upon request.

claims, which are admin claims.  Congress has made that determination.").  Indeed, the Court has

held many times that DIP lenders must "pay the freight" in the form of an administratively

solvent estate in order to liquidate their collateral through the chapter 11 process.  Hr'g Tr.

100:12-101:6, *In re NEC Holdings Corp.*, No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010)

(stating that "there has to be something other than a wing and a prayer on the payment of the

admin claims."); *see also* Hr'g Tr. 39:24-40:1, *In re AFA Investments Inc.*, No. 12-11127 (MFW)

(Bankr. D. Del. July 12, 2012) (Judge Walrath stating that "you're not going to come in here and

let administratives accrue just for your own benefit" when discussing payment of 503(b)(9)

claims in the context of approval of a sale, and holding that certain sale proceeds will be

escrowed pending resolution of a dispute between 503(b)(9) claimants and second lienholders);

Hr'g Tr. 32:25-33:14, *In re Maxus Energy Corp.*, Case No. 16-11501 (CSS) (Bankr. D. Del.

Aug. 15, 2016) ("I am extremely troubled as to how I approve a DIP that makes a case

administratively insolvent…[and] if I were to approve the DIP the case would be

administratively insolvent and if I've said it once I've said it a thousand times that I won't even

run an administratively insolvent estate.  I certainly am not going to or I would be very reluctant

to approve a loan that results in something that I've said many times I won't countenance which

is an administratively insolvent estate."); Hr'g Tr. 23:25-24:9, *In re Townsends, Inc.*, Case No.

10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011) ("So certainly I would have a problem running

any case that was administratively insolvent.  But one that is both administratively insolvent and

prefers one set of administrative creditors over another is doubly troubling."); Hr'g Tr. 14:13-18,

*In re SP Newsprint Holdings LLC*, Case No. 11-13649 (CSS) (Bankr. D. Del. Dec. 16, 2011)

("Well, I mean I've said it many times before, you know, you're not coming in and running a

case where you're not going to pay administrative expense claims including your 503(b)(9)

claims.  There's nothing in the code that draws any kind of distinction between administrative claims and 503(b)(9) claims.").

22.     In *NEC Holdings*, Judge Sontchi acknowledged that provision of 503(b)(9) claims does not necessarily need to be in the DIP budget, "but there has to be something – and again, not a guarantee, but something, some evidence that there's a possibility -- ***probability*** that they'll be paid." *Id.* (emphasis added).  For that reason and the more simple reason that the Court does not give a 506(c) waiver of an objection by the committee, Judge Sontchi declined to grant a 506(c) waiver to the DIP lenders.  *Id.* at 101:7-13.  Likewise, in *Townsends*, the Court approved a settlement reached between the parties after eliciting sufficient evidence (some of which was confidential) that "there's ***sufficient likelihood*** that we'll get where we need to go in order for 503(b)(9) claims to be paid in full[.]"  Hr'g Tr. 14:23-15:18, *In re Townsends, Inc.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 25, 2011) (emphasis added).   In ruling, the Court acknowledged that it doesn't "ask the debtors or anyone to be insurers of getting claims paid," but the Court requires evidence to demonstrate that there is a "sufficient likelihood" that 503(b)(9) claims (and, in fact, all administrative claims) will be paid.  *Id.* at 11-15.

23.     In *Central Grocers*, this Court was confronted with a very similar argument at a final DIP hearing, except with one important distinction.  There, several trade creditors pressed objections to final approval of the DIP motion, arguing that 503(b)(9) claims were not included in the DIP budget and must be included if a 506(c) waiver was going to be granted.  The Court acknowledged the dilemma, stating that the DIP lender had "accommodated every other constituency except one, that's being left out, which is the 503(b)(9) claims" and that these claimants were being "singled out for disparate treatment."  Hr'g Tr. 43, *In re Central Grocers, Inc.*, Case No. 17-10993 (LSS) (Bankr. D. Del. June 2, 2017).  However, the Court noted that the

10044775v3

committee was not pressing this issue because it reached a settlement of its DIP objection in advance of the hearing. *Id.* at 90-91. Therefore, this Court approved "the deal that the committee struck and permit[ted] the waiver of 506(c) claims[.]" *Id.* at 91.

