## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| Charlotte Russe Holding, Inc., *et al.*,[1] | Case No.: 19-10210 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Re: D.I. 14, 97** |

### FINAL ORDER (I) AUTHORIZING
### THE COMMENCEMENT OF STORE CLOSING
### SALES IN ACCORDANCE WITH THE CONSULTING
### AGREEMENT AND SALE GUIDELINES, WITH SUCH
### SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS,
### AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Charlotte Russe Holding, Inc. and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases") for the entry of a final order (this "Final Order"), pursuant to sections 105, 363, 365, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003, 6004, 6006, and 6007, (i) authorizing the Debtors to commence store-closing or similar-themed sales (the "Store Closing Sales") in accordance with the terms of (a) that certain Consulting Agreement, dated as of February 1, 2019 (the "Agreement"), by and between a contractual joint venture comprised of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC, on the one hand (the "Consultant"), and Charlotte Russe Holdings Corporation and its subsidiaries, on the other hand, a copy of which is attached hereto as Exhibit 1, and (b) the store-closing sale guidelines (the "Sale Guidelines") attached hereto as Exhibit 2,

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Charlotte Russe Holding, Inc. (4325); Charlotte Russe Holdings Corporation (1045); Charlotte Russe Intermediate Corporation (6345); Charlotte Russe Enterprise, Inc. (2527); Charlotte Russe, Inc. (0505); Charlotte Russe Merchandising, Inc. (9453); and Charlotte Russe Administration, Inc. (9456). The Debtors' headquarters are located at 5910 Pacific Center Boulevard, Suite 120, San Diego, CA 92121.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

with such sales to be free and clear of all liens, claims, encumbrances, and interests; and (ii) granting certain related relief, on a final basis (collectively, the "Store Closing Relief"); and upon consideration of the First Day Declaration, the Store Closing Declaration, and the entire record of these Cases; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these Cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that there is good cause to waive the stay of Bankruptcy Rule 6004(h); and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interest of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby **FOUND AND DETERMINED THAT:**[3]

A.    The Debtors have advanced sound business reasons for entering into the Agreement, as set forth in the Motion and at the hearing on this Final Order, and have demonstrated that entering into the Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

B.    The conduct of the Store Closing Sales, in accordance with this Final Order and the Sale Guidelines which are reasonable and appropriate, will provide an efficient means for the

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

Debtors to maximize recoveries for their estates with respect to the Store Closure Assets and Additional Consultant Goods.

C.      The Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion or fraud, in good faith, and from arm's-length bargaining positions.

D.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein thereby satisfying Bankruptcy Rule 6003.

E.      Under the circumstances of these Cases, the Store Closing Sales are in the best interest of the Debtors' estates.

F.      The Sale Guidelines, as described in the Motion and attached hereto, are reasonable and will maximize the returns on the Closing Stores' assets for the benefit of the Debtors' estates and creditors.

G.      The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers.

H.      The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein; and now therefore it is hereby **ORDERED, ADJUDGED, AND DEGREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors and the Consultant are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Final Order. The failure to include specifically any particular provision of the Agreement in this Final Order

3

shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreement and all of its provisions, payments, and transactions be authorized and approved as and to the extent provided for in this Final Order.

3.      To the extent of any conflict between this Final Order, the Sale Guidelines, and the Agreement, the Sale Guidelines shall control over the Agreement, and the terms of this Final Order shall control over all other documents.

4.      The requirements of Bankruptcy Rule 6007(a) are waived, to the extent applicable to the relief provided for herein.

5.      Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall take effect immediately upon its entry.

6.      The Agreement, a copy of which is attached to this Final Order as Exhibit 1, is hereby assumed pursuant to section 365 of the Bankruptcy Code. The Debtors shall not agree to any material modifications to the Agreement, including but not limited to, any modifications to the fee schedules or expense provisions absent the prior written consent of the DIP Agent and the Prepetition Term Agent; provided, however, that the Debtors and the Consultant may make non-material modifications, amendments, or supplementations to the Agreement and related documents in accordance with the terms thereof without further order of this Court or consent of other parties. The Debtors will file a notice of any material modifications to the Agreement, and all interested parties shall have seven (7) days to object thereto. If no objections are received by the Debtors during the seven (7) day period, the modifications shall be deemed approved. The Debtors are authorized to act and perform in accordance with the terms of the Agreement, including, without limitation, making payments required by the Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court.

