## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>CR Holding Liquidating, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 19-10210 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: August 19, 2019 at 2:00 p.m. (ET)<br>Obj. Deadline: July 26, 2019 at 4:00 p.m. (ET) |

### DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, AUTHORIZING AND APPROVING SETTLEMENT AND RELEASE AGREEMENT WITH THE VINTAGE SHOP

CR Holding Liquidating, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases hereby move this Court (this "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement (the "Settlement Agreement")[2] by and among The Vintage Shop ("Vintage") and the Debtors. In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: CR Holding Liquidating Inc. (f/k/a Charlotte Russe Holding Inc.) (4325); CR Holdings Liquidating Corporation (f/k/a Charlotte Russe Holdings Corporation) (1045); CR Intermediate Liquidating Corporation (f/k/a Charlotte Russe Intermediate Corporation) (6345); CR Enterprise Liquidating, Inc. (f/k/a Charlotte Russe Enterprise, Inc.) (2527); CR Liquidating, Inc. (f/k/a Charlotte Russe, Inc.) (0505); CR Merchandising Liquidating, Inc. (f/k/a Charlotte Russe Merchandising, Inc.) (9453); and CR Administration Liquidating, Inc. (f/k/a Charlotte Russe Administration, Inc.) (9456). The Debtors' headquarters are located at 3111 Camino Del Rio N. Suite 400, San Diego, CA 92108.

[2] A copy of the Settlement Agreement is annexed hereto as **Exhibit B**.

Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

**A.    General Background**

4. On February 3, 2019 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint administration of these cases [D.I. 75].

5. On February 14, 2019, Region 3 of the Office of the United States Trustee (the "U.S. Trustee") appointed a seven-member Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed.

6. Further information regarding the Debtors' business operations, the events leading up to the Petition Date and the facts and circumstances further supporting the relief requested herein are set forth in the *Declaration of Brian M. Cashman, Chief Restructuring Officer of Charlotte Russe Holding, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 3].

**B.    The Settlement Agreement**

7.    Prior to the Petition Date, Vintage provided certain goods to the Debtors. The Debtors' records indicate that, following the Petition Date, the Debtors made a payment in the amount of $37,536.00 (the "Transfer") to Vintage for goods that the Debtors never received.

8.    On April 8, 2019, Vintage filed proofs of claim numbered 356 and 357 (the "Proofs of Claim") against certain of the Debtors, each asserting a general unsecured claim in the amount of $264,397.20 for goods that Vintage sold to the Debtors.

9.    On May 15, 2019, the Debtors sent a letter to Vintage demanding the repayment of the Transfer and stating that the failure to do so would result in the Debtors pursuing all available remedies against Vintage.

10.    To resolve any disputes regarding the Transfer and the Proofs of Claim, the Debtors and Vintage have entered into the Settlement Agreement. The pertinent terms of the Settlement Agreement are summarized below:[3]

- Within two (2) business days following the date that an order approving the Settlement Agreement under Bankruptcy Rule 9019 (the "Approval Order") becomes final and non-appealable, Vintage shall pay, or cause to be paid to the Debtors the amount of $18,768.00 (the "Settlement Payment").

- Effective immediately upon Vintage's remittance of the Settlement Payment to the Debtors, the Debtors and the Debtors' estates, each on their own behalf and on behalf of their successors, assigns, affiliates, and representatives (including any current or subsequently appointed committees, chapter 11 or chapter 7 trustee and/or any trustee of a liquidating trust or similar fiduciary under any confirmed plan and/or other mechanism) (collectively, the "Releasing Debtor Parties") forever discharge Vintage, its directors, officers, stockholders representatives, attorneys, agents, employees, and their successors, and all others acting, alleged or purporting to act or to have acted on behalf of, in concert with, or at the direction of any of them (collectively, the "Released Vintage Parties"), of and from any and all manner of actions,

---

[3] This summary is for informational purposes only and is not intended to modify in any way the terms and conditions of the Settlement Agreement. To the extent that there is any inconsistency between the terms described herein and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control. Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Settlement Agreement.

causes of action, suits, debts (including the Transfer), accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Releasing Debtor Parties, now have, or can, shall or may have at any time against the Released Vintage Parties related to the Transfer.

- Effective immediately upon Vintage's remittance of the Settlement Payment to the Debtors, Vintage, its directors, officers, stockholders representatives, attorneys, agents, employees, and their successors, and all others acting, alleged or purporting to act or to have acted on behalf of, in concert with, or at the direction of any of them (collectively, the "Releasing Vintage Parties") forever discharge the Debtors and the Debtors' estates, each on their own behalf and on behalf of their successors, assigns, affiliates, and representatives (including any current or subsequently appointed committees, chapter 11 or chapter 7 trustee and/or any trustee of a liquidating trust or similar fiduciary under any confirmed plan and/or other mechanism) (collectively, the "Released Debtor Parties") of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims (including the amounts asserted in the Proofs of Claim, which are hereby waived and released, and shall be marked as disallowed and expunged on the claims register maintained in these chapter 11 cases), demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Releasing Vintage Parties, now have, or can, shall or may have at any time against the Released Debtor Parties.

**RELIEF REQUESTED**

11.     By this Motion, the Debtors request entry of the Proposed Order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving and authorizing the terms, conditions, and provisions of the Settlement Agreement, and the Debtors' entry thereto.

**BASIS FOR RELIEF REQUESTED**

12.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Penn Central Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("The Court has

4

recognized that '(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'") (quoting *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). In determining the fairness and equity of a compromise in bankruptcy, the Third Circuit Court of Appeals has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated . . . and estimate the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *Id.* at 1153.

13. The Third Circuit has enumerated the following four-factor test to be used in deciding whether a settlement should be approved: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors. *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

14. Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986). The bankruptcy court should not substitute its judgment for that of the debtor. *Id.* The court is not to decide numerous questions of law or fact raised by litigation, but, rather, should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173, 180 (3d Cir. 2015); *Mangano v. Warriner (In re ID Liquidation One, LLC)*, 555 Fed. App'x 202, 205-206 (3d Cir. 2014); *In re Sea Containers Ltd.*, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008).

15. The Debtors believe that the Settlement Agreement will provide a material benefit to these estates by settling the outstanding issues between the Debtors and Vintage related to the Transfer and the Proofs of Claim. Absent entry into the Settlement Agreement, the Debtors would have potentially faced costly litigation with an uncertain outcome if they sought immediate recovery of the Transfer. Additionally, the Settlement Agreement provides a material benefit to the estates by releasing the Debtors from any liability with respect to the Proofs of Claim that each assert general unsecured claims in the amount of $264,397.20. In short, the Settlement Agreement was negotiated in good faith and at arm's length, and represents a reasonable resolution regarding the Transfer and the Proofs of Claim for the benefit of the Debtors' estates.

16. In light of the foregoing, the Debtors, in their business judgment, believe that the Settlement Agreement represents a compromise that is fair and equitable and advances the paramount interests of the creditors of these estates. Accordingly, for the reasons set forth above, the Debtors submit that entering into the Settlement Agreement is an exercise of sound business judgment and that the Court should therefore approve the Debtors' entry into the Settlement Agreement.

## **NOTICE**

17. The Debtors have provided notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Prepetition ABL Agent and DIP Agent; (iv) counsel to the Prepetition Term Agent; (v) Vintage; and (vi) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Order granting the relief requested herein and such further relief as it deems just and proper.

Dated: July 12, 2019
       Wilmington, Delaware       BAYARD, P.A.

                                              /s/ Gregory J. Flasser
                                         Justin R. Alberto (No. 5126)
                                         Erin R. Fay (No. 5268)
                                         Gregory J. Flasser (No. 6154)
                                         600 North King Street, Suite 400
                                         Wilmington, Delaware 19801
                                         Telephone: (302) 655-5000
                                         Facsimile: (302) 658-6395
                                         Email: jalberto@bayardlaw.com
                                                  efay@bayardlaw.com
                                                  gflasser@bayardlaw.com

                                                      - and -

                                         COOLEY LLP
                                         Seth Van Aalten (admitted *pro hac vice*)
                                         Michael Klein (admitted *pro hac vice*)
                                         Summer M. McKee (admitted *pro hac vice*)
                                         55 Hudson Yards
                                         New York, NY 10001
                                         Telephone: (212) 479-6000
                                         Facsimile: (212) 479-6275
                                         Email: svanaalten@cooley.com
                                                  mklein@cooley.com
                                                  smckee@cooley.com

                                         *Co-Counsel for the Debtors*
                                         *and Debtors in Possession*