## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>CR Holding Liquidating, Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-10210 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: December 17, 2019 at 10:30 a.m. (ET)**<br>**Objection Deadline: December 6, 2019 at 4:00 p.m. (ET)**<br>**Re: Docket No. 320** |

## JOINT MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER (I) APPROVING THE SETTLEMENT AGREEMENT BY AND BETWEEN THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE PREPETITION TERM LOAN AGENT, AND THE DEBTORS AND (II) GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee") and the above-captioned debtors and debtors in possession (the "Debtors" and together with the Committee, the "Movants"), hereby jointly submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the settlement agreement (the "Settlement Agreement") by and between the Parties (as defined in the Settlement Agreement), which is attached as **Exhibit 1** to the Proposed Order; and (ii) granting related relief.  In support of this Motion, the Movants respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: CR Holding Liquidating, Inc. (4325); CR Holdings Liquidating Corporation (1045); CR Intermediate Liquidating Corporation (6345); CR Enterprise, Inc. (2527); CR Liquidating, Inc. (0505); CR Merchandising Liquidating, Inc. (9453); and CR Administration Liquidating, Inc. (9456). The Debtors' headquarters are located at 5910 Pacific Boulevard, Suite 120, San Diego, CA 92121.

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[2]

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## RELEVANT BACKGROUND

**A.  General Background.**

4.      On February 3, 2019 (the "Petition Date"), the Debtors filed voluntary cases with this Court for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue to operate their business and manage their property as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On February 14, 2019, the Office of the United States Trustee for the District of Delaware appointed the Committee pursuant to section 1102 of the Bankruptcy Code, consisting of the following seven members: (i) Valueline Group Co. Ltd.; (ii) Ven Bridge Co. Ltd.; (iii) Shantex Group LLC; (iv) Global Capital Fashion Inc.; (v) Jainson's International, Inc.; (vi) Simon Property Group, L.P.; and (vii) Brookfield Property REIT Inc.  [Docket No. 156].

6.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Brian M. Cashman, Chief Restructuring Officer of Charlotte Russe Holding, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 3].

---

[2] Under Local Rule 9013-1(f), the Movants hereby confirm their consent to the entry of a final order by this Court in connection with the Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

IMPAC 6415042v.5

7.     On March 7, 2019, the Court entered the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 320] (the "<u>Final DIP Order</u>").[3]

8.     The Final DIP Order provided, among other things, that the Debtors stipulate to the amount, validity, perfection, and priority of the Prepetition Term Loan Liens and the Prepetition Term Loan Obligations.  *See* Final DIP Order ¶ F.  Moreover, the Debtors' stipulations were to be binding on all parties unless a party in interest, including the Committee, timely filed the pleadings and timely commenced the proceeding required by the Bankruptcy Code and Bankruptcy Rules to challenge the Prepetition Lien and Claim Matters (each such proceeding or pleading commencing a proceeding or other contested mater, a "<u>Challenge</u>") by or before April 15, 2019 (the "<u>Challenge Deadline</u>").  *See id.* ¶ 43.  The Final DIP Order also provided that the Challenge Deadline "may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline[.]"  Final DIP Order ¶ 43.  Thereafter, the Committee commenced its investigation into the amount, validity, perfection, and priority of the Prepetition ABL Obligations and Prepetition Term Loan Obligations.

9.     Prior to the Challenge Deadline, the Committee informed the Prepetition Term Loan Agent of its discovery of, in the Committee's view, certain infirmities in the validity,

---

[3] All capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Final DIP Order or the Settlement Agreement, as applicable.

IMPAC 6415042v.5

perfection, and priority of the Prepetition Term Loan Obligations as well as certain potential
causes of action based on the foregoing.

**B.  The Settlement Agreement.**

10.    Over the next several months, the Committee and the Prepetition Term Loan
Agent engaged in good faith, arm's length settlement negotiations with respect to any potential
Challenge by the Committee to the Prepetition Term Loan Obligations.  In order to allow those
discussions to continue without the need of formal pleadings, the Committee and the Prepetition
Term Loan Agent agreed to extensions of the Challenge Deadline through and including
December 16, 2019.[4]

11.    As a result of the Parties' good-faith efforts, they successfully resolved the
potential Challenge of the Prepetition Term Loan Obligations by the Committee and entered into
the Settlement Agreement, which is subject to Court approval.

12.    The terms of the settlement are set forth in the Settlement Agreement attached to
the Proposed Order as **<u>Exhibit 1</u>**.  The material terms of the settlement are as follows:[5]

- <u>Claim Subordination and Distribution Sharing</u>.  The Prepetition Term Loan Obligations
  shall be deemed non-priority unsecured claims for all purposes in these Chapter 11 Cases
  and subordinated in all respects to all other non-priority unsecured claims (the "<u>General
  Unsecured Claim</u>") with respect to the first $4,000,000 to be distributed to creditors on
  account of allowed General Unsecured Claims; *provided however*, to the extent that
  distributions to creditors on account of allowed General Unsecured Claims exceed
  $4,000,000, the Prepetition Term Loan Agent on account of the Prepetition Term Loan
  Obligations shall receive 10% of any such distribution and General Unsecured Claims
  shall receive 90% of any such distribution;

- <u>Release of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders</u>.  Upon
  the Approval Order becoming a Final Order, the Prepetition Term Loan Agent on behalf
  of all Prepetition Term Loan Lenders will be deemed forever released, waived, and

---

[4] In accordance with the Settlement Agreement, the Parties agreed to further extend the Challenge Deadline during
the pendency of this Motion and until the Approval Order becomes a Final Order, as those terms are defined in the
Settlement Agreement.

[5] The following is intended to be a summary only.  In the event of any conflict, the Settlement Agreement shall
control.

IMPAC 6415042v.5

discharged by each and all of the Committee, the Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective officers, directors, affiliates, subsidiaries, current and former shareholders, members, employees, professionals, advisors, consultants, representatives, attorneys, other agents or the successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims or claims arising under Chapter 5 of the Bankruptcy Code, asserted or assertable on behalf of any of the Committee, the Debtors, or the Debtors' estates related to the Debtors, these chapter 11 cases, the Prepetition Term Loan Documents, or the Prepetition Term Loan Facility, as applicable, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereinafter arising, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise; *provided, however*, nothing in this Paragraph 5 shall be construed to release, waive or discharge any Transferred Claims.  For the avoidance of doubt, the Prepetition Term Loan Released Parties shall not be released of their obligations in this Settlement Agreement.

- <u>Transferred Claims</u>.  Upon the Approval Order becoming a Final Order, the Committee, the Debtors, and the Debtors' estates shall transfer, convey and assign all right, title and interest in and to the Transferred Claims to the Prepetition Term Loan Agent for the benefit of the Prepetition Term Loan Lenders.  "Transferred Claims" shall mean claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims or claims arising under Chapter 5 of the Bankruptcy Code, asserted or assertable on behalf of any of the Committee, the Debtors, or the Debtors' estates against any attorneys (including former attorneys) of either the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders related to the Debtors, these chapter 11 cases, the Prepetition Term Loan Documents, or the Prepetition Term Loan Facility, as applicable, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereinafter arising, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise.

- <u>Release of the Committee, the Debtors, and the Debtors' estates</u>. Upon the Approval Order becoming a Final Order, the Committee, the Debtors, and the Debtors' estates will be deemed forever released, waived, and discharged by each and all of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders, in each case on behalf of themselves and their respective successors, assigns, and representatives, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders related to the Debtors, these chapter 11 cases, the Prepetition Term Loan Documents, or the Prepetition Term Loan Facility, as applicable, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereinafter arising, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities

5

laws, or otherwise.  For the avoidance of doubt, the Estate Released Parties shall not be released of their obligations in this Settlement Agreement.

- <u>Tolling of Challenge Deadline</u>.  Upon the Approval Order becoming a Final Order, the Challenge Deadline shall not be subject to further extension, or to reopening under any circumstances, and the Committee shall not be permitted to assert any Challenge; *provided however*, that after the Settlement Effective Date, the Challenge Deadline shall be extended from December 16, 2019 through date that the Approval Order becomes a Final Order without the need for further stipulations extending the Challenge Deadline. The Challenge Deadline for Transferred Claims shall be extended through February 3, 2021.

## RELIEF REQUESTED

13.     By this Motion, the Movants request entry of the Proposed Order, attached hereto as **<u>Exhibit A</u>**, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 (i) approving the Settlement Agreement; and (ii) authorizing the Parties to take any and all actions necessary to effectuate the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

14.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Courts have interpreted this rule as granting broad authority to settle controversies.  Compromises are favored in bankruptcy in order to expedite the administration of cases and reduce administrative costs and litigation.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy case, '[c]ompromises are favored in bankruptcy.'") (citation omitted); *In re Coram Healthcare Corp.*, 315 B.R. 321, 329-30 (Bankr. D. Del. 2004); *In re Zacharias*, 2015 WL 849048, at *2 (D. Del. Feb. 23, 2015) (favoring settlements in bankruptcy to minimize litigation and expedite the administration of the bankruptcy estate).

15.     The approval of a proposed compromise and settlement is committed to the sound discretion of the court and is based on the circumstances of each case.  *See Protective Comm. for*

6

*Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("[T]he decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court."). In making its determination, a court should not substitute its own judgment for that of the trustee. *In re Neshaminy Office Bldg. Assoc's.*, 62 B.R. 798, 803 (E.D. Pa. 1986). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *see also World Health Alts.*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities." (internal citations and quotations omitted)); *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) (citation omitted); *In re Zacharias*, 2015 WL 849048, at *2.

16.     The court should approve a proposed settlement when it is fair and reasonable, and in the best interests of the estate and its creditors. *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *In re Louise's Inc.*, 211 B.R. at 801. Thus, the settlement need not be the best that the trustee could have achieved, but need only fall "within the reasonable range of litigation possibilities." *Id.* (citation omitted).

17.     When considering whether a proposed settlement is fair, reasonable and in the interest of the estate, the Third Circuit has enumerated four factors that should be considered in determining whether a settlement should be approved: (1) the probability of success through litigation; (2) the difficulty in collecting any judgment that may be obtained; (3) the complexity

IMPAC 6415042v.5

of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors. *In re Martin*, 91 F.3d at 393.

18.     A review of the factors demonstrates that the settlement reached between the Parties is in the best interests of the Debtors' estates and all creditors in these cases, and the Parties believe the Motion should be approved.

19.     As with all litigation, the result of the litigation resolved by the Settlement Agreement is uncertain and complicated.  As is required by the Final DIP Order, the Committee would need to file a standing motion and (if granted) commence an action against the Prepetition Term Loan Agent and Prepetition Term Loan Lenders to challenge the validity, perfection, and priority of the Prepetition Term Loan Obligations as well as certain potential causes of action based on the foregoing.  While the Committee is confident in its asserted viable claims and causes of action, no litigation result is guaranteed.

20.     Additionally, even if the Committee believes the probability of a successful Challenge is high as it relates to the propriety of the Prepetition Term Loan Lenders' liens, the distribution amounts to unsecured creditors could be minimal absent the settlement.  Indeed, disputes related to the matters resolved by the Settlement Agreement would need to be litigated with no guarantees of a more favorable outcome for the Debtors' estates or their creditors.

21.     With respect to the expense, delay, and complexity of the litigation, the Parties would need to engage in extensive discovery, expend tremendous effort and expense, and endure significant litigation risk if litigated.  The disputes between the Parties are fact-intensive, involving actions and events that spanned several months and years prior to the Petition Date, and the proceedings related to any Challenge would take months, if not longer, to resolve, and would be costly to the Debtors' estate.

IMPAC 6415042v.5

22.     Meanwhile, the Debtors' Chapter 11 Cases would be paused to allow this process to play out.   Any potential distributions to creditors would be completely uncertain and significantly delayed absent approval of the settlement.  In contrast, if the Settlement Agreement is approved, the Debtors' Chapter 11 Cases are one step closer to finality and hopefully a successful plan process.  Even if these Chapter 11 Cases do not ultimately lead to a successful plan process, the Settlement Agreement still provides a fair resolution of these potential claims that would apply in a chapter 7 estate.  It would be an unfortunate outcome for creditors if the Debtors' sale efforts and net sale proceeds that may be available for creditors were reduced as a result of professional fees and administrative expenses related to litigation made unnecessary by the Settlement Agreement.

23.     Finally, the Settlement Agreement unquestionably serves the paramount interest of the Debtors' creditors as it resolves claims and complex disputes without costly litigation and thereby preserves estate assets for the benefit of all creditors.  In this respect, the settlement serves the paramount interests of the Debtors' creditors because it subordinates entirely the Prepetition Term Loan Obligations not only to administrative expense and priority claims but also to all other non-priority unsecured claims up to the first $4,000,000 of distributions.  The Prepetition Term Loan Lenders can only share in distributable proceeds in excess of $4,000,000 and even then, only 10% thereof.  Moreover, obviating litigation of the disputes covered by the Settlement Agreement will allow the Debtors, the Committee, and other creditor representatives to focus on working collaboratively to bring these cases to an orderly and efficient resolution.

24.     Based on the foregoing, the settlement is fair and reasonable, and is in the best interests of creditors and the Debtors' estates.  The compromise was entered into in good faith and was negotiated at arms' length.  It represents the best resolution for the Parties as well as the

IMPAC 6415042v.5

Debtors' estates.   Accordingly, the Movants request that the Court enter the Proposed Order, attached hereto as **Exhibit A**, approving the Settlement Agreement.

### NO PRIOR REQUEST

25.    No previous motion for the relief requested herein has been made to this or any other Court.

### NOTICE

26.    Notice of this Motion has been provided to (i) the Office of the U.S. Trustee, (ii) counsel to the Parties; and (iii) all parties that have requested notice pursuant to Bankruptcy Rule 2002.   The Parties submit that, under the circumstances, no other or further notice is required.


*[Remainder of Page Left Intentionally Blank]*

IMPAC 6415042v.5

## CONCLUSION

WHEREFORE, the Movants respectfully request that this Court enter the Proposed Order, attached hereto as **Exhibit A**, approving the Settlement Agreement, and grant such other and further relief as the Court deems just and proper.

Dated:   November 22, 2019

**BAYARD, P.A.**

/s/ *Erin R. Fay*
Justin Alberto (No. 5126)
Erin R. Fay (No. 5268)
600 N. King Street
Suite 400
Wilmington, Delaware 10801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email:   jalberto@bayardlaw.com
        efay@bayardlaw.com

-and-

**COOLEY LLP**
Seth Van Aalten, Esq.
Michael Klein, Esq.
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email:   svanaalten@cooley.com
        mklein@cooley.com

*Counsel to the Debtors*

**POTTER ANDERSON & CORROON LLP**

/s/ *L. Katherine Good*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone:   (302) 984-6000
Facsimile:   (302) 658-1192
Email:        csamis@potteranderson.com
             kgood@potteranderson.com
             astulman@potteranderson.com

*Counsel to the Official Committee of Unsecured Creditors*

IMPAC 6415042v.5