24.     In this case, 503(b)(9) claims are not provided for in the Budget and the Committee has not received any evidence demonstrating that there is a likelihood or probability that these claims will be paid, let alone in full. Of course, one way to alleviate this concern is to simply include a line item in the Budget for 503(b)(9) claims. Given the current stalking horse liquidation bid, the Debtors' creditors should not bear the risk of administrative insolvency. Without including 503(b)(9) claims in the Budget or the Debtors demonstrating a probability they will be paid, a 506(c) waiver should not be granted by this Court and over the Committee's objection.[6]

### B. The Reclamation Rights Waiver Must Be Denied Unless 503(b)(9) Claims Are Included in the Budget

25.     The inclusion of paragraph 53 of the Interim DIP Order (the "Reclamation Rights Waiver"),[7] which seeks to nullify the impact of the Court's ruling in *In re Reichhold Holdings US, Inc.*, 556 B.R. 107 (Bankr. D. Del. 2016) and provide that the roll-up of the Prepetition ABL Loan into the DIP ABL Loan shall not have the impact of elevating properly asserted

---

[6] Alternatively, if the Court is unwilling to strike the Debtors' waiver of their own section 506(c) rights, the Committee should be explicitly vested with standing to seek a surcharge against the Prepetition Secured Parties' collateral if the facts ultimately prove that a surcharge is appropriate in these circumstances. Providing the Committee with standing to seek a section 506(c) surcharge will preserve estate assets for the benefit of all unsecured creditors. Here, it is particularly appropriate because no Credit Party can seek to surcharge the Collateral and if the Debtors' waiver is approved, no other party will be able to assert this important right.

[7] "No Superior Rights of Reclamation. Based on the findings and rulings herein regarding the integrated nature of the DIP Facility and the Prepetition Documents, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the Prepetition Liens." Interim DIP Order ¶ 53.

11

10044775v3

reclamation rights, is particularly inappropriate where 503(b)(9) claims are not provided for in the Budget.  *See id.* at 111-12 (concluding that the DIP lenders did not have prior rights in the goods under section 546(c) and that despite the DIP loan repaying the prepetition loan, reclamation rights were not extinguished).  By inserting this provision, the DIP Lenders are clearly seeking to have their cake and eat it too—they want all the benefits of a roll-up without the burdens and seek to strip the rights of reclamation claimants, many of whom have 503(b)(9) claims, without providing any consideration on account of such claims.  *See, e.g.*, Docket Nos. 144, 187, 200, 208, 222 & 223 (asserting reclamation claims totaling $3,574,705.70 filed in these Cases, as of the filing of this Objection).  Absent a Budget to provide for payment of 503(b)(9) claims, the Court should not approve the inclusion of the Reclamation Rights Waiver.

### C. The Budget Must Provide for Adequate Committee Professionals' Fees in order to Effectively Exercise its Fiduciary Duties

26.    Additionally, the Budget must include an adequate provision for the fees and expenses of the Committee's proposed advisors in order for the requested 506(c) waiver to be appropriate.  In this District, courts typically deem a committee professionals' fee budget adequate when it is approximately 33% of the Debtors' professionals' fee budget.  *See, e.g.*, *In re Cal Dive Int'l, Inc.*, Case No. 15-10458 (CSS), 2015 WL 9487852 (Bankr. D. Del. Dec. 28, 2015) (granting committee counsel's first interim fee application and noting that committee counsel fees were approximately 30% of Debtors' counsel); *In re Eastern Outfitters, LLC*, Case No. 17-10243 (LSS) (Bankr. D. Del. Mar. 31, 2017) [Docket No. 260] (approving final DIP Financing order where the budget reflected committee professional fees being approximately 35% of the Debtors' professional fees); *In re Pacific Sunwear of California, Inc.*, Case No. 16-10882 (LSS) (Bankr. D. Del. Apr. 7, 2016) (approving fees and expenses of Committee

professionals totaling approximately 35% of those incurred by the Debtor's professionals); *In re The Wet Seal, LLC*, Case No. 17-10229 (CSS) (Bankr. D. Del. Feb. 2, 2017) [Docket No. 463] (cash collateral budget providing for committee fees and expenses of up to approximately 39% of those incurred by the Debtor's professionals for an eight-month period); *In re Channel Master Holdings, Inc.*, No. 13-13004, 2004 Bankr. LEXIS 576, *8-9 (Bankr. D. Del. Apr. 26, 2004) (refusing to enforce a $75,000 cap on committee's professional fees under a postpetition financing facility, finding such cap unreasonable in light of the much larger caps on the other professionals in the case); *In re Evergreen Solar, Inc*., Case No. 11-12590 (MFW), Hr'g Tr. (Docket No. 189) at 42-51 (Bankr. D. Del. Sept. 6, 2011) (declining to apply the debtor's proposed caps and instead, substituted a general pool for all professionals from which debtor and committee professionals could recover fees on a pro rata basis).

27.    The Committee has requested a budget of $1,800,000, which will enable the Committee to exercise its fiduciary duties and perform the necessary investigations in these Cases.  This amount represents approximately 27% of the $6,665,000 budgeted for the Debtors' professionals, which is in line with precedent in this District and will enable the Committee to function as intended by Congress.

28.    On top of all the standard work the Committee professionals must do, the Committee's financial advisor has spent a substantial amount of time on the marketing and sale process, working with potential bidders to bring additional buyers to the table to create value for all creditors.

***D. The Waiver of Section 552(b) Should Be Denied Unless All Administrative Expense Claims Are Included in the Budget***

29.     Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee or other party-in-interest to exclude post-petition proceeds from prepetition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. "The purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustees/debtor-in-possessions use of other assets of the estate (which normally would go to general creditors) to cause the appreciated value." *In re Muma Servs.*, 322 B.R. 541, 558-559 (Bankr. D. Del. 2005) (quoting *Delbridge v. Prod. Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 826 (E.D. Mich. 1989)).

30.     As recoveries for unsecured creditors are highly speculative at this point, a prospective a waiver of the "equities of the case" exception contained in section 552(b) is wholly inappropriate and should be stricken. *See, e.g.*, *In re Metaldyne Corp.*, 2009 WL 2883045, at *6 (Bankr. S.D.N.Y. June 23, 2009) (holding, in the context of a proposed 552(b) waiver, that "the waiver of an equitable rule is not a finding of fact…and the Court, in its discretion, declines to waive prospectively an argument that other parties in interest may make"); *see also In re iGPS Co. LLC*, No. 13-11459 (KG) (Bankr. D. Del. July 1, 2013) [Docket No. 225] (no waiver of the "equities of the case" exception with respect to creditors committee); *In re Namco, LLC*, No. 13-10610 (PJW) (Bankr. D. Del. Mar. 24, 2013) [Docket No. 5] (same); *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. Apr. 29, 2009) [Docket No. 281]  (no waiver of the "equities of the case" exception); *In re Quebecor World (USA) Inc.*, No. 08-10152 (JMP) (Bankr.

14

S.D.N.Y. Apr. 1, 2008) [Docket No. 470] (same); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 26, 2006) [Docket No. 635] (same).

31.    It is entirely inappropriate for the proposed Final DIP Order to foreclose these potentially valuable sources of recovery for unsecured creditors.  If unencumbered assets are used to maintain or increase the value of that collateral, unsecured creditors should be able to argue that such value inures to them, and not to the Prepetition Secured Parties.  *See, e.g.*, *In re Metaldyne Corp.*, 2009 WL 2883045, at *6 (Bankr. S.D.N.Y. June 23, 2009) ("[T]he Court, in its discretion, declines to waive prospectively an argument that other parties in interest may make. If, in the event, the Committee or any other party [in] interest argues that the equities of the case exception should apply to curtail a particular lenders' rights, the Court will consider it.").

32.    To the extent the Prepetition Secured Parties wish to receive the benefits of a chapter 11 process undertaken exclusively for their benefit, they must pay the associated costs. The Debtors should not be permitted to waive their statutory ability to compel the secured lenders to pay their own way.  The Committee submits that waiver of these rights, without the consent of the Committee, is inappropriate under these circumstances.

## II.    The Equitable Doctrine of Marshaling Is Potentially Important in this Case and Cannot Be Waived.

33.    The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties should not be exempted from their equitable duty to marshal their collateral in a liquidation.  *See* Interim DIP Order ¶ 46.  "Marshalling is an equitable doctrine developed historically and traditionally used to prevent a junior lienholder with a security interest in a single property from being' squeezed out by a senior lienholder with a security interest not only in that property, but in one or more additional properties."  *In re Spectra Prism Indus., Inc.*, 28 B.R. 397, 398 (B.A.P. 9th

Cir. 1983) (citation omitted).  "The doctrine requires the senior lienholder to first resort to assets free of the junior lien to avoid the inequity which would otherwise result from the unnecessary elimination of the junior lienholder's security with the increased likelihood the junior creditor will be unable to satisfy its claim."  *Id.* at 398-99 (citation omitted).  Such an exemption here would enable these parties to cherry pick the collateral they could liquidate most expeditiously, without regard for the overall value realized by the estate.  It would also allow the DIP Lenders to liquidate collateral in a fashion calculated to maximize the recovery to Prepetition Term Loan Parties.

34.     This issue is even more pressing in the context of this case for at least two reasons.  First, the Committee understands that the Prepetition ABL Parties and Prepetition Term Loan Parties had first priority liens on different sets of collateral.  That is, the Debtors assert, subject to the Committee's right to challenge and investigate, that the Prepetition ABL Parties have first priority liens on the Prepetition ABL Collateral and the Prepetition Term Loan Parties have second priority liens on the Prepetition ABL Collateral.  Similarly, and subject to the Committee's right to challenge and investigate, the Prepetition Term Loan Parties have first priority liens on the Prepetition Term Loan Collateral and the Prepetition ABL Parties have second priority liens on the Prepetition Term Loan Collateral.  *See* DIP Motion ¶¶ 10-15. Accordingly, if either the Prepetition ABL Parties or the Prepetition Term Loan Parties are found not to be properly perfected and secured, or could otherwise be "avoided under sections 554, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property...."  11 U.S.C. § 550(a).  It is important to preserve the ability to recover an "unperfected" higher

16

priority lien for the benefit of the estate rather than simply allowing such value to go to the next secured creditor.

35.     Although the common law doctrine of "marshaling" is generally an equitable remedy to be invoked by junior secured or lien creditors, sections 544(a) and 1107 of the Bankruptcy Code confer upon the Debtors' estates the power to invoke marshaling to require a secured creditor to first satisfy its claims from previously encumbered assets, thus preserving encumbered assets for the benefit of all creditors.  *See Kittay v. Atl. Bank of N.Y. (In re Global Serv. Grp. LLC)*, 316 B.R. 451, 463 (Bankr. S.D.N.Y. 2004) ("The trustee has standing to invoke marshaling because he has the status of a hypothetical lien creditor."); *see also Berman v. Green (In re Jack Green's Fashions for Men Big & Tall)*, 597 F.2d 130, 133 (8th Cir. 1979) ("Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases. In this case it would be in the highest degree inequitable to allow the [secured lender] to exhaust the business assets of the corporate bankrupt without first looking to the real estate mortgaged to it. To permit such a course would leave the general creditors of the business with nothing.") (citation omitted); *In re Szwyd*, 394 B.R. 230 (Bankr. D. Mass. 2008) (holding that the trustee's status as a hypothetical judicial lienholder grants the trustee the standing to seek application of the marshaling doctrine).[8]

36.     Importantly, the Committee is investigating the validity, perfection and priority of the Prepetition Secured Parties' liens as well as claims and causes of action against the

---

[8] If a debtor refuses to bring a colorable claim of marshaling, then an unsecured creditor may be granted derivative standing to do so. *See, e.g.*, *Official Comm. of Unsecured Creditors v. Hudson United Bank (In re America's Hobby Ctr., Inc.)*, 223 B.R. 275, 287 (Bankr. S.D.N.Y. 1988) ("[S]tanding in the shoes of the debtor in possession, the Committee can assert [marshaling] claim."); *In re Newcorn Enters. Ltd.*, 287 B.R. 744, 750 (Bankr. E.D. Mo. 2002) (granting unsecured creditors' committee derivative standing to bring marshaling claim against secured lender, and thereby increase pay-out to unsecured creditors, where debtor refused to do so).

Prepetition Secured Parties.  To the extent that the Committee's investigation uncovers causes of action and litigation is successful, or that viable claims against the Prepetition Secured Parties exist, the Committee could recover the value of the liens for the estate and step into the shoes of a secured creditor able to invoke the right of marshaling without such right being conferred upon the Committee.  However, if this potentially valuable right is waived at this early stage in the case, that will foreclose this opportunity for general unsecured creditors.  Accordingly, the doctrine of marshaling may be of significant value to unsecured creditors under the circumstances of these cases and should be preserved at this early juncture.

### III.    The Court Should Not Permit Liens on Previously Unencumbered Assets, Including Avoidance Actions or the Proceeds Thereof.

37.    The Committee objects to the Final DIP Order in that it seeks to place liens on previously unencumbered assets, including the proceeds of avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents and the proceeds of the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code.  *See* Interim DIP Order ¶ 5.

38.    Avoidance actions, in particular, are uniquely for the benefit of general unsecured creditors of the estate and not secured creditors.  The intent behind avoidance powers and a debtor's power to bring causes of action is to allow the debtor in possession to gain recoveries for the benefit of all unsecured creditors.  *See Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partn. IV*, 229 F.3d 245, 250 (3d Cir. 2000); *In re Sweetwater*, 55 B.R. 724, 735 (D. Utah 1985) (avoiding powers are meant to benefit creditors generally and promote equitable distribution among all creditors).  Accordingly, bankruptcy courts customarily restrict the ability of debtors in possession to pledge avoidance actions and their proceeds as

security. *See, e.g.*, *In re Goold Electronics Corp.*, 1993 WL 408366 (N.D. Ill. Sept. 22, 1993) (vacating DIP financing order to the extent that the order granted the lender a security interest in the debtor's preference actions); *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partnership IV*, 229 F.3d 245, 250 (3d Cir. 2000) (stating, "when recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors"); *Mellon Bank, N.A. v. Glick (In re Integrated Testing Prods. Corp.)*, 69 B.R. 901, 904 (D.N.J. 1987) (finding that only the trustee, acting on behalf of all creditors, has a right to recover payments made as preferences); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243-47 (3d Cir. 2000) (holding that a fraudulent transfer claim belongs to creditors and not to a chapter 11 debtor-in-possession); *Official Comm. of Unsecured Creditors v. Goold Electronics Corp. (In re Goold Electronics Corp.*), 1993 WL 408366 at *3-4 (N.D. Ill. Sept. 22, 1993) (vacating lien on preference actions granted under DIP financing order); *In re Tribune Co.*, 464 B.R. 126, 171 (Bankr. D. Del. 2011) (noting "that case law permits all unsecured creditors to benefit from avoidance action recoveries"); *Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.*), 390 B.R. 784, 786-87 (Bankr. S.D.N.Y. 2008) ("Avoidance actions . . . never belonged to the Debtor, but rather were creditor claims that could only be brought by a trustee or debtor in possession . . . ."); *In re Sweetwater*, 55 B.R. 724, 731 (D. Utah 1985) ("The avoiding powers are not 'property' but a statutorily created power to recover property."), *rev'd on other grounds*, 884 F.2d 1323 (10th Cir. 1989); *In re Sapolin Paints, Inc.*, 11 B.R. 930, 937 (Bankr. E.D.N.Y. 1981) (reciting "the well-settled principle that neither a trustee . . . nor a debtor-in-possession, can assign, sell *or otherwise transfer* the right to maintain a suit to avoid a preference") (emphasis added).

19

39.     Courts in this District have expressed hesitation to grant liens on previously unencumbered assets of a debtor's estate, where such assets would otherwise inure to the benefit of unsecured creditors.  *See* Hr'g Tr. 21:17-20, 26:9-23, *In re SFX Entm't, Inc.*, No. 16-10238 (MFW) (Bankr. D. Del. Mar. 4, 2016) [Docket No. 198] (refusing to grant liens to DIP lenders on unencumbered assets, but permitting DIP lenders to retain liens on commercial tort claims to the extent such lenders had existing interests in such claims).  Hence, avoidance actions and the net proceeds thereof should remain unencumbered for the benefit of the unsecured creditors.  *See, e.g.*, *In re Excel Maritime Carriers, Ltd.*, No. 13-23060 (RDD) (Bankr. S.D.N.Y. Aug. 6, 2013) [Docket No. 133] (granting the use of cash collateral and adequate protection but excluding avoidance actions and proceeds thereof from property that could be used to pay super-priority claims under § 507(b) and from the scope of adequate protection liens).  Moreover, it would be particularly inappropriate give the Prepetition Secured Parties a lien on any avoidance actions against Prepetition ABL Parties, and Prepetition Term Loan Parties themselves.  Such a grant could be akin to a release of those parties.

40.     For these reasons, the request for liens on previously unencumbered property and specifically liens on the proceeds of avoidance actions and the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code should be denied.

### IV.     The Events of Default in Favor of the Prepetition Term Loan Agent Are Overbearing and Would Grant Them Undue Control.

41.     The Prepetition Term Loan Agent seeks approval of onerous Events of Default through the Final DIP Order, despite not being a DIP Lender itself.  *See* Interim DIP Order ¶ 32. Many of these Events of Default are not justified under the circumstances, and only seek to gift the Prepetition Term Loan Agent undue influence in these Cases after the Prepetition ABL

Obligations and DIP Obligations are indefeasibly paid off.  For example, one Event of Default would grant the Prepetition Term Loan Agent the ability to call a default if the Debtors obtained financing *junior* to the Prepetition Term Loan Obligations, *see* Interim DIP Order ¶¶ 32(t), (w), while a separate Event of Default seeks to cut off the Committee' Challenge rights.  *See id.*  ¶ 32(n).  Even more egregious is the Event of Default in favor of the Prepetition Term Loan Agent for any order that "materially adversely" impacts the rights and interests of the Prepetition Term Loan Parties.  *Id.* ¶ 32(r).  That Event of Default is so broad and vague it could include almost anything, especially since what is considered "materially adverse" is "determined by the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Parties)[.]"  *Id.* The provisions highlighted above are emblematic of the problematic Events of Default sought by the Prepetition Term Loan Agent and should not be approved by this Court.

42.    The full list of problematic Events of Default—those that would grant the Prepetition Term Loan Agent a litany of rights and undue control over these Cases—are referenced below, followed by the Committee's proposed modifications thereto:

- (b) the bringing of a motion, taking of any action or the filing of any plan of reorganization or disclosure statement attendant thereto by any of the Debtors…(B) to grant any lien other than Permitted Prior Liens upon or affecting any DIP Collateral…

    o **Committee Modification:** The proposed restriction on liens should not prohibit subordinate liens.

- (e) (x) the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Interim Order, the Final Order or the Cash Management Order without the written consent of the Prepetition Term Loan Agent…

    o **Committee Modification:** This provision appears to prohibit the Court from entering an Order inconsistent with the DIP Order and it is inappropriate to do so.  The Court should be free to modify adequate protection consistent with section 363 of the Bankruptcy Code.

21

- (g) the payment of, or application for authority to pay, any prepetition claim without Prepetition Term Loan Agent's prior written consent unless in accordance with the Budget

  - **Committee Modification:** Add "by the Debtors" after "application" so that a creditor's filing of a motion to allow and pay an administrative claim is not an Event of Default unless and until such motion is approved by a final and non-appealable order.

- (h) subject to entry of a Final Order, the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against the Prepetition Term Loan Parties or any of the DIP Collateral or Prepetition Collateral

  - **Committee Modification:** Remove in its entirety as duplicative of Event of Default (o); additionally, this should not be approved absent an adequate Budget for administrative expenses. *See supra* Objection ¶¶ 18-32.

- (i) the sale without the Prepetition Term Loan Agent's consent (acting at the direction of the Required Term Loan Lenders) of all or substantially all of the Debtors' assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Cases or otherwise that does not result in the Prepetition Term Loan Obligations being Paid in Full

  - **Committee Modification:** This provision should be stricken. The Prepetition Term Loan Parties are not entitled to greater protection than provided by section 363(f) of the Bankruptcy Code.

- (n) this Interim Order shall cease to create a valid and perfected lien on the DIP Collateral or the Prepetition Collateral or to be in full force and effect, shall have been reversed, modified, amended, stayed, vacated, or subject to stay pending appeal, in the case of modification or amendment, without prior written consent of Prepetition Term Loan Agent

  - **Committee Modification:** Add that this provision is subject to the Committee's challenge rights under paragraph 43 of the Interim DIP Order.

- (o) subject to entry of a Final Order, an order in the Cases shall be entered (i) charging any of the DIP Collateral or Prepetition Collateral under Section 506(c) of the Bankruptcy Code against the Prepetition Term Loan Parties, or (ii) limiting the extension under Section 552(b) of the Bankruptcy Code of the liens of the Prepetition Term Loan Agent on the DIP Collateral or Prepetition Collateral to any proceeds…

  - **Committee Modification:** This should not be approved absent an adequate Budget for administrative expenses. *See supra* Objection ¶¶ 18-32.

- (p) if the Final Order does not include a waiver, in form and substance satisfactory to the Prepetition Term Loan Agent (acting at the direction of the Required Term Loan Lenders) of (i) the right to surcharge the DIP Collateral or Prepetition Collateral under Section 506(c) of the Bankruptcy Code and (ii) any

22

ability to limit the extension under Section 552(b) of the Bankruptcy Code of the liens of the Prepetition Term Loan Agent…

- o **Committee Modification:** This provision should be removed in the Final DIP Order, as superseded by the Final DIP Order.

- (r) an order (or request for order, unless actively opposed by the Debtors) materially adversely impacting the rights and interests of the Prepetition Term Loan Parties…shall have been entered by the Court…

- o **Committee Modification:** This Event of Default is particularly broad and vague and must be revised or stricken.

- (t) without the Prepetition Term Loan Agent's consent (acting at the direction of the Required Term Loan Lenders), the entry of any order by the Court granting, or the filing by any Debtor of any motion or other request with the Court…seeking, authority to use any cash proceeds of any of the DIP Collateral without the Prepetition Term Loan Agent's consent…or to obtain any financing under Section 364 of the Bankruptcy Code

- o **Committee Modification:** Junior financing should be permitted.

- (u) any Debtor…shall file any motion seeking authority to consummate a sale of assets of the Debtors or the DIP Collateral or Prepetition Collateral to the extent having a value in excess of $250,000 outside the ordinary course of business and not otherwise permitted hereunder

- o **Committee Modification:** Remove this Event of Default in its entirety, as the Debtors will potentially need to sell other assets after the proposed auction and sale.

- (v) any Debtor shall make any payment…on account of any prepetition indebtedness or payables other than payments (i) under customary "first day orders" in accordance with the Budget and approved by the Prepetition Term Loan Agent…in writing…and (ii) payments approved (A) by the Court and (B) in writing by the Prepetition Term Loan Agent…

- o **Committee Modification:** This should not be approved absent an adequate Budget for administrative expenses. *See supra* Objection ¶¶ 18-32.

- (w) without the Prepetition Term Loan Agent's consent…any Debtor or shall file any motion or other request with the Court seeking (a) to grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens or security interests in any DIP Collateral or Prepetition Collateral, whether senior, equal or subordinate to the Prepetition Term Loan Agent's liens and security interests…

- o **Committee Modification:** Junior financing should be permitted.

10044775v3

## V.    Additional Modifications Must Be Made to the Final DIP Order.

43.    In addition to the matters addressed above, the Committee believes that the following items appearing in the Interim DIP Order must be modified in the Final DIP Order:

a.    Interim Order ¶ 17 – any Adequate Protection Payments for Prepetition Term Loan Parties must be able to be recharacterized as principal or disgorged if the Prepetition Term Loan is under- or unsecured.

b.    Interim Order ¶ 26 – any credit bid rights granted must be subject to section 363(k) rights *and* subject to the Committee's investigation rights and Challenge Period under paragraph 43.

c.    Interim Order ¶ 41 – the Investigation Budget Amount should be increased to $100,000 (currently at $50,000) to allow the Committee to adequately investigate claims and causes of action relating to the two separate loan facilities.[9]

d.    Interim Order ¶ 43 – the Challenge Period should be tolled pending consideration of a Committee standing motion.[10]

---

[9] *See, e.g.*, *In re Tenney Vill. Co., Inc.*, 104 B.R. 562, 568-69 (Bankr. D. N.H. 1989) (refusing to approve postpetition financing because a fee cap unacceptably limited the right of debtor's counsel to payment for bringing actions against the prepetition lenders, creating an economic incentive for the debtor to avoid bringing such actions in disregard of its fiduciary duties to the estate); *see also In re Swift Energy Co.*, No. 15-12670 (MFW) (Bankr. D. Del. Feb. 2, 2016) [Docket No. 224] ($200,000 cap); *In re Samson Res. Corp.*, No. 15-11934 (CSS) (Bankr. D. Del. Jan. 26, 2016) [Docket No. 610] ($200,000 cap); *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015) [Docket No. 307] (no cap on non-cash collateral, with $100,000 cap only as to use of prepetition collateral or carve-out); *In re Quiksilver, Inc.*, No. 15-11880 (BLS) (Bankr. D. Del. Oct. 28, 2015) [Docket No. 382] ($150,000 cap); *In re Haggen Holdings, LLC*, No. 15-11874 (KG) (Bankr. D. Del. Oct. 15, 2015) [Docket No. 449] ($150,000 cap); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Mar. 12, 2009) [Docket No. 133] ($150,000 cap); *In re Old AII (f/k/a Aleris Int'l, Inc.)*, No. 09-10478 (BLS) (Bankr. D. Del. Mar. 18, 2009) [Docket No. 299] ($300,000 cap).

[10] *See, e.g.*, *In re Swift Energy Co.*, No. 15-12670 (MFW) (Bankr. D. Del. Feb. 2, 2016) [Docket No. 224] (providing that the challenge period was tolled as to the Committee from the date the Committee seeks standing until ten business days after entry of order by the court with respect to such motion); *In re RS Legacy Corp.*

e. Interim Order ¶ 51 – the Prepetition Term Loan Agent should not "automatically" acquire all of the DIP Agent's rights upon the DIP Obligations and Prepetition ABL Obligations being Paid in Full.  As noted above, the Prepetition Term Loan Parties are not providing new money loans to the Debtors and are not entitled to anything other than adequate protection. At a minimum, this provision should be subject to the Challenge provided in paragraph 43 of the Interim DIP Order.

[*Remainder of Page Left Intentionally Blank*]

---

(*f/k/a RadioShack Corp.*), No. 15-10197 (BLS) (Bankr. D. Del. Mar. 12, 2015) [Docket No. 947] (providing challenge period tolled as to moving party until earlier of (a) withdrawal of standing motion or (b) entry of dispositive order by the court with respect to such motion); *In re EWGS Intermediary, LLC*, No. 13-12876 (MFW) (Bankr. D. Del. Nov. 20, 2013) [Docket No. 89] (same); *In re Centaur, LLC*, No. 10-10799 (KJC) (Bankr. D. Del. Apr. 30, 2010) [Docket No. 205] (same).

10044775v3

**WHEREFORE,** the Committee respectfully objects to the DIP Motion and Final DIP Order as set forth herein, and requests that the Court deny the relief requested in the DIP Motion unless the modifications discussed herein are made, and for such other and further relief as is deemed just and proper.

Dated: March 1, 2019
    Wilmington, Delaware

Respectfully submitted,

*/s/ L. Katherine Good*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
WHITEFORD, TAYLOR & PRESTON LLC
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, Delaware 19801
Telephone: (302) 353-4144
Facsimile:  (302) 661-7950
Email: csamis@wtplaw.com
        kgood@wtplaw.com
        astulman@wtplaw.com

-and-

David W. Gaffey, Esq.
Jennifer E. Wuebker, Esq.
WHITEFORD, TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9260
Facsimile:  (703) 280-9139
Email: dgaffey@wtplaw.com
        jwuebker@wtplaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

26

10044775v3