7.     Subject to the restrictions set forth in this Final Order and the Sale Guidelines, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Agreement and the Store Closing Sales; and each of the transactions contemplated by the Agreement and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Agreement or the Store Closing Sales prior to the date of this Final Order are hereby approved and ratified.

**I.     Authority to Engage in Store Closing Sales**

8.     The Debtors are authorized pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct Store Closing Sales at the Closing Stores in accordance with this Final Order, the Sale Guidelines, and the Agreement, as may be modified by any Side Letters (defined below) between the Debtors and/or Consultant and the landlords at the Closing Stores.

9.     The Sale Guidelines are approved in their entirety on an final basis.

10.     The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Sale Guidelines.

11.     Notwithstanding any other relief set forth in this Final Order, the Debtors and Consultant shall only be authorized to sell Non-Merchandise if the owners of such Non-Merchandise have affirmatively consented to the sale, and the Debtors shall identify for Consultant items of Non-Merchandise which may not be sold.

12.     Except for proceeds from the sale of Non-Merchandise which shall be segregated for the sole benefit of the owners of Non-Merchandise, the Debtors are authorized and directed to remit all net proceeds from the sale of the Store Closure Assets in the Store Closing Sales (after payment of any fees and expenses owed to Consultant, including without limitation, the fees and expenses owed to Consultant related to the sale of Non-Merchandise) to the DIP Agent

for payment of the Debtors' secured obligations in accordance with the terms and conditions of the DIP Facility.

13.    All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Agreement or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

14.    Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) or landlord, to conduct the Store Closing Sales and to take the related actions authorized herein.

15.    No landlord, licensor, property owner and/or property manager shall prohibit, restrict or otherwise interfere with the Store Closing Sales at any Closing Store.

**II.    Conduct of the Store Closing Sales**

16.    All newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Store Closing Sales and the sale of Store Closure Assets and Additional Consultant Goods pursuant to the Agreement, including, without limitation, to conduct and advertise the sale of the Store Closure Assets and Additional Consultant Goods in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, and the Agreement, except as modified by any Side Letter between the Debtors and/or the Consultant and the landlords of the Closing Stores.

17.    Nothing in this Final Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity

would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order or in the Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Consultant is an operator with respect to any environmental law or regulation. Moreover, the sale of the Store Closure Assets and Additional Consultant Goods shall not be exempt from, and the Consultant shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer-protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Final Order shall alter or affect the Debtors' and Consultant's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit from enforcing General Laws in applicable non-bankruptcy forums, subject to the Debtors' or the Consultant's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, or otherwise. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

18.   Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Final Order, or as modified by any Side Letter, the Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Agreement and to conduct the Store Closing Sales without necessity of further order of this Court as provided in the Agreement or the Sale Guidelines, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Closing Stores, and at enclosed mall Closing Stores to the extent the applicable Closing Store entrance does not require entry into the enclosed mall common area), use of sign-walkers and street signage.

19.   Except as expressly provided in the Agreement, the sale of the Store Closure Assets and Additional Consultant Goods shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Store Closing Sales.  Breach of any such provisions in these Cases in conjunction with the Store Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closing Sales are conducted in accordance with the terms of this Final Order, any Side Letter and the Sale Guidelines.  The Debtors and/or Consultant and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors, Consultant and any such landlords, provided that nothing in such Side Letters affects the

provisions of paragraphs 17, 31 and 32 of this Final Order.  In the event of any conflict between this Final Order, the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

20.    Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit expressly granted elsewhere in this Final Order, no person or entity, including, but not limited to, any landlord, licensor, property owner/manager, service provider, utility, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation or continuation of the Store Closing Sales or the sale of Store Closure Assets or Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, property owner/manager, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or sale of the Store Closure Assets or Additional Consultant Goods, or other liquidation sales at the Closing Stores, or seek to recover damages for any breaches of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

21.    In accordance with and subject to the terms and conditions of the Agreement, the Consultant shall have the right to use the Closing Stores and all related Closing Store services,

furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Final Order.

22.    Subject to the relief sought in the *Debtors' Motion for Entry of an Order Authorizing Maintenance, Administration and Continuation of Certain Customer Programs*, Consultant shall accept the Debtors' validly issued rewards certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date (as defined in the Agreement) in accordance with the Debtors' rewards certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price offered by the Consultant. For the avoidance of doubt, proceeds from Merchandise sold pursuant to rewards certificates and/or gift cards shall be treated gross proceeds for purposes of calculating Consultant's fee under the Agreement.

23.    All sales of Store Closure Assets shall be "as is" and final.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  Further, as to the Closing Stores only, the Debtors and the Consultant shall accept the return of any goods purchased during the Store Closing Sales, which contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase, for a full refund, provided that the consumer must return the goods within the return period advertised to the consumer at the Closing Store at the time of purchase, the consumer must

provide a receipt, and the asserted defect must in fact be a "latent" defect. Returns, if permitted, related to the purchase of Store Closure Assets and Additional Consultant Goods shall not be accepted at stores that are not participating in the Store Closing Sales.

24.     The Consultant shall not be liable for sales taxes except as expressly provided in the Agreement, and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to pay and/or remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay and/or remit such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Agreement. This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

25.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets pursuant to the Agreement and in accordance with the Sale Guidelines. All sales of Store Closure Assets pursuant to the Store Closing Sales, whether by the Consultant or the Debtors, shall be, free and clear of claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options,

rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"); provided, however, that any such Encumbrances shall attach to the applicable proceeds of the sale of Store Closure Assets with the same validity and priority, and to the same extent that any such Encumbrances had with respect to the Store Closure Assets prior to such sale, subject to any claims and defenses that any party may possess with respect thereto and subject to the Consultant's fees and expenses (as provided in the Agreement).

26.    To the extent that the Debtors propose to sell or abandon computers (including software) and/or cash registers and any other point of sale FF&E located at the Closing Stores (collectively, "POS Equipment") or any other files or records  which may contain personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information"), the Debtors (and not the Consultant) shall remove the Confidential Information from such items before such sale or abandonment, and unless otherwise notified by Debtors in writing to the contrary, the Consultant shall be entitled to assume and presume that

the Debtors have satisfactorily completed such steps at or prior to the time of any such sale, abandonment or other disposition.

27.    The Debtors and the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets and Additional Consultant Goods among the Closing Stores. The Consultant is authorized to sell the Debtors' Offered FF&E and abandon the Debtors' FF&E, in each case, as provided for and in accordance with the terms of the Agreement, including, but not limited to, Closing Store Signage. Any abandoned FF&E left in a Closing Store after the later of the date the lease is rejected or the date the Debtors vacate the premises shall be deemed abandoned by the Debtors, and such landlord is authorized to dispose of the abandoned FF&E without further notice and without any liability to any individual or entity that may claim an interest in such property. The automatic stay is modified to the extent necessary to allow such dispositions.

28.    In accordance with the Agreement, the Consultant is authorized to supplement the Merchandise in the Store Closing Sales with goods of like kind and no lesser quality as customarily sold in the Stores (the "Additional Consultant Goods"). Sales of Additional Consultant Goods shall be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a unique SKU or department number or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. The Consultant and the Debtors shall cooperate to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods from the Merchandise. The Consultant shall provide signage in the Stores notifying customers that the Additional Consultant Goods have been included in the Sale.

29.    The transactions under the Agreement relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from the Consultant to the Debtors in all respects and not a consignment for security purposes. Subject solely to the Consultant's obligations to pay to the Debtors the Additional Consultant Goods Fee, at all times and for all purposes, the Additional Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders), shall have any claim against any of the Additional Consultant Goods or the proceeds thereof. The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultant, and the Debtors shall, at the Consultant's sole cost and expense, insure Additional Consultant Goods and, if required, promptly file any proofs of loss with regard thereto. The Consultant is hereby granted a first-priority security interest in and lien upon (a) the Additional Consultant Goods and (b) the Additional Consultant Good proceeds, which security interest shall be deemed perfected pursuant to this Final Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; provided that the Consultant is authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying the Consultant's interest in the Additional Consultant Goods as consigned goods thereunder and the Debtors as the consignee therefor, and the Consultant's security interest in such Additional Consultant Goods and Additional Consultant Goods proceeds. With respect to Additional Consultant Goods included during the interim sale period, but unsold as of the Final Hearing and Additional Consultant Goods to be included in the Store Closing Sales

from and after the Final Hearing, all parties' rights, including the right to object, are expressly reserved and not waived. As part of each weekly reconciliation, the Debtors shall turnover all proceeds from the sale of Additional Consultant Goods to the Consultant, net of any fee payable to the Debtors pursuant to the Agreement.

30.    Notwithstanding this or any other provision of this Final Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Agreement pursuant to a consultant agreement or otherwise ("Additional Assets"). The Consultant (each entity comprising the Consultant individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such services guarantee, transaction, or acquisition is approved by separate order of this Court.

**III.    Dispute Resolution Procedures With Governmental Units**

31.    To the extent that the sale of Store Closure Assets or Additional Consultant Goods is subject to any federal, state, or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory-liquidation sales, or bulk-sale laws (each a "GOB Law" and collectively, "GOB Laws"), including laws restricting safe, professional, non-deceptive, and customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk-sale restrictions, or any Fast Pay Laws, that would otherwise apply solely to the sale of the Store Closure Assets or Additional Consultant Goods (collectively, the "Liquidation Laws"), the following provisions shall apply:

(a)      Provided that the Store Closing Sales and the sale of Store Closure Assets and Additional Consultant Goods are conducted in accordance with the terms of this Final Order, the Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to the provisions of this Final Order, are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

(b)      Within three (3) business days of entry of this Final Order, the Debtors shall serve copies of this Final Order, the Agreement, and the Sale Guidelines via e-mail, facsimile, or regular mail on: (i) the Attorney General's office for each state where the Store Closing Sales are being held, (ii) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held, (iii) the division of consumer protection for each state where the Store Closing Sales are being held; (iv) if applicable, the chief legal officer for each local jurisdiction where the Store Closing Sales are being held; and (v) the Debtors' landlords of the Closing Stores.

(c)      To the extent that there is a dispute arising from or relating to the Store Closing Sales, this Final Order, the Agreement, or the Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute on (i) counsel for the Debtors ((x) Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Seth Van Aalten, Esq. and Michael A. Klein, Esq.), email: svanaalten@cooley.com; mklein@cooley.com; and (y)

16

Bayard P.A., 600 North King Street, Ste. 400, Wilmington, DE 19801 (Attn: Justin Alberto, Esq. and Erin R. Fay, Esq.), email: jalberto@bayardlaw.com; efay@bayardlaw.com); (ii) counsel for the Consultant (1313 N. Market Street, Suite 5100, Wilmington, DE 19801 (Attn: Douglas D. Herrmann, Esq. and Marcy J. McLaughlin, Esq.), email: herrmannd@pepperlaw.com; mclaughlinm@pepperlaw.com); and (iii) the affected Landlord so as to ensure delivery thereof within one business day thereafter. If the Debtors, the Consultant and the Governmental Unit are unable to resolve the Reserved Dispute within 14 days of service of the notice, the aggrieved party (*i.e.*, the Debtors, Consultant or Governmental Unit) may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion"). A Dispute Resolution Motion may be heard at the Final Hearing if filed within seven days before such hearing, or if filed thereafter, at the next regularly scheduled omnibus hearing in these chapter 11 cases.

(d)    In the event a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, the Consultant or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Final Order, nor the Debtors' or the Consultant's conduct pursuant to this Final Order, violates such GOB Laws and/or Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sale pursuant to this Final Order and the Agency Agreement, absent further order of this Court. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or

17

Liquidation Laws by the Bankruptcy Code. Nothing in this Final Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(e)     If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Final Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) through (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

32.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Store Closing Sales regarding laws regulating the use of sign-walkers, banners and other advertising and the Debtors and the Consultant are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

33.     Subject to paragraphs 31 and 32 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Store Closing Sales shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required, to post any bond, to conduct the Store Closing Sales.

IV.    **Other Provisions**

34.    Subject to paragraph 6 of this Final Order, the Agreement and related documents may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

35.    The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Agreement.

36.    All amounts due to the Consultant under the Agreement shall be earmarked and paid by the Debtors from proceeds of the Sales and shall not be reduced or capped by the terms or conditions of any pre- or post-petition financing facilities or orders related thereto.

37.    Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 31 and 32 of this Final Order shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or related to the implementation, interpretation or enforcement of this Final Order or the Agreement, including, but not limited to, any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the Store Closing Sales in accordance with the Sale Guidelines, or other disputes related to the Store Closing Sales. No parties shall take any action against the Debtors or the Consultant until this Court has resolved such dispute. The Court shall hear the request of such parties or persons with respect to any such disputes as may be appropriate under the circumstances.

38.    Consultant shall not be subject to any claim or cause of action in the nature of a setoff, counterclaim, or defense, including but not limited to, those arising under sections 547, 548, and/or 550 of the Bankruptcy Code, provided, however, that any post-petition transfers made by Debtors to Consultant pursuant to the terms of the Agreement shall not be considered unauthorized post-petition transfers under section 549 of the Bankruptcy Code.

39.     During the Sale Term (as defined in the Agreement), the Merchant's (as defined in the Agreement) trademarks, trade names, logos, customer lists, websites, URL, social media, mailing lists and email lists shall be available in connection with the conduct of the Store Closing Sales in accordance with the terms of the Agreement.

40.     During the Sale Term (as defined in the Agreement), Consultant shall be granted a limited royalty free license and right to use the trademarks, trade names, logos, customer lists, websites, URL, social media, mailing lists and email lists relating to and used in connection with the operation of the Closing Stores, solely for the purpose of advertising the Store Closing Sales in accordance with the terms of the Agreement.

41.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Final Order that are dishonored or rejected. Additionally, each of the Debtors' banks and financial intuitions is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Final Order and any other order of this Court.

42.     Nothing in this Final Order is intended to affect any rights of any Governmental Unit to enforce any law affecting the Debtors' conduct of the sale prior to the Petition Date.

43.     No provision of this Order or the Agreement shall authorize (i) the assumption, assumption and assignment, or transfer of any agreement between any Debtor and SAP America, Inc. ("SAP"); (ii) the transfer of any SAP licensed software (the "Software") to the Consultant; or (iii) the direct use of any SAP licensed software or support services by the Consultant or by or for the benefit of any other third party; *provided, however*, nothing herein is meant to modify the

terms of any SAP agreement.  Any computers, equipment, hardware, or other property of the Debtors (collectively, "Computer Equipment") on which the Software is loaded or embedded may be sold, otherwise transferred, or disposed of only if the Debtors or Consultant permanently delete all Software from Computer Equipment prior to its sale, transfer, or disposal. If the Debtors wish to have any contract to which SAP is a party assumed or assumed and assigned as part of a sale, any assumption, assignment, and cure issues related to any such contract shall be resolved by agreement between SAP, the Debtors, the Consultant, or any purchaser (as applicable) or, if no agreement can be reached, by further order of the Court upon adequate notice to SAP.

44.    Notwithstanding any provisions of any final orders pertaining to postpetition financing, use of cash collateral, or the sale of the Debtors' assets, or any agreements validated by any such orders, except as provided for in the following sentence, the liens currently held by Allen ISD, Bexar County, Cameron County, Cypress-Fairbanks ISD, Dallas County, El Paso, Fort Bend County, Frisco, Harlingen, Harlingen CISD, Harris County, Hidalgo County, Jefferson County, Lewisville ISD, McAllen, McLennan County, Montgomery County, Northwest ISD, San Marcos CISD, Smith County, Tarrant County, and the County of Maricopa, Arizona, shall neither be primed by nor subordinated to any liens granted thereby.  Furthermore, from the proceeds received by the Debtors from the Store Closing Sales (if any), or any other amounts payable pursuant to the Agreement on account of the sale of any of the Debtors' assets located in the state of Texas or county of Maricopa shall be treated as provided in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V)*

*Modifying the Automatic Stay, and (VI) Granting Related Relief; provided, however,* that nothing in this paragraph shall in anyway prime or otherwise affect the first priority, senior liens and security interests granted to the Consultant pursuant to section 7 of the Agreement and paragraph 29 of this Final Order.

45.     On a confidential basis and for professionals' "eyes only," and upon the written (including email) request of the U.S. Trustee, the Committee, the DIP Agent, and the Prepetition Term Agent, the Debtors shall provide such requesting party (if any) with copies of periodic reports concerning the Store Closing Sales that are prepared by the Debtor, their professionals, or the Consultant; *provided, however,* that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Store Closing Sales.

Dated: 3/6, 2019
         Wilmington, Delaware

_____
THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE