Donlin

FILED

2020 JUL 14 PM 12: 26

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:  Charlotte Russe, Inc. _____ Case No.  19-10214

## AMENDED TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice. Further, attached hereto and marked as Exhibit "A" are Agreed Order Appointing Receiver, Consent Journal Entry Confirming Sheriff's Sale and Sheriff's Deed transferring the property to COMM 2014-CCRE16 SW Wanamaker Road, LLC.

COMM 2014-CCRE16 SW WANAMAKER
ROAD, LLC
Name of Transferee

West Ridge Mall, LLC
Name of Transferor

Name and Address where notices to transferee should be sent:
Sharon L. Stolte
4600 Madison Avenue, Suite 1000
Kansas City, MO  64112
Phone: 816.627.5543
Last Four Digits of Acct #: N/A

Court Claim # (if known):  00502
Amount of Claim: $161,062.85
Date Claim Filed:  5/2/2019

Name and Address where transferee payments should be sent (if different from above):

COMM 2014-CCRE16 SW
WANAMAKER ROAD, LLC
c/o David Serna
1601 Washington Ave., Suite 700
Miami Beach, FL 33139
Last Four Digits of Acct #:  N/A

Phone:
Last Four Digits of Acct. #: N/A

13578141.1

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC, a Delaware limited liability company,
By: WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF
THE HOLDERS OF COMM 2014-CCRE16 MORTGAGE TRUST COMMERCIAL PASS-THROUGH
CERTIFICATES, its Sole Member

By: LNR Partners, LLC, a Florida limited liability company, its Attorney-in-Fact under that
certain Limited Power of Attorney dated October 8, 2014

By: _____          Date: _**7·1·20**_____
Steve Ferreira /Vice President


*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

13578141.1

ELECTRONICALLY FILED
2019 May 09 AM 8:29
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2019-CV-000341



**Court:**        Shawnee County District Court

**Case Number:**  2019-CV-000341

**Case Title:**   Wells Fargo Bank National Association - Trustee
                  vs. West Ridge Mall LLC, et al.

**Type:**         Agreed Order Appointing Receiver

SO ORDERED.

*Richd D. Anderson*

/s/ Honorable Richard Anderson, District Judge

Electronically signed on 2019-05-09 08:29:23    page 1 of 26

## IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

| | |
|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF COMM 2014-CCRE16 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS- MORTGAGE PASS-THROUGH THROUGH- CERTIFICATES,**<br><br>Plaintiff,<br><br>**WEST RIDGE MALL, LLC, et al.**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case No. 2019-CV0000341**

**Division Two**

**Petition Pursuant to K.S.A. Chapter 60**

**<u>TITLE TO REAL ESTATE INVOLVED</u>**

### <u>AGREED ORDER APPOINTING RECEIVER</u>

This cause comes before the Court on the Motion for Order Appointing Receiver ("Motion") filed by Plaintiff WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF COMM 2014-CCRE16 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES ("Noteholder"), acting by and through LNR Partners, LLC, its special servicer.

The Court, having reviewed this Order Appointing Receiver submitted by Noteholder, and agreed to by Borrower as indicated in the below signature of its attorney, and the other pleadings filed to date, including the Verified Petition for Breach of Note, Foreclosure of Mortgage and Assignment of Leases and Rents, Foreclosure of Personal Property Security Interests and Specific Performance and Appointment of Receiver ("Petition"), the Motion, the Suggestions in Support of Motion for Order Appointing Receiver, and the Loan Documents[1] attached to the Petition, and being fully advised in the premises, FINDS:

1.      This Court has jurisdiction over the parties and the subject matter of this lawsuit.

---

[1] Unless otherwise noted, capitalized terms used herein shall have the meaning identified in the Petition.

2.      This Order is proper pursuant to the terms of the Loan Documents, K.S.A. §§ 58-2343, 60-1001 *et seq.* and 60-1301 *et seq.*

3.      This Order is in the proper form under K.S.A. § 60-1304(a).

4.      Proper notice was provided of this Motion.

5.      Simultaneous with the filing of the Motion, Noteholder commenced this lawsuit by filing the Petition seeking judgment relating to the Note, foreclosure of the Mortgage and Assignment of Rents, and enforcement of the Loan Documents and appointment of a receiver.

6.      Defendant WEST RIDGE MALL, LLC ("Borrower") is the record fee interest owner of the real property, personal property and associated property and business interests that are the subject of the Petition (the "Mortgaged Property"), which are commonly known as the West Ridge Mall, located at 1801 Southwest Wanamaker Road, Topeka, Kansas and the West Ridge Plaza, located at 2100 & 2120 Southwest Wanamaker Road, Topeka, Kansas.[2]  Borrower is a single purpose entity and any property owned by Borrower has been pledged to Noteholder as security for repayment of the obligations identified as due and owing herein.

7.      Pursuant to the terms of the Loan Documents, Noteholder's predecessor-in-interest loaned Borrower $54,000,000.00 in exchange for Borrower's covenants, agreements, representations and warranties stated in the Loan Documents.

8.      Pursuant to the Loan Documents, in order to secure the payment of the indebtedness evidenced by the Loan Documents, Borrower granted Noteholder's predecessor in interest a security interest in the Mortgaged Property, which includes the Real Property, the Personal Property associated with the Real Property, and the Rents generated from the operation of the Mortgaged Property.

---

[2] "Mortgaged Property" includes all property interests as identified in paragraph 18 of the Petition.

2

9.      Noteholder is the assignee of the Loan Documents and is the holder in due course and owner of all such Loan Documents with the right to enforce the obligations therein and to seek the remedies sought herein.

10.     Borrower defaulted on the Loan by failing to make certain required payments and perform certain obligations when due.

11.     By letter dated November 15, 2018, Noteholder gave notice to Borrower of its default on the Loan. Noteholder accelerated as due and owing in full all obligations pursuant to the Note and Loan.

12.     Borrower has not made full payment of all obligations due and owing pursuant to the Note and Loan.

13.     Pursuant to the terms of the Mortgage, Borrower agreed that Noteholder shall be entitled to the appointment of a receiver to take possession and operate the Mortgaged Property and collect and apply the Rents, income, profits and revenues from the Mortgaged Property.

14.     Also, pursuant to terms of the Mortgage, upon the occurrence of a default, the license granted to Borrower to collect Rents is automatically revoked, and Noteholder may enter the Mortgaged Property, including the Real Property, use the Mortgaged Property and conduct business from the Mortgaged Property, obtain the appointment of a receiver, and apply the receipts from the Mortgaged Property in such order and priority as Noteholder deems appropriate.

15.     The appointment of a receiver pending determination of the causes of action in this lawsuit is necessary to keep, preserve and protect Noteholder's interest in the Mortgaged Property, including Noteholder's interests in the Rents generated from the Mortgaged Property.

16.     Pursuant to the Mortgage, K.S.A. § 58-2343 and K.S.A. § 60-1301 *et seq.*, this Court is authorized to appoint a receiver to protect Noteholder's interest in the Mortgaged

3

Property, to collect Rents, and specifically to appoint a receiver to keep, preserve and manage the Mortgaged Property and protect any business interest entrusted to the receiver pending the determination of this foreclosure proceeding.

17.     The Note and Loan Documents provide, except in certain circumstances, non-recourse obligations of Borrower; consequently, Noteholder's right to enforce the obligations contained in the Note and Loan Documents are, under the circumstances currently known to Noteholder, limited to those enforcement rights granted it pursuant to the Loan Documents, including the right to possession and use of the Mortgaged Property and the right to the appointment of a receiver upon default by Borrower.

18.     The annual gross income from the Mortgaged Property is estimated to be approximately $8,200,000.00. The monthly gross income is estimated to be $683,333.00.

19.     There is due and owing to Noteholder under the Loan Documents no less than $53,131,138.36 as of March 6, 2019, and the value of the Mortgaged Property is less than the amount owed relating to the Loan.[3] Noteholder has not inspected the Mortgaged Property and lacks sufficient information to concretely identify the value of the Mortgaged Property, and Noteholder reserves all rights to identify the value of the Mortgaged Property.

20.     The Mortgaged Property does not produce sufficient revenues to pay the outstanding obligations owed pursuant to the Loan Documents.

21.     In the absence of an order of the Court requiring specific performance of the Loan Documents, including appointing a receiver to take possession of, collect, manage and operate the Mortgaged Property during the pendency of this lawsuit, Noteholder's post-default remedies and contract rights will be unnecessarily delayed and Noteholder will bear the unreasonable risks of associated with accumulated loan obligations and deteriorating collateral. Borrower will not

4

be materially prejudiced by the appointment of a receiver. To the contrary, all parties will be benefited by the appointment of a receiver, with powers that provide the receiver the means in which to effectively manage the Mortgaged Property and make material decisions relating to the Mortgaged Property.

22.    The Woodmont Company, with Frederick J. Meno as its agent, is well qualified to act as the receiver in this lawsuit. Neither The Woodmont Company, nor Frederick J. Meno, have an interest in the Mortgaged Property or in the outcome of this lawsuit, and both meet the statutory requirements for appointment as receiver.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that pursuant to K.S.A. §§ 58-2343, 60-1001 et seq., and 60-1301 et seq., the Loan Documents and the pleadings filed herein, The Woodmont Company, with Frederick J. Meno as its agent ("Receiver"), is qualified to act as Receiver in this lawsuit, and is hereby appointed as Receiver to take possession, custody, and control of the property described below.

**1.    Description of Receivership Property:**

The "Receivership Property" that shall be included in the receivership estate established by this Order shall include all real and personal property and related property and business interests pledged by Borrower in the Loan Documents as security for repayment of the obligations owed under the Loan Documents, which is defined as the "Mortgaged Property" in the Petition. Without limiting the scope of the definition of Receivership Property, the Receivership Property includes all property particularly identified in <u>Exhibit 1</u> to this Order, which includes a legal description of the Real Property. In general, without limiting the scope or specificity of the definition and description of the Receivership Property, the Receivership Property consists of the real property, fixtures, rents and leases, personal property, accounts, and

---

[3] Although an amount certain is identified owed herein, Borrower retains the right to present evidence and argument

110461143

accounts collateral and all related real and personal property interests commonly known as the West Ridge Mall, located at 1801 Southwest Wanamaker Road, Topeka, Kansas and the West Ridge Plaza, located at 2100 & 2120 Southwest Wanamaker Road, Topeka, Kansas.

**2.    Receiver's Oath and Bond:**

Receiver shall execute and file a Receiver's Oath.  Within five days of this appointment, Receiver shall also post a Receiver's Bond in the sum of $50,000.00, conditioned upon the faithful performance of Receiver's duties.

**3.    Receiver's Fees:**

Receiver shall be paid the rates identified in Exhibit 2 to the Motion for Order Appointing Receiver for receivership services.  Receiver may engage The Woodmont Company or its affiliates to provide property management and/or leasing services for the Receivership Property.  All fees and costs of Receiver and the professionals and agents of Receiver shall be accounted for in the monthly financial report.  In the ordinary course, without further Order of the Court, Receiver shall be entitled to fees and reimbursement of all reasonable and necessary expenses from funds of the receivership estate for such time as is reasonable and necessary for Receiver to accomplish the purposes and tasks set forth in this Order.

**4.    Receiver's Power and Authority:**

Receiver is hereby given the power and authority to:

(A)    Take immediate and exclusive possession, custody and control of the Receivership Property, including without limitation, all real and personal property including, without limitation, any businesses operated by or at the instance of

---

regarding the amount owed.

110461143

Borrower,[4] which constitutes Receivership Property (whether such business be managed by Borrower or its agents) and all monies therefrom, equipment, fixtures, furnishings, records, inventory, assets, royalties, rents, receivables, accounts, deposits, equities, profits, and all other related property interests. Receiver shall care for, preserve and maintain the Receivership Property. Receiver may incur any reasonable and necessary expenses necessary for this purpose. All expenses shall be paid from funds of the receivership estate. Receiver shall not be obligated to advance its own funds.

(B)    Receiver is hereby given the power and authority usually held by receivers and reasonably necessary to accomplish the purpose of this receivership including, without limitation, the specific power to:

i.    Change any and all locks or other means of granting or denying access to the Receivership Property and limit access thereto;

ii.    Maintain, protect, collect, lease, and operate the Receivership Property;

iii.    Market and sell the Receivership Property subject to this Court's approval of any proposed sale;

iv.    Gain access to all financial institution, trade, merchants association and all other accounts relating to the Receivership Property and withdraw and otherwise transfer funds from such accounts into receivership accounts, which shall be opened by Receiver using Borrower's tax identification numbers; and make disbursements in payment of expenses incurred by

---

[4] Reference to the "Borrower" shall refer to the Borrower, its agents, managers, successors and assigns, and specifically, without limiting the foregoing, any management company currently managing the Receivership Property for Borrower, and other persons acting under, in concert with, or for Borrower.

110461143

Receiver or expenses which otherwise benefited the Receivership Property in accordance with this Order;

v.   Hire, on a contract basis, professionals, agents, employees, real estate brokers, and other personnel necessary to manage, preserve, and lease the Receivership Property, and Receiver is authorized to hire any professionals, agents, employees, real estate brokers and other personnel from The Woodmont Company or its affiliates in order to perform Receiver's duties under this Order and without any further approval by this Court;

v.   Hire, employ, pay and terminate servants, agents, employees, clerks and accountants; purchase materials, supplies, advertising, and other services at ordinary and usual rates and prices using receivership estate funds that shall come into Receiver's possession; collect or compromise debts of the receivership estate; incur risks and obligations ordinarily incurred by owners, managers, and operators of similar businesses, which in Receiver's reasonable judgment are necessary for the operation of the business, and no such risk or obligation incurred shall be the personal risk or obligation of Receiver, but only that of the receivership estate.  Any pre-receivership amounts due and owing to any employee, servant, agent, clerk or other personnel of Borrower, including unpaid but accrued sick time, unpaid but accrued vacation time, unpaid but accrued overtime and/or any and all other liabilities related to employment, unemployment and/or worker's compensation claims shall be and are pre-receivership

8

costs and expenses and not the responsibility of Receiver or the receivership;

vi.     Take possession of all licenses, permits or other government issued documents necessary for the continued operation of the Receivership Property. If the issuing agency requires that Receiver apply for a new license, permit or other document, to the extent permitted by law, Receiver shall be allowed to continue to operate under the current permit until the new one is issued to ensure no disruption of service occurs;

vii.    Enter into contracts, leases, agreements and instruments as Receiver reasonably believes necessary for the operation of the Receivership Property and terminate any existing contract, lease, agreement, or instrument as deemed prudent by Receiver, and any and all damages, claims or causes of action arising from such termination shall be and are pre-receivership claims and obligations. Receiver's right to enter into leases relating to the Receivership Property shall be subject to Noteholder's approval rights as stated in the Loan Documents;

viii.   Borrow from Noteholder or third parties the funds required to continue the operation of the existing business and/or when current income is insufficient to meet expenses, upon such terms as deemed reasonable by Receiver. Nothing in this Order shall obligate Noteholder to provide such funds, and Noteholder, or other lending party, shall be entitled to the issuance of a Receiver's Certificate, in accordance with other provisions of this Order;

9

ix.    Secure, take possession and control of and collect all Rents and security deposits, which now or hereafter may be due from the operation of any business connected with the Receivership Property and improvements thereon, including such Rents, security deposits, income and profits presently held in bank accounts relating to the Receivership Property;

x.    Bring, defend and prosecute all actions, in Receiver's name or Borrower's name, that are reasonably necessary in the Receiver's judgment, including, but not limited to, for the collection of Rents, accounts receivable, property tax assessments, and contract rights relating to the Receivership Property when due, including filing, prosecuting and defending claims in any bankruptcy proceedings in Receiver's name or in Borrower's name;

xi.    Open and review mail (including e-mail) and faxes received at the Receivership Property directed to Borrower or its manager relating to the Receivership Property;

xii.    Receive and endorse checks relating to the Receivership Property in Receiver's name or in Borrower's name;

xiii.    Issue subpoenas to enforce the terms of this Order;

xiv.    Abandon Receivership Property that Receiver considers to be of little or no value to the receivership estate; and

xv.    Use Borrower's tax identification number for any and all purposes.

(C)    Receiver shall not be obligated to file any federal or state income tax returns, schedules, sales tax filings or other forms for Borrower, but shall upon the reasonable request of Borrower, provide Borrower with such information as is

10

110461143

necessary to enable to prepare and file any federal, state, or local income or sales tax returns, schedules or other forms required under applicable law.

**5.    Inventory:**

Within thirty (30) days after entry of this Order, Receiver shall file with the Court an inventory of all of the Receivership Property taken into possession pursuant to this Order. Receiver shall deliver a copy of the same to counsel of record for Noteholder and Borrower.

**6.    Security Deposits:**

Any security or other deposits that third parties have paid to Borrower or its agents or that third parties may pay to Receiver, if otherwise refundable under the terms of their agreements with Borrower or Receiver, shall be refundable by Receiver in accordance with such agreements.

**7.    Monthly Reports:**

Receiver shall prepare and deliver to counsel of record for Noteholder and Borrower interim reports of the condition and operation of the Receivership Property in the receivership estate within twenty (20) days of the closing of each accounting period or month. These interim reports shall include Receiver's fees and other professional fees and expenses of the receivership estate incurred for each reporting period in the operation and administration of the receivership estate. Receiver shall follow accounting standards typical for similar properties, and may enlist the aid of accountants for preparation of Receiver's reports to the Court. Any objections to Receiver's reports must be filed within thirty (30) days of receipt of the same. Receiver may pay its fees and other professional's fees in the ordinary course.

**8.    Management of the Receivership Property and/or Business Entity:**

Receiver shall operate and manage the Receivership Property. Receiver shall collect Rents and pay obligations incurred by the receivership estate in the ordinary course. Receiver may employ or engage such agents, independent contractors, employees, management

11

110461143

companies, attorneys, professionals and brokerage companies to assist Receiver in managing the Receivership, including The Woodmont Company and any company with which Receiver is affiliated or is a principal, employee or agent. All current employees of Borrower that are hired by the Receiver, if any, shall be, upon being hired by the Receiver or related to this receivership, and during the time such employee is employed by the Receiver or related to this receivership, deemed to no longer be employed by Borrower and shall be deemed to solely be employed by Receiver or the company engaged by the Receiver. The Receiver and any company engaged by the Receiver shall not be responsible as an employer or otherwise for any violation of employment laws prior to Receiver taking over, and Borrower and/or Borrower's management company shall remain responsible. Receiver may undertake the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and enterprises and Receiver shall pay for these services from the funds of the receivership estate. No such risk or obligation so incurred shall be the personal risk or obligation of Receiver, but shall be the risk and obligation of the receivership estate. All who are acting, or have acted, on behalf of Receiver at the request of Receiver are protected and privileged with the same protections of this Court as Receiver has. Notwithstanding any language in this paragraph or otherwise in this Order, Receiver and the receivership estate shall not be liable for any expense or obligation not incurred by Receiver, including that Receiver and the receivership estate shall not be liable for any expense or obligation incurred by Borrower or relating to the Receivership Property that was incurred prior to Receiver's appointment. Receiver may pay such pre-receivership expenses or obligations if in the discretion of Receiver it benefits the receivership estate, but payment of such pre-receivership expenses or obligations must be approved by Noteholder. Receiver must also obtain approval from Noteholder to be obligated on, pay for or incur liabilities or take risks in excess of $25,000.00.

12

110461143

**9.     Police Assistance:**

Receiver, as agent of the Court, shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time during the term of the receivership, if in the opinion of Receiver such assistance is necessary to preserve the peace and protect the Receivership Property, without further order from this Court.

**10.     Bank Accounts:**

Receiver shall have the power to take possession of, and receive from all depositories, banks, brokerages and otherwise, any money or other item of value on deposit in such institutions associated with, belonging to, arising from or otherwise related to the operation of the Receivership Property, whether such funds be in accounts titled in the name of Borrower or its manager, and Receiver may indemnify the institution upon whom such demand is made, and is empowered to open or close any such accounts. All banks, brokerages and like institutions are hereby ordered, upon request from Receiver, to deliver any such monies or other items to Receiver and freeze such accounts. Receiver shall deposit monies and funds collected and received in connection with the receivership estate at federally-insured banking institutions or savings associations which are not parties to this case. All such institutions, upon presentation of a copy of this Order by Receiver, shall provide copies of any requested records relating to any accounts relating to the Receivership Property to Receiver. Receiver may add its agents or employees as additional signatories to any bank accounts, money market accounts, CD's or any other financial instruments or accounts controlled by Receiver.

**11.     Delivery of Revenues:**

Upon Borrower's notice of this Order, Borrower shall immediately deliver to Receiver all Rents or other amounts generated from the  Receivership Property in its or its manager's possession, custody or control and that are received after the date of this Order during the

13

pendency of this receivership, without off-set or deduction. Receiver may demand, collect, and receive all Rents, or any part, owed, unpaid, and collected or uncollected as of the effective date of this Order, or which hereafter becomes due.

**12.    Use of Funds:**

Receiver shall pay only those bills that are reasonable and necessary for the operation or the protection of the Receivership Property and shall allocate funds in the following order of priority: (1) the costs of the receivership estate, including Receiver's fees and professional fees; (2) post-receivership expenses, including ordinary course expenses, insurance premiums, general and special taxes or assessments levied on the real property and improvements thereon; (3) the creation and retention by Receiver of a reasonable working capital fund; (4) after reserving sufficient funds Receiver deems reasonable to retain for operation and protections of the Receivership Property, Receiver may pay, at its discretion, any remaining amounts to Noteholder to reduce the amounts due, owing and unpaid by Borrower to Noteholder. All monies coming into Receiver's possession shall only be expended for the purposes herein authorized, and the balance of funds shall be held by Receiver pending further order of this Court. As is also noted above, although Receiver and the receivership estate shall not be liable for any expense or obligation not incurred by Receiver, including that Receiver and the receivership estate shall not be liable for any expense or obligation incurred by Borrower or relating to the Receivership Property that was incurred prior to Receiver's appointment, Receiver may pay such pre-receivership expenses or obligations if in the discretion of Receiver it benefits the receivership estate, but payment of such pre-receivership expenses or obligations must be approved by Noteholder.

110461143

### 13.    Utilities:

Any utility company providing services to the Receivership Property, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services, shall be prohibited from discontinuing service to the Receivership Property for any non-payment by Borrower prior to Receiver's appointment by this Court based upon unpaid bills incurred by Borrower. Further, such utilities shall transfer any deposits held by the utility company to the exclusive control of Receiver and are prohibited from (i) exercising any right of setoff or recoupment against such deposits or (ii) demanding that Receiver deposit additional funds in advance to maintain or secure such services. Utility companies are prohibited from discontinuing service while the new receivership accounts are in process of being established.

### 14.    Mail:

Receiver may issue demand that the U.S. Postal service grant exclusive possession and control of mail including postal boxes as may have been used by Borrower and may direct that mail related to the Receivership Property and its business be re-directed to Receiver.

### 15.    Insurance:

Receiver shall determine upon taking possession of the Receivership Property whether in Receiver's judgment there is appropriate insurance coverage in place to adequately protect the receivership estate. If Receiver determines that the current insurance coverage is inadequate, the Receiver shall make reasonable efforts to obtain appropriate additional insurance coverage; provided, however, that if the receivership estate does not have sufficient funds to do so or Noteholder does not agree to fund the same, Receiver shall seek instructions from the Court with regard to adequately insuring the Receivership Property. Receiver shall make reasonable efforts to obtain replacement insurance coverage as soon as is reasonably practicable following the Receiver's appointment. Receiver shall notify Borrower promptly upon issuance of the

15

110461143

replacement insurance coverage, and Borrower may then cancel the existing coverage, with any unearned premiums relating to the Receivership Property to be turned over to Receiver. Borrower shall not terminate or impair any current insurance policies in place until such notification from the Receiver, and the Receiver and such other persons or entities deemed appropriate by the Receiver may be added as additional insureds on such policy(ies) during the term of the existing policy(ies) until such are cancelled by virtue of the replacement insurance coverage obtained by the Receiver.

### 16.    Entry to Receivership Property:

Receiver shall further be entitled to engage a locksmith for the purposes of gaining entry to any Receivership Property that is the subject of this receivership and through any security system, in order to obtain any property or documents to which Receiver is entitled pursuant to this Order, as well as giving any notices which may be required in performing Receiver's duties. Receiver may have locks or security codes changed or have keys created that will work for the existing locks.

### 17.    Legal Counsel:

Receiver may hire legal counsel for the receivership, and pay such persons for their services at such rates as Receiver deems appropriate for the services provided, including using the in-house counsel of The Woodmont Company (Brian Restivo) at a rate of $210.00 per hour. Legal fees and costs incurred by Receiver in performance of its duties may be included and paid as an expense of the receivership from Receivership Property.

### 18.    Receiver's Certificates:

In the event that income from the operation of the Receivership Property is insufficient to meet normal operating expenses and costs, Receiver is authorized to request funds from Noteholder and/or borrow money and to issue Receiver's Certificates to secure such

JJ0461143

indebtedness. The Receiver's Certificates shall have priority over all other general claims against the receivership estate and collectively constitute a lien and charge upon all of the assets of the receivership estate and, to the extent Noteholder lends money to Receiver, the lien of the Mortgage shall secure the Receiver's Certificate and shall be prior and superior to all liens, encumbrances and claims against the Receivership Property held by any secured creditors. After any Receiver's Certificate is issued, a copy shall be included in Receiver's monthly report. The original shall be delivered to Noteholder to be recorded on the Mortgage. As funds in the receivership estate are deemed by Receiver to be in excess of necessary reserves, Receiver may redeem these Certificates.

**19.    Noteholder to Notify Receiver of the Appearances of all Parties:**

Noteholder is ordered to promptly notify Receiver of the names, addresses, and telephone numbers of all parties and their counsel who appear in the lawsuit, so that Receiver may give notice to all parties of any matters affecting the receivership.

**20.    Receiver's Final Report and Account:**

As soon as is practicable after the need for the termination of the receivership, including upon transfer of legal title to the Receivership Property by sheriff's foreclosure and/or UCC sale, Receiver shall file and serve in this Court its Final Report and Account, and Receiver or a party in interest shall file a motion seeking approval of the final report, disbursement of any funds in the receivership estate and discharge of Receiver and termination of this receivership. Notice of the motion and any hearing set relating to the motion shall be given to Borrower, Noteholder and all persons whom Receiver has received notice of potential claims against the receivership estate.

The bond of Receiver shall be canceled upon the Court's discharge of Receiver, and the Receiver shall be released from all further obligations, duties, and liabilities with respect to the receivership and the Receivership Property.

17

**21.    Turnover of Property After Judicial Foreclosure Sale:**

If a sheriff's foreclosure sale is conducted pursuant to the terms of the Mortgage and judgment of this Court, the Receiver shall turnover such Receivership Property as is sold at the sheriff's foreclosure sale to the purchaser at the sale, except that the Receiver shall retain such Receivership Property as is necessary to prepare its final report and to otherwise close the receivership and obtain discharge of the Receiver.

**22.    Instructions from the Court:**

Receiver and the parties to this case may at any time apply to this Court for instructions or orders. The Court may grant any order requested by Receiver, without further notice of hearing, if no objection is filed with the Court and served on Receiver and the parties within twenty (20) days after filing and service of Receiver's request.

**23.    General Provisions.**

(A) No person or entity shall file suit against Receiver, or take other action against Receiver, without an order of this Court permitting the suit or action provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

(B) The receivership estate and its employees, agents, attorneys and all professionals and management companies retained by Receiver shall have no liability for any obligations or debts incurred by Borrower. Receiver and its employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to Receiver's duties under this Order, without prior authority from this Court as stated in (A) above.

18

(C) Nothing contained in the Order shall be construed as obligating or permitting Receiver to advance its own funds to pay any costs and expense of the receivership estate.

(D) Receiver and its employees, agents, attorneys and all professionals and management companies retained by Receiver shall be held harmless by the receivership estate.

**IT IS FURTHER ORDERED** that Borrower, its agents, managers, successors and assigns, and specifically, without limiting the foregoing, any management company currently managing the Receivership Property for Borrower, and other persons acting under, in concert with, or for Borrower, and any financial institutions in possession of the Receivership Property, are ordered to:

    **(A)**    **Turnover of Receivership Property:**

Relinquish and turn over possession and control of the Receivership Property to Receiver upon Receiver's appointment becoming effective.

    **(B)**    **Turnover of Keys, Books, and Records:**

Turn over to Receiver all receivership estate assets, including check books, account statements, statements of income and expenses and other financial statements for the Receivership Property, including copies of any records relating to operating expenses for the Shopping Center, a year-end 2018 operating statement and a year-to-date 2019 operating statement, the Rents, and all books, documents, account and software passwords, and records reflecting the rentals of or related to the operation of the Receivership Property, written contracts, leases, subleases, the  tenant leases and correspondence files, all agreements and correspondence files with vendors or service providers or other instruments which affect the Receivership Property, rent rolls, copies of all real and personal property tax statements, copies

19

of all insurance policies on the Receivership Property, a current list of the occupants of the Receivership Property, including the complete tenant ledgers with respect to each occupant, complete tenant files and histories, accounts receivable and accounts payable reports, bank statements and records relating to all accounts associated with the Property, documents and summaries relating to current or pending litigation and insurance claims, and all keys and other means of access to the Receivership Property, all member, insider, employee files of Borrower and agreements, contracts, health plans and pension plan files, all original documents of formation and title documents relating to Borrower and an executed W-9 for Borrower with its taxpayer identification number and stating the Receiver's address of c/o The Woodmont Company, 2100 West 7th Street, Fort Worth, Texas 76107;

      **(C)**    **Turnover of Licenses, Permits, and Taxpayer ID Number:**

Turn over to Receiver all documents that pertain to all licenses, permits, or government approvals relating to the Receivership Property and shall immediately advise Receiver of Federal and State taxpayer identification numbers used in connection with the operation of the Receivership Property, which Federal and State taxpayer identification numbers may be used by Receiver for all purposes;

      **(D)**    **Notification of Insurance:**

Immediately advise Receiver as to the nature and extent of insurance coverage on the Receivership Property. Borrower are prohibited from canceling, reducing, or modifying any and all insurance coverage currently in existence with respect to the Receivership Property, except as otherwise specifically provided herein; and

110461143

**(E)    Turnover of Monies and Security Deposits:**

Immediately turn over to Receiver all monies, including all Rents, cash, pre-paid rents, back rents, accounts, security deposits, other deposits, funds in property management bank accounts or other depository accounts for the Receivership Property.

**(F)    Cooperation:**

Cooperate in all reasonable ways with Receiver including, executing any documents or instruments in conjunction with a sale of all or any portion of the Receivership Property that may be approved in accordance with this Order.

**IT IS FURTHER ORDERED** that Borrower, its agents, managers, successors and assigns, and specifically, without limiting the foregoing, any management company currently managing the Receivership Property for Borrower, and other persons acting under, in concert with, or for Borrower, and any financial institutions in possession of the Receivership Property, are ordered to:

Upon the request of Receiver, provide Receiver within twenty (20) days of Receiver's request an accounting of, and promptly produce all records and statements for, each account, deposit account, certificate of deposit, and account receivable held by or on behalf of Borrower relating to the Receivership Property, including the Rents, and promptly produce all records and documents pertaining to the Receivership Property, including the Rents;

**IT IS FURTHER ORDERED** that pending further order of this Court, Borrower, its agents, managers, successors and assigns, and specifically, without limiting the foregoing, any management company currently managing the Receivership Property for Borrower, and other persons acting under, in concert with, or for Borrower who have actual or constructive knowledge of this Order, and their agents and employees, shall not:

21

**(A)    Commit Waste:**

Commit or permit any waste on the Receivership Property or any part thereof, or suffer, commit or permit any act on the Receivership Property or any part thereof in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Receivership Property or the fixtures presently on the Receivership Property or any part thereof;

**(B)    Collect Rents:**

Demand, collect, receive, discount, or in any other way divert or use any of the Rents from the Receivership Property and to the extent that Borrower receives or is in possession of any Rents or any other Receivership Property, such Rents and other Receivership Property shall be and are held in trust for the benefit of Receiver and the receivership estate and shall be immediately turned over to Receiver in the same condition as received by Borrower and with all necessary endorsements.

**(C)    Interfere with Receiver:**

Directly or indirectly interfere in any manner with the discharge of Receiver's duties under this Order or Receiver's possession of and operation or management of the Receivership Property;

**(D)    Transfer or Encumber the Receivership Property:**

Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property, including, but not limited to, the Rents, without prior Court order; and

**IT IS FURTHER ORDERED** that, except by leave of this Court, all lessors, lessees, guests, customers, principals, investors, suppliers, and or creditors seeking to enforce any claim, right, or interest against Borrower are barred by this Order from using any "self-help" or doing

22

110461143

anything whatsoever to interfere in any way with Receiver or the conduct of the receivership estate, provided however, the foregoing shall not apply to any tenant of the Receivership Property whose lease agreements provide it with "self-help" rights.

This Order shall be binding on the parties to this action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive notice of this Order.

In order to promote judicial efficiency, all persons who receive notice of this Order are enjoined in any way from disturbing the receivership assets or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve Receiver, the receivership assets, or the Receivership Property unless such person or persons first obtains the permission of this Court, except that Noteholder may enforce all rights identified in the Loan Documents, including proceeding with this lawsuit and the remedies sought herein or identified in the Loan Documents, and including that Noteholder and Borrower may reach agreement as it relates to the subjects of this lawsuit or the Loan Documents.

**IT IS FURTHER ORDERED** that all third parties (including but not limited to management companies and financial institutions) in possession of assets subject to this Order are hereby ordered to turn over such assets to Receiver within five (5) business days of receipt of a copy of this Order.

**IT IS FURTHER ORDERED** that from the date of this Order, the Receivership Property is under the jurisdiction of this Court and all persons and/or entities hereby are enjoined from transferring, conveying, encumbering, or in any way, dealing with the Receivership Property without the consent of Receiver or order of this Court, except that Noteholder may enforce all rights identified in the Loan Documents, including proceeding with this lawsuit and the remedies sought herein or identified in the Loan Documents, and including that Noteholder

23

and Borrower may reach agreement as it relates to the subjects of this lawsuit or the Loan Documents.

**IT IS SO ORDERED.**

SUBMITTED BY:

DENTONS US LLP


/s/ Robert A. Hammeke
Robert A. Hammeke  MO #19707
4520 Main Street, Suite 1100
Kansas City, MO 64111
Telephone:  816-460-2400
Facsimile:  816-531-7545
robert.hammeke@dentons.com

*Attorneys for Plaintiff*


AGREED BY:


ADAMS JONES LAW FIRM, P.A.
1635 N. Waterfront Parkway, Suite 200
Wichita, KS 67206-6623
Phone: (316) 265-8591 / Fax: (316) 265-9719
Email:  mvines@adamsjones.com


By: /s/ Monte Vines
     Monte Vines, #11044

*Attorneys for Borrower*

# EXHIBIT

# 1

# ARTICLE 1 — GRANTS OF SECURITY

**Section 1.1    Property Mortgaged.**    Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender and its successors and assigns all of the Borrower's right, title and interest in and to, the following property rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "Property"):

(a)    Land.  The real property described in Exhibit A attached hereto and made a part hereof (the "Land");

(b)    Additional Land.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

(c) Improvements.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "Improvements"); provided, however, that "Improvements" shall not include any buildings, structures, fixtures or improvements owned by Tenants pursuant to the Leases (as hereinafter defined), except to the extent that Borrower shall have any right or interest therein;

(d)    Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, rights of dower, rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)    Equipment.  All "goods" and "equipment," as such terms are defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "Equipment").  Notwithstanding the foregoing, Equipment shall not include any property belonging to Tenants under Leases (as hereinafter defined) except to the extent that Borrower shall have any right or interest therein;

(f)    Fixtures.    All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "Fixtures"). Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to Leases, except to the extent that Borrower shall have any right or interest therein;

(g)    Personal Property.    All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "Personal Property"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(h)    Leases and Rents.    All leases, subleases or subsubleases, lettings, licenses, concessions, or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, letting, licenses, or concession agreements entered into in connection with such leases, subleases, subsubleases, lettings, licenses or concession or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "Leases"), whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq. (as the same may be amended from time to time, the "Bankruptcy Code") and all right, title and interest of Borrower, its

successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

      (i)    **Condemnation Awards.**  All Awards which may heretofore and hereafter be made with respect to the Property by reason of Condemnation, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

      (j)    **Insurance Proceeds.**  All Insurance Proceeds in respect of the Property under any Policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any Policies, judgments, or settlements made in lieu thereof, in connection with a Casualty to the Property;

      (k)    **Tax Certiorari.**  All refunds, rebates or credits in connection with reduction in Taxes or Other Charges charged against the Property;

      (l)    **Conversion.**  All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, Insurance Proceeds and Awards, into cash or liquidation claims;

      (m)    **Rights.**  Upon the occurrence and during the continuance of an Event of Default, the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

      (n)    **Agreements.**  All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening and during the continuance of any Event of Default hereunder, to receive and collect any sums payable to Borrower thereunder;

      (o)    **Trademarks.**  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property, except for those tradenames, trademarks, servicemarks, logos or copyrights owned by Simon Property Group, L.P. or SPG Spinco Operating Partnership, L.P. (as such name may change from time to time);

      (p)    **Accounts.**  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property (other than Borrower's operating accounts), including,

without limitation, all accounts, if any, established or maintained pursuant to (i) the Loan Agreement and (ii) the Lockbox Agreement and the Cash Management Agreement; together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof;

(q)     Letter of Credit.  All letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Borrower now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1; and

(r)     Other Rights.  Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (q) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "Real Property") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and mortgaged hereby.

Section 1.2     Assignment of Rents.     Borrower  hereby  absolutely  and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute and irrevocable assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Loan Agreement, the Cash Management Agreement and Section 8.1(h) of this Security Instrument, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. In the event that Lender, in the exercise of its sole and absolute discretion, accepts a cure by Borrower of the Event of Default that caused the license granted in this Section 1.2 to be revoked, and provided that no other Event of Default then exists, said license shall be reinstated to Borrower without further action of the parties.

Section 1.3     Security Agreement.  This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment and the Personal Property and other property constituting the Property, whether now owned or hereafter acquired, to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "Collateral"). If an Event of Default

shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) business days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper. Borrower's (debtor's) principal place of business is as set forth on page one hereof and the address of Lender (secured party) is as set forth on page one hereof.

   **Section 1.4** **Fixture Filing.** Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate land records for the county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures to the extent of Borrower's interest therein.

   **Section 1.5** **Pledges of Monies Held.** Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender, including, without limitation, any sums deposited in the Lockbox Account, the Cash Management Account, the Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Security Instrument or the Loan Agreement.

   **Section 1.6** **Mortgage Spreader.** The lien of the Original Mortgage is hereby spread to encumber all of the Property (as defined in **Section 1.1** hereof) not previously encumbered by the Original Mortgage.

## EXHIBIT A

## LEGAL DESCRIPTION

### WEST RIDGE PLAZA PROPERTY:

TRACT 1:

LOT 1, BLOCK A IN WEST RIDGE PLAZA SUBDIVISION, SHAWNEE COUNTY, KANSAS, EXCEPT THAT PART PLATTED AS WEST RIDGE PLAZA SUBDIVISION NO. 2.

AND EXCEPT: THAT PART OF TRACT 1 LYING WITHIN THE FOLLOWING DESCRIBED TRACT: A TRACT OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 1; THENCE SOUTH 01 DEGREES 58 MINUTES 56 SECONDS EAST, 482.66 FEET ALONG THE EAST LINE OF SAID LOT 1; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 139.13 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 75.29 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 120.00 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 17.92 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 110.00 FEET; THENCE SOUTH 44 DEGREES 04 MINUTES 00 SECONDS WEST, 30.62 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 430.85 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 38.03 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 239.74 FEET TO A POINT ON THE WEST LINE OF SAID LOT 1; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 26.00 FEET ALONG SAID WEST LINE OF LOT 1; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 224.24 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 40.00 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 134.50 FEET, A DISTANCE OF 75.13 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 165.50 FEET, A DISTANCE OF 93.66 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 207.96 FEET TO A POINT ON THE NORTH LINE OF SAID LOT 1; THENCE NORTH 88 DEGREES 01 MINUTES 30 SECONDS EAST, 781.64 FEET ALONG SAID NORTH LINE OF LOT 1 TO THE POINT OF BEGINNING.

AND EXCEPT: A TRACT OF LAND IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHWEST CORNER OF SAID LOT 1, BLOCK A; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 46.79 FEET ALONG THE WEST LINE OF SAID LOT 1; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 67.25 FEET TO THE POINT OF BEGINNING; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 220.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 43.33 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 10.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 81.33 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 10.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 71.33 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 183.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 50.00 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 37.00 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 246.00 FEET TO THE POINT OF BEGINNING.

ALSO DESCRIBED AS: THAT PART OF A TRACT OF LAND IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION DESCRIBED AS FOLLOWS: REFERRING TO THE SOUTHWEST CORNER OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, A FOUND PIN; THENCE NORTHERLY, NORTH 00 DEGREES 29 MINUTES 23 SECONDS EAST, 46.95 FEET; THENCE SOUTH 89 DEGREES 31 MINUTES 08 SECONDS EAST, 67.02 FEET TO THE SOUTHWEST CORNER OF AN EXISTING BUILDING, SAID POINT BEING THE POINT OF BEGINNING; THENCE FOLLOWING THE EXISTING BUILDING LINE ON THE FOLLOWING DESCRIBED COURSES: THENCE NORTHERLY, NORTH 00 DEGREES 33 MINUTES 16 SECONDS EAST, 220.53 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 43.30 FEET; THENCE NORTHERLY, NORTH 00 DEGREES 28 MINUTES 06 SECONDS EAST, 10.00 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 81.59 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 28 MINUTES 06 SECONDS WEST, 10.00 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 71.24 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 33 MINUTES 27 SECONDS WEST, 183.48 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 08 SECONDS EAST, 50.04 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 39 MINUTES 53 SECONDS WEST, 37.10 FEET; THENCE WESTERLY, NORTH

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

89 DEGREES 31 MINUTES 08 SECONDS WEST, 246.09 FEET TO THE TRUE POINT OF BEGINNING.

ALSO: NON EXCLUSIVE EASEMENTS AND INGRESS-EGRESS, PARKING AND SUCH OTHER PURPOSES AS SET OUT IN OPERATION AND EASEMENT AGREEMENT BETWEEN DAYTON HUDSON CORPORATION AND TOPEKA SIMON, INC., RECORDED IN BOOK 2433 PAGE 207.

TRACT 2:

LOT 1, BLOCK A, IN WEST RIDGE PLAZA SUBDIVISION NO.2, SHAWNEE COUNTY, KANSAS.

## WEST RIDGE MALL PROPERTY:

PARCEL 1 - FEE SIMPLE

PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, AND PART OF LOTS 1 AND 2, BLOCK "A", WEST RIDGE MALL SUBDIVISION NO. 3, BEING A TRACT OR LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., IN THE CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER, 1165.12 FEET; THENCE NORTH 02° 14' 41" WEST, 254.32 FEET TO THE POINT OF BEGINNING; THENCE NORTH 87° 17' 30" WEST, 205.26 FEET; THENCE NORTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 455.53 FEET; THENCE CONTINUING NORTHWESTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 300.00 FEET, AN ARC DISTANCE OF 222.35 FEET; THENCE NORTH 00° 10' 27" EAST, 1083.52 FEET; THENCE NORTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 400.00 FEET, AN ARC DISTANCE OF 488.69 FEET; THENCE NORTH 70° 10' 27" EAST, 620.69 FEET; THENCE NORTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 500.00 FEET, AN ARC DISTANCE OF 235.62 FEET; THENCE SOUTH 82° 49' 33" EAST, 288.00 FEET; THENCE SOUTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 250.00 FEET, AN ARC DISTANCE OF 268.34 FEET; THENCE CONTINUING SOUTHEASTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 1200.00 FEET, AN ARC DISTANCE OF 378.45 FEET; THENCE SOUTH 03° 15' 22" EAST, 276.00 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

225.23 FEET; THENCE CONTINUING SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 300.00 FEET, AN ARC DISTANCE OF 157.08 FEET; THENCE SOUTH 48° 59' 38" WEST, 177.34 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE LEFT HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 468.54 FEET; THENCE SOUTH 02° 42' 30" WEST, 8.95 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 375.00 FEET, AN ARC DISTANCE OF 464.69 FEET; THENCE CONTINUING SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 800.00 FEET, AN ARC DISTANCE OF 265.29 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 1)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00' 12" EAST, 2,118.00 FEET ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 89° 59' 48" WEST, 60.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89° 59' 48" WEST, 60.51 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 320.25 FEET, A DISTANCE OF 117.62 FEET; THENCE SOUTH 68° 57' 37" WEST, 43.95 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 1,200.00 FEET, A DISTANCE OF 33.00 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 250.00 FEET, A DISTANCE OF 21.03 FEET; THENCE NORTH 68° 57' 37" EAST, 44.65 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 374.25 FEET, A DISTANCE OF 137.45 FEET; THENCE SOUTH 89° 59' 48" EAST, 60.51 FEET; THENCE SOUTH 00° 00' 12" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 2)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00' 12" EAST, 963.22 FEET; THENCE NORTH 89° 59' 48" WEST 60.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89° 59' 48" WEST, 144.15 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 190.70 FEET, A DISTANCE OF 163.06 FEET; THENCE NORTH 41° 00' 22" WEST, 41.70 FEET; THENCE NORTH 48° 59' 38" EAST, 54.00 FEET; THENCE SOUTH 41° 00' 22" EAST, 41.70 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 136.70 FEET, A DISTANCE OF 116.88 FEET; THENCE SOUTH 89° 59' 48" EAST, 144.15

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

FEET; THENCE SOUTH 00° 00' 12" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 3)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE SOUTH 87° 45' 19" WEST, 301.39 FEET; THENCE NORTH 47° 14' 41" WEST, 75.99 FEET TO THE POINT OF BEGINNING; THENCE NORTH 47° 14' 41" WEST, 67.27 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1,921.86 FEET, A DISTANCE OF 190.52 FEET; THENCE NORTH 41° 33' 53" WEST, 89.91 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 942.93 FEET, A DISTANCE OF 109.18 FEET; THENCE NORTH 48° 11' 57" WEST, 38.60 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 375.00 FEET, A DISTANCE OF 24.37 FEET; THENCE SOUTH 48° 11' 57" EAST, 42.83 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 966.93 FEET, A DISTANCE OF 111.96 FEET; THENCE SOUTH 41° 33' 53" EAST, 89.91 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 1,897.86 FEET, A DISTANCE OF 188.14 FEET; THENCE SOUTH 47° 14' 41" EAST, 86.91 FEET; THENCE SOUTH 82° 02' 41" WEST, 31.01 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 4)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE SOUTH 87° 45' 19" WEST, 1,327.42 FEET; THENCE NORTH 02° 14' 41" WEST, 50.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 02° 14' 41" WEST, 218.39 FEET; THENCE SOUTH 87° 17' 30" EAST, 54.20 FEET; THENCE SOUTH 02° 14' 41" EAST, 213.71 FEET; THENCE SOUTH 87° 45' 19" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (NEW ENTRANCE NO. 5)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00' 12" EAST, 2,656.54 FEET TO THE NORTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 88° 03' 39" WEST, 1,225.53 FEET; THENCE SOUTH 01° 56' 21" EAST, 40.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING SOUTH 01° 56' 21" EAST, 208.54

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 273.00 FEET, A DISTANCE OF 85.23 FEET; THENCE SOUTH 19° 49' 33" EAST, 69.38 FEET; THENCE SOUTH 70° 10' 27" WEST, 54.00 FEET; THENCE NORTH 19° 49' 33" WEST, 69.38 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 327.00 FEET, A DISTANCE OF 102.08 FEET; THENCE NORTH 01° 56' 21" WEST, 208.54 FEET; THENCE NORTH 88° 03' 39" EAST, 54.00 FEET TO THE POINT OF BEGINNING, A PART OF WHICH IS LOCATED IN WEST RIDGE MALL SUBDIVISION NO. 5.

EXCEPT THE FOLLOWING DESCRIBED TRACT (MERCANTILE TRACT):

PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, BEING A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 1300.42 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 02° 14' 41" WEST, 301.10 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 87° 17' 30" EAST, 138.83 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 765.00 FEET, A DISTANCE OF 253.68 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 340.00 FEET, A DISTANCE OF 421.32 FEET; THENCE NORTH 02° 42' 30" EAST, 8.95 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 615.00 FEET, A DISTANCE OF 70.13 FEET; THENCE NORTH 60° 59' 48" WEST, 394.70 FEET; THENCE NORTH 15° 59' 48" WEST, 45.83 FEET; THENCE SOUTH 74° 00' 12" WEST, 348.16 FEET; THENCE SOUTH 15° 59' 48" EAST, 263.00 FEET; THENCE SOUTH 74° 00' 12" WEST, 472.12 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 545.00 FEET, A DISTANCE OF 411.58 FEET; THENCE SOUTH 87° 17' 30" EAST, 66.42 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (DILLARD TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,548.58 FEET; THENCE NORTH 74° 00' 12"

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

EAST, 515.00 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 170.92 FEET; THENCE NORTH 74° 00' 12" EAST, 127.83 FEET; THENCE NORTH 15° 59' 48" WEST, 254.42 FEET; THENCE NORTH 74° 00' 12" EAST, 496.76 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 215.00 FEET, A DISTANCE OF 112.37 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1,165.00 FEET, A DISTANCE OF 367.41 FEET; THENCE SOUTH 03° 15' 22" EAST, 276.00 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 545.00 FEET, A DISTANCE OF 211.64 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 265.00 FEET, A DISTANCE OF 70.75 FEET; THENCE NORTH 60° 59' 48" WEST, 525.26 FEET; THENCE NORTH 15° 59' 48" WEST, 55.82 FEET; THENCE SOUTH 74° 00' 12" WEST, 63.55 FEET; THENCE NORTH 15° 59' 48" WEST, 113.33 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (PENNEY TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15' EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, AND PART OF LOT 2, BLOCK "A", WEST RIDGE MALL SUBDIVISION NO. 3, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,215.58 FEET; THENCE NORTH 74° 00' 12" EAST, 98.00 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 218.00 FEET; THENCE NORTH 74° 00' 12" EAST, 365.00 FEET; THENCE SOUTH 60° 59' 48" EAST, 120.00 FEET; THENCE NORTH 29° 00' 12" EAST, 43.42 FEET; THENCE SOUTH 60° 59' 48" EAST, 560.39 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 300.00 FEET, A DISTANCE OF 80.22 FEET; THENCE SOUTH 48° 59' 38" WEST, 33.24 FEET; THENCE SOUTH 41° 00' 22" EAST, 41.70 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 136.70 FEET, A DISTANCE OF 116.88 FEET; THENCE SOUTH 89° 59' 48" EAST, 144.15 FEET; THENCE SOUTH 0° 00' 12" WEST, 27.00 FEET; THENCE NORTH 89° 59' 48" WEST, 144.15 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 163.70 FEET, A DISTANCE OF 139.97 FEET; THENCE NORTH 41° 00' 22" WEST, 76.70 FEET; THENCE SOUTH 48° 59' 38" WEST, 117.10 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 615.00 FEET, A DISTANCE OF 267.57 FEET; THENCE NORTH 60° 59' 48" WEST, 515.78

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

FEET; THENCE NORTH 15° 59' 48" WEST, 115.63 FEET; THENCE SOUTH 74° 00' 12" WEST, 58.58 FEET, TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (SEARS TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS; AND ALSO BEING A PART OF LOT 1, BLOCK "A"; WEST RIDGE MALL SUBDIVISION, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,605.62 FEET; THENCE NORTH 74° 00' 12" EAST, 52.79 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 63.50 FEET; THENCE SOUTH 74° 00' 12" WEST, 15.00 FEET; THENCE NORTH 15° 59' 48" WEST, 60.00 FEET; THENCE SOUTH 74° 00' 12" WEST, 64.18 FEET; THENCE NORTH 60° 59' 48" WEST, 424.39 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 365.00 FEET, AN ARC DISTANCE OF 311.81 FEET WITH A CHORD WHICH BEARS NORTH 45° 42' 03" EAST, 302.42 FEET; THENCE NORTH 70° 10' 27" EAST, 518.19 FEET; THENCE SOUTH 15° 59' 48" EAST, 470.62 FEET; THENCE SOUTH 74° 00' 12" WEST, 115.70 FEET; THENCE SOUTH 15° 59' 48" EAST, 150.96 FEET; THENCE SOUTH 74° 00' 12" WEST, 288.33 FEET TO THE POINT OF BEGINNING.

PARCEL II--EASEMENTS:

THE RECIPROCAL AND NON-EXCLUSIVE RIGHTS, EASEMENTS AND PRIVILEGES OF USE, INGRESS AND EGRESS, PARKING AND FOR UTILITY, ENCROACHMENT AND OTHER PURPOSES CREATED AND GRANTED AS A BENEFIT FOR AND AN APPURTENANCE TO PARCEL I, CONSTITUTING RIGHTS AND REAL PROPERTY, ABOVE AS DESCRIBED IN THE FOLLOWING AGREEMENTS:

1. INGRESS AND EGRESS EASEMENTS UNDER THE TERMS AND PROVISIONS OF ACCESS EASEMENT AGREEMENT BY AND BETWEEN CROWN CINEMA CORPORATION AND SIMON PROPERTY GROUP, L.P., D/B/A SIMON REAL ESTATE GROUP LIMITED PARTNERSHIP AND TOPEKA MALL ASSOCIATES, L.P., AN INDIANA LIMITED PARTNERSHIP, DATED FEBRUARY 9, 1996 AND RECORDED IN BOOK 3020, PAGE 129, IN SHAWNEE COUNTY, KANSAS.

2. RECIPROCAL AND NON-EXCLUSIVE EASEMENT RIGHTS UNDER THE TERMS AND PROVISIONS OF RECIPROCAL EASEMENT

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

AND OPERATING AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., CONSTRUCTION DEVELOPERS, INC., DILLARD DEPARTMENT STORES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED SEPTEMBER 16, 1988 AND RECORDED OCTOBER 27, 1988 IN BOOK 2504, PAGE 164; AMENDED IN FIRST AMENDMENT TO RECIPROCAL EASEMENT AND OPERATING AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 969; AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 6, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 584; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511; AND FURTHER ASSIGNED IN ASSIGNMENT AND ASSUMPTION OF OPERATING AGREEMENT, DATED FEBRUARY 2, 1996 AND RECORDED IN BOOK 3019, PAGE 243, ALL IN SHAWNEE COUNTY, KANSAS.

3.   RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF OPERATING AND EASEMENT AGREEMENT BY AND BETWEEN TOPEKA MALL COMPANY, L.P., AN INDIANA LIMITED PARTNERSHIP, MERCANTILE PROPERTIES, INC., A DELAWARE CORPORATION, THE JONES STORE CO., A DELAWARE CORPORATION, AND TOPEKA MALL ASSOCIATES, L.P., AN INDIANA LIMITED PARTNERSHIP, DATED APRIL 17, 1987 AND RECORDED MAY 4, 1987 IN BOOK 2413, PAGE 741; AMENDED IN FIRST AMENDMENT TO OPERATING AND EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 947; AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 19, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 560; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY KANSAS.

4.   RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., J.C. PENNEY PROPERTIES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED NOVEMBER 7, 1988 AND RECORDED

## EXHIBIT A

## LEGAL DESCRIPTION (continued)

DECEMBER 30, 1988 IN BOOK 2515, PAGE 109; AMENDED IN FIRST AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 933; AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL AGREEMENT, DATED NOVEMBER 11, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 538; AND ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511. AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251 ALL IN SHAWNEE COUNTY, KANSAS.

5.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT RIGHTS UNDER TIE-IN AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., CONSTRUCTION DEVELOPERS, INC., DILLARD DEPARTMENT STORES, INC., MERCANTILE PROPERTIES, INC., THE JONES' STORE CO., J.C. PENNEY PROPERTIES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED NOVEMBER 7, 1988 AND RECORDED DECEMBER 30, 1988 IN BOOK 2515, PAGE 246; AMENDED IN FIRST TIE-IN AGREEMENT, DATED MARCH 21, 1990 AND RECORDED FEBRUARY 18, 1991 IN BOOK 2638, PAGE 129; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511; AND FURTHER ASSIGNED IN ASSIGNMENT AND ASSUMPTION OF OPERATING AGREEMENT, DATED FEBRUARY 2, 1996 AND RECORDED IN BOOK 3019, PAGE 243, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

6.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., SEARS, ROEBUCK AND CO., AND TOPEKA MALL ASSOCIATES, L.P., DATED MARCH 21, 1990 AND RECORDED FEBRUARY 18, 1991 IN BOOK 2638, PAGE 4, AND AMENDED IN FIRST AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 927, AND

## EXHIBIT A

### LEGAL DESCRIPTION (continued)

FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 9, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 516; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

## IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

| | |
|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF COMM 2014-CCRE16 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS- MORTGAGE PASS-THROUGH THROUGH- CERTIFICATES,** | **Case No. 2019-CV0000341**<br><br>**Division Two**<br><br>**TITLE TO REAL ESTATE INVOLVED** |
| Plaintiff, | |
| v. | |
| **WEST RIDGE MALL, LLC, et al.** | |
| Defendants. | |

## CONSENT JOURNAL ENTRY CONFIRMING SHERIFF'S SALE

**COMES NOW** before the Court whether to confirm the Sheriff's sale held on December 10, 2019. The underlying Judgment entered in this case was *in rem*, no deficiency judgment is sought as part of the Motion seeking confirmation, and Defendant consents. The Court, having examined the Sheriff's Return and the pleadings, motions, notices and Orders on file in this case, does hereby APPROVE and CONFIRM the Sheriff's sale and each and all proceedings taken in connection therewith.

**IT IS HEREBY ORDERED** that the Court confirms the Sheriff's sale held on December 10, 2019 of the following described property:

**WEST RIDGE PLAZA PROPERTY**:

TRACT 1:

LOT 1, BLOCK A IN WEST RIDGE PLAZA SUBDIVISION, SHAWNEE COUNTY, KANSAS, EXCEPT THAT PART PLATTED AS WEST RIDGE PLAZA SUBDIVISION NO. 2.

AND EXCEPT: THAT PART OF TRACT 1 LYING WITHIN THE

FOLLOWING DESCRIBED TRACT: A TRACT OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 1; THENCE SOUTH 01 DEGREES 58 MINUTES 56 SECONDS EAST, 482.66 FEET ALONG THE EAST LINE OF SAID LOT 1; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 139.13 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 75.29 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 120.00 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 17.92 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 110.00 FEET; THENCE SOUTH 44 DEGREES 04 MINUTES 00 SECONDS WEST, 30.62 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 430.85 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 38.03 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 239.74 FEET TO A POINT ON THE WEST LINE OF SAID LOT 1; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 26.00 FEET ALONG SAID WEST LINE OF LOT 1; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 224.24 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 40.00 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 134.50 FEET, A DISTANCE OF 76.13 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 165.50 FEET, A DISTANCE OF 93.66 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 207.96 FEET TO A POINT ON THE NORTH LINE OF SAID LOT 1; THENCE NORTH 88 DEGREES 01 MINUTES 30 SECONDS EAST, 781.64 FEET ALONG SAID NORTH LINE OF LOT 1 TO THE POINT OF BEGINNING.

AND EXCEPT: A TRACT OF LAND IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, DESCRIBED AS FOLLOWS; COMMENCING AT THE SOUTHWEST CORNER OF SAID LOT 1, BLOCK A; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 46.79 FEET ALONG THE WEST LINE OF SAID LOT 1; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 67.25 FEET TO THE POINT OF BEGINNING; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 220.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 43.33 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 10.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 81.33 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 10.00 FEET: THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 71.33 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS

2

EAST, 183.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 50.00 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 37.00 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 246.00 FEET TO THE POINT OF BEGINNING.

ALSO DESCRIBED AS: THAT PART OF A TRACT OF LAND IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION DESCRIBED AS FOLLOWS: REFERRING TO THE SOUTHWEST CORNER OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, A FOUND PIN; THENCE NORTHERLY, NORTH 00 DEGREES 29 MINUTES 23 SECONDS EAST, 46.95 FEET; THENCE SOUTH 89 DEGREES 31 MINUTES 08 SECONDS EAST, 67.02 FEET TO THE SOUTHWEST CORNER OF AN EXISTING BUILDING, SAID POINT BEING THE POINT OF BEGINNING; THENCE FOLLOWING THE EXISTING BUILDING LINE ON THE FOLLOWING DESCRIBED COURSES: THENCE NORTHERLY, NORTH 00 DEGREES 33 MINUTES 16 SECONDS EAST, 220.53 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 43.30 FEET; THENCE NORTHERLY, NORTH 00 DEGREES 28 MINUTES 06 SECONDS EAST, 10.00 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 81.59 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 28 MINUTES 06 SECONDS WEST, 10.00 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 71.24 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 33 MINUTES 27 SECONDS WEST, 183.48 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 08 SECONDS EAST, 50.04 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 39 MINUTES 53 SECONDS WEST, 37.10 FEET; THENCE WESTERLY, NORTH 89 DEGREES 31 MINUTES 08 SECONDS WEST, 246.09 FEET TO THE TRUE POINT OF BEGINNING.

ALSO: NON EXCLUSIVE EASEMENTS AND INGRESS-EGRESS, PARKING AND SUCH OTHER PURPOSES AS SET OUT IN OPERATION AND EASEMENT AGREEMENT BETWEEN DAYTON HUDSON CORPORATION AND TOPEKA SIMON, INC., RECORDED IN BOOK 2433 PAGE 207.

TRACT 2:

LOT 1, BLOCK A, IN WEST RIDGE PLAZA SUBDIVISION NO. 2, SHAWNEE COUNTY, KANSAS.

**WEST RIDGE MALL PROPERTY:**

PARCEL I- FEE SIMPLE:

PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, AND PART OF LOTS 1 AND 2, BLOCK "A", WEST RIDGE MALL SUBDIVISION NO. 3, BEING A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., IN THE CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER, 1165.12 FEET; THENCE NORTH 02° 14' 41" WEST, 254.32 FEET TO THE POINT OF BEGINNING; THENCE NORTH 87° 17' 30" WEST, 205.26 FEET; THENCE NORTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 455.53 FEET; THENCE CONTINUING NORTHWESTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 300.00 FEET, AN ARC DISTANCE OF 222.35 FEET; THENCE NORTH 00° 10' 27" EAST, 1083.52 FEET; THENCE NORTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 400.00 FEET, AN ARC DISTANCE OF 488.69 FEET; THENCE NORTH 70° 10' 27" EAST, 620.69 FEET; THENCE NORTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 500.00 FEET, AN ARC DISTANCE OF 235.62 FEET; THENCE SOUTH 82° 49' 33" EAST, 288.00 FEET; THENCE SOUTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 250.00 FEET, AN ARC DISTANCE OF 268.34 FEET; THENCE CONTINUING SOUTHEASTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 1200.00 FEET, AN ARC DISTANCE OF 378.45 FEET; THENCE SOUTH 03° 15' 22" EAST, 276.00 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 225.23 FEET; THENCE CONTINUING SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 300.00 FEET, AN ARC DISTANCE OF 157.08 FEET; THENCE SOUTH 48° 59' 38" WEST, 177.34 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE LEFT HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 468.54 FEET; THENCE SOUTH 02° 42' 30" WEST, 8.95 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 375.00 FEET, AN ARC DISTANCE OF 464.69 FEET; THENCE CONTINUING SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 800.00 FEET, AN ARC DISTANCE OF 265.29 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 1)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00'

12" EAST, 2,118.00 FEET ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 89° 59' 48" WEST, 60.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89° 59' 48" WEST, 60.51 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 320.25 FEET, A DISTANCE OF 117.62 FEET; THENCE SOUTH 68° 57' 37" WEST, 43.95 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 1,200.00 FEET, A DISTANCE OF 33.00 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 250.00 FEET, A DISTANCE OF 21.03 FEET; THENCE NORTH 68° 57' 37" EAST, 44.65 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 374.25 FEET, A DISTANCE OF 137.45 FEET; THENCE SOUTH 89° 59' 48" EAST, 60.51 FEET; THENCE SOUTH 00° 00' 12" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 2)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00' 12" EAST, 963.22 FEET; THENCE NORTH 89° 59' 48" WEST 60.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89° 59' 48" WEST, 144.15 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 190.70 FEET, A DISTANCE OF 163.06 FEET; THENCE NORTH 41° 00' 22" WEST, 41.70 FEET; THENCE NORTH 48° 59' 38" EAST, 54.00 FEET; THENCE SOUTH 41° 00' 22" EAST, 41.70 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 136.70 FEET, A DISTANCE OF 116.88 FEET; THENCE SOUTH 89° 59' 48" EAST, 144.15 FEET; THENCE SOUTH 00° 00' 12" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 3)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE SOUTH 87° 45' 19" WEST, 301.39 FEET; THENCE NORTH 47° 14' 41" WEST, 75.99 FEET TO THE POINT OF BEGINNING; THENCE NORTH 47° 14' 41" WEST, 67.27 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1,921.86 FEET, A DISTANCE OF 190.52 FEET; THENCE NORTH 41° 33' 53" WEST, 89.91 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 942.93 FEET, A DISTANCE OF 109.18 FEET; THENCE NORTH 48° 11' 57" WEST, 38.60 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 375.00 FEET, A DISTANCE OF 24.37 FEET; THENCE SOUTH 48° 11' 57" EAST, 42.83 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 966.93 FEET, A DISTANCE OF 111.96 FEET; THENCE SOUTH 41° 33' 53" EAST, 89.91

5

FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 1,897.86 FEET, A DISTANCE OF 188.14 FEET; THENCE SOUTH 47° 14' 41" EAST, 86.91 FEET; THENCE SOUTH 82° 02' 41" WEST, 31.01 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 4)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE SOUTH 87° 45' 19" WEST, 1,327.42 FEET; THENCE NORTH 02° 14' 41" WEST, 50.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 02° 14' 41" WEST, 218.39 FEET; THENCE SOUTH 87° 17' 30" EAST, 54.20 FEET; THENCE SOUTH 02° 14' 41" EAST, 213.71 FEET; THENCE SOUTH 87° 45' 19" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (NEW ENTRANCE NO. 5)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00' 12" EAST, 2,656.54 FEET TO THE NORTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 88° 03' 39" WEST, 1,225.53 FEET; THENCE SOUTH 01° 56' 21" EAST, 40.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING SOUTH 01° 56' 21" EAST, 208.54 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 273.00 FEET, A DISTANCE OF 85.23 FEET; THENCE SOUTH 19° 49' 33" EAST, 69.38 FEET; THENCE SOUTH 70° 10' 27" WEST, 54.00 FEET; THENCE NORTH 19° 49' 33" WEST, 69.38 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 327.00 FEET, A DISTANCE OF 102.08 FEET; THENCE NORTH 01° 56' 21" WEST, 208.54 FEET; THENCE NORTH 88° 03' 39" EAST, 54.00 FEET TO THE POINT OF BEGINNING, A PART OF WHICH IS LOCATED IN WEST RIDGE MALL SUBDIVISION NO. 5.

EXCEPT THE FOLLOWING DESCRIBED TRACT (MERCANTILE TRACT):

PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, BEING A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 1300.42 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 02° 14' 41" WEST, 301.10 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 87° 17' 30" EAST, 138.83 FEET; THENCE ALONG A CURVE TO THE LEFT

6

HAVING A RADIUS OF 765.00 FEET, A DISTANCE OF 253.68 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 340.00 FEET, A DISTANCE OF 421.32 FEET; THENCE NORTH 02° 42' 30" EAST, 8.95 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 615.00 FEET, A DISTANCE OF 70.13 FEET; THENCE NORTH 60° 59' 48" WEST, 394.70 FEET; THENCE NORTH 15° 59' 48" WEST, 45.83 FEET; THENCE SOUTH 74° 00' 12" WEST, 348.16 FEET; THENCE SOUTH 15° 59' 48" EAST, 263.00 FEET; THENCE SOUTH 74° 00' 12" WEST, 472.12 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 545.00 FEET, A DISTANCE OF 411.58 FEET; THENCE SOUTH 87° 17' 30" EAST, 66.42 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (DILLARD TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,548.58 FEET; THENCE NORTH 74° 00' 12" EAST, 515.00 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 170.92 FEET; THENCE NORTH 74° 00' 12" EAST, 127.83 FEET; THENCE NORTH 15° 59' 48" WEST, 254.42 FEET; THENCE NORTH 74° 00' 12" EAST, 496.76 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 215.00 FEET, A DISTANCE OF 112.37 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1,165.00 FEET, A DISTANCE OF 367.41 FEET; THENCE SOUTH 03° 15' 22" EAST, 276.00 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 545.00 FEET, A DISTANCE OF 211.64 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 265.00 FEET, A DISTANCE OF 70.75 FEET; THENCE NORTH 60° 59' 48" WEST, 525.26 FEET; THENCE NORTH 15° 59' 48" WEST, 55.82 FEET; THENCE SOUTH 74° 00' 12" WEST, 63.55 FEET; THENCE NORTH 15° 59' 48" WEST, 113.33 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (PENNEY TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, AND PART OF LOT 2, BLOCK "A", WEST RIDGE MALL SUBDIVISION NO. 3,

US_Active\113749587\V-1

DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,215.58 FEET; THENCE NORTH 74° 00' 12" EAST, 98.00 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 218.00 FEET; THENCE NORTH 74° 00' 12" EAST, 365.00 FEET; THENCE SOUTH 60° 59' 48" EAST, 120.00 FEET; THENCE NORTH 29° 00' 12" EAST, 43.42 FEET; THENCE SOUTH 60° 59' 48" EAST, 560.39 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 300.00 FEET, A DISTANCE OF 80.22 FEET; THENCE SOUTH 48° 59' 38" WEST, 33.24 FEET; THENCE SOUTH 41° 00' 22" EAST, 41.70 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 136.70 FEET, A DISTANCE OF 116.88 FEET; THENCE SOUTH 89° 59' 48" EAST, 144.15 FEET; THENCE SOUTH 0° 00' 12" WEST, 27.00 FEET; THENCE NORTH 89° 59' 48" WEST, 144.15 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 163.70 FEET, A DISTANCE OF 139.97 FEET; THENCE NORTH 41° 00' 22" WEST, 76.70 FEET; THENCE SOUTH 48° 59' 38" WEST, 117.10 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 615.00 FEET, A DISTANCE OF 267.57 FEET; THENCE NORTH 60° 59' 48" WEST, 515.78 FEET; THENCE NORTH 15° 59' 48" WEST, 115.63 FEET; THENCE SOUTH 74° 00' 12" WEST, 58.58 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (SEARS TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS; AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,605.62 FEET; THENCE NORTH 74° 00' 12" EAST, 52.79 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 63.50 FEET; THENCE SOUTH 74° 00' 12" WEST, 15.00 FEET; THENCE NORTH 15° 59' 48" WEST, 60.00 FEET; THENCE SOUTH 74° 00' 12" WEST, 64.18 FEET; THENCE NORTH 60° 59' 48" WEST, 424.39 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 365.00 FEET, AN ARC DISTANCE OF 311.81 FEET WITH A CHORD WHICH BEARS NORTH 45° 42' 03" EAST, 302.42 FEET; THENCE NORTH 70° 10' 27" EAST, 518.19 FEET; THENCE SOUTH 15° 59' 48" EAST, 470.62 FEET; THENCE SOUTH 74° 00' 12" WEST, 115.70 FEET; THENCE SOUTH 15° 59' 48" EAST, 130.96 FEET; THENCE SOUTH 74° 00' 12" WEST, 288.33 FEET TO THE POINT OF BEGINNING.

8

PARCEL II- EASEMENTS:

THE RECIPROCAL AND NON-EXCLUSIVE RIGHTS, EASEMENTS AND PRIVILEGES OF USE, INGRESS AND EGRESS, PARKING AND FOR UTILITY, ENCROACHMENT AND OTHER PURPOSES CREATED AND GRANTED AS A BENEFIT FOR AND AN APPURTENANCE TO PARCEL I, CONSTITUTING RIGHTS AND REAL PROPERTY, ABOVE AS DESCRIBED IN THE FOLLOWING AGREEMENTS:

1.    INGRESS AND EGRESS EASEMENTS UNDER THE TERMS AND PROVISIONS OF ACCESS EASEMENT AGREEMENT BY AND BETWEEN CROWN CINEMA CORPORATION AND SIMON PROPERTY GROUP, L.P., D/B/A SIMON REAL ESTATE GROUP LIMITED PARTNERSHIP AND TOPEKA MALL ASSOCIATES, L.P., AN INDIANA LIMITED PARTNERSHIP, DATED FEBRUARY 9, 1996 AND RECORDED IN BOOK 3020, PAGE 129, IN SHAWNEE COUNTY, KANSAS.

2.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT RIGHTS UNDER THE TERMS AND PROVISIONS OF RECIPROCAL EASEMENT AND OPERATING AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., CONSTRUCTION DEVELOPERS, INC., DILLARD DEPARTMENT STORES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED SEPTEMBER 16, 1988 AND RECORDED OCTOBER 27, 1988 IN BOOK 2504, PAGE 164; AMENDED IN FIRST AMENDMENT TO RECIPROCAL EASEMENT AND OPERATING AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 969; AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 6, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 584; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511; AND FURTHER ASSIGNED IN ASSIGNMENT AND ASSUMPTION OF OPERATING AGREEMENT, DATED FEBRUARY 2, 1996 AND RECORDED IN BOOK 3019, PAGE 243, ALL IN SHAWNEE COUNTY, KANSAS.

3.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF OPERATING AND EASEMENT AGREEMENT BY AND BETWEEN TOPEKA MALL COMPANY, L.P., AN INDIANA LIMITED PARTNERSHIP, MERCANTILE PROPERTIES, INC., A DELAWARE CORPORATION, THE JONES STORE CO., A DELAWARE CORPORATION, AND TOPEKA MALL ASSOCIATES, L.P., AN INDIANA LIMITED PARTNERSHIP, DATED APRIL 17, 1987 AND RECORDED MAY 4, 1987 IN BOOK 2413, PAGE 741; AMENDED IN FIRST AMENDMENT TO OPERATING AND EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 947;

9

AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 19, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 560; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

4.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., J.C. PENNEY PROPERTIES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED NOVEMBER 7, 1988 AND RECORDED DECEMBER 30, 1988 IN BOOK 2515, PAGE 109: AMENDED IN FIRST AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 933; AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL AGREEMENT, DATED NOVEMBER 11, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 538; AND ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251 ALL IN SHAWNEE COUNTY, KANSAS.

5.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT RIGHTS UNDER TIE-IN AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., CONSTRUCTION DEVELOPERS, INC., DILLARD DEPARTMENT STORES, INC., MERCANTILE PROPERTIES, INC., THE JONES STORE CO., J.C. PENNEY PROPERTIES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED NOVEMBER 7, 1988 AND RECORDED DECEMBER 30, 1988 IN BOOK 2515, PAGE 246; AMENDED IN FIRST TIE-IN AGREEMENT, DATED MARCH 21, 1990 AND RECORDED FEBRUARY 18, 1991 IN BOOK 2638, PAGE 129; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511; AND FURTHER ASSIGNED IN ASSIGNMENT AND ASSUMPTION OF OPERATING AGREEMENT, DATED FEBRUARY 2, 1996 AND RECORDED IN BOOK 3019, PAGE 243, AND AS ASSIGNED

10

US_Active\113749587\V-1

BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

6.     RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., SEARS, ROEBUCK AND CO., AND TOPEKA MALL ASSOCIATES, L.P., DATED MARCH 21, 1990 AND RECORDED FEBRUARY 18, 1991 IN BOOK 2638, PAGE 4, AND AMENDED IN FIRST AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 927, AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 9, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 516; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

together with all property located on or connected with the real property and as further described in the Mortgage (collectively, the "Property").

**IT IS FURTHER ORDERED** that such sheriff's sale and all proceedings taken in connection therewith were made in all respects according to the law and the Orders of this Court, and this confirmation order is entered in accordance with K.S.A. §§ 60-2410(e) and 60-2415(a). The Clerk of this Court is directed to make an entry on the journal of this Court that the Court so finds.

**IT IS FURTHER ORDERED** that the purchase price of $ 27,120,000.00 shall be credited against the *in rem* Judgment, and no *in personam* deficiency judgment is hereby ordered.

US_Active\113749587\V-1

**IT IS FURTHER ORDERED** that no right of redemption exists, and the Sheriff of Shawnee County, Kansas shall deliver a good and sufficient Sheriff's Deed conveying the Property to COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC.  The Receiver shall turnover the Property to the purchaser except to the extent necessary to close the receivership estate.

**IT IS SO ORDERED.**


Prepared and submitted by:

DENTONS US LLP

/s/ Robert A. Hammeke
Robert A. Hammeke, KS Bar #19707
4520 Main Street, Suite 1100
Kansas City, MO 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
robert.hammeke@dentons.com

ATTORNEYS FOR PLAINTIFF

US_Active\113749587\V-1

After recording return to:

Robert A. Hammeke
Dentons US LLP
4520 Main Street, Suite 1100
Kansas City, MO 64111

Exempt document pursuant to K.S.A. 79-1437c (a)(10)

---

### SHERIFF'S DEED

## KNOW ALL MEN BY THESE PRESENTS:

THAT WHEREAS, on October 7, 2019, as amended on November 6, 2019, in the District Court of Shawnee County, Kansas, in a certain action then pending in said Court, Case No. 2019-CV-0000341, wherein the Plaintiff/Judgment Creditor WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF COMM 2014-CCRE16 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, acting by and through LNR Partners, LLC, its special servicer ("Plaintiff") received a judgment against WEST RIDGE MALL, LLC., *et al.* ("Defendants") for foreclosure of Plaintiff's mortgage and security interests and an *in rem* judgment relating to amounts secured by said mortgage; and

WHEREAS, it was then and there in said action, by said Court, further considered, ordered and adjudged that the real property and related property interests hereinafter described was charged with the payment of said judgment and costs, and that on and after the sale thereof by the Sheriff of Shawnee County, Kansas, in satisfaction of said judgment and costs, and upon the expiration of any redemption period provided by law, the Defendants therein shall be forever barred and restrained from claiming any right, title, interest, estate, equity or lien in, or equity of redemption in or to said real property and related property interests hereinafter described or any part thereof; and

WHEREAS, afterward, an Order of Sale was issued by the Court, upon and in pursuance of said judgment, directed to the Sheriff of Shawnee County, Kansas, commanding him to cause the real property and related property interests hereinafter described to be advertised and sold according to law, and from the proceeds thereof to pay said money to the Clerk of the District Court, and that the Sheriff, make due return of said order to said Court as herein set out with his proceedings endorsed thereon; and

WHEREAS, the Order of Sale was duly delivered to and received by said Sheriff, and the Sheriff, by virtue thereof then advertised said real property and related property interests for sale by giving notice of the time and place of said sale in *The Topeka Metro News*, and that the same was sold in Room B11 of the Shawnee County Courthouse, 200 SE 7th Street, Topeka, Shawnee County, Kansas, on December 10, 2019, at 10:00 a.m., to Plaintiff's assignee, COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC, who entered the highest and best bid of Twenty-Seven Million One Hundred Twenty Thousand and 00/100 ($27,120,000.00) (the "Purchase Price") at the sale; and

WHEREAS, afterwards the said order with the proceedings of said Sheriff were returned into said Court, and by Order dated December 10, 2019, the said Court, after having examined the proceedings of said Sheriff, and being satisfied that said sale had been made in all respects in conformity to law, it was ordered and adjudged by the Court that said proceedings be in all respects confirmed; and

WHEREAS, the Defendants have waived their right to redeem the real property and no right of redemption was ordered by the Court.

WHEREAS, it was further ordered that COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC shall be entitled to a good and sufficient Sheriff's Deed for said real property and related property interests, which shall be issued by said Sheriff to COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC upon request without further order of the Court; and

WHEREAS, the purchaser, COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC, has paid the Purchase Price in full, and it has been applied as directed, and said purchaser, COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC, has all rights, title and interest in and to the real property and related property interests hereinafter described; and

NOW, THEREFORE, I, the undersigned Sheriff of Shawnee County, Kansas, in consideration of the premises, and by virtue of the powers in me vested, do hereby Give, Grant, Sell and Convey, unto COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC, and its successors and assigns forever, which has a mailing address of c/o LNR Partners, LLC, 1601 Washington Avenue, Suite 700, Miami Beach, Florida 33139, the lands and tenements and related property interests so sold as aforesaid, and situated in Shawnee County, Kansas, and described as follows, to-wit:

## WEST RIDGE PLAZA PROPERTY:

TRACT 1:

LOT 1, BLOCK A IN WEST RIDGE PLAZA SUBDIVISION, SHAWNEE COUNTY, KANSAS, EXCEPT THAT PART PLATTED AS WEST RIDGE PLAZA SUBDIVISION NO. 2.

AND EXCEPT: THAT PART OF TRACT 1 LYING WITHIN THE FOLLOWING DESCRIBED TRACT: A TRACT OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH,

- 2 -

RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 1; THENCE SOUTH 01 DEGREES 58 MINUTES 56 SECONDS EAST, 482.66 FEET ALONG THE EAST LINE OF SAID LOT 1; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 139.13 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 75.29 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 120.00 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 17.92 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 110.00 FEET; THENCE SOUTH 44 DEGREES 04 MINUTES 00 SECONDS WEST, 30.62 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 430.85 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 38.03 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 239.74 FEET TO A POINT ON THE WEST LINE OF SAID LOT 1; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 26.00 FEET ALONG SAID WEST LINE OF LOT 1; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 224.24 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 40.00 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 134.50 FEET, A DISTANCE OF 76.13 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 165.50 FEET, A DISTANCE OF 93.66 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 207.96 FEET TO A POINT ON THE NORTH LINE OF SAID LOT 1; THENCE NORTH 88 DEGREES 01 MINUTES 30 SECONDS EAST, 781.64 FEET ALONG SAID NORTH LINE OF LOT 1 TO THE POINT OF BEGINNING.

AND EXCEPT: A TRACT OF LAND IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, DESCRIBED AS FOLLOWS; COMMENCING AT THE SOUTHWEST CORNER OF SAID LOT 1, BLOCK A; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 46.79 FEET ALONG THE WEST LINE OF SAID LOT 1; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 67.25 FEET TO THE POINT OF BEGINNING; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 220.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 43.33 FEET; THENCE NORTH 00 DEGREES 56 MINUTES 00 SECONDS WEST, 10.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 81.33 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 10.00 FEET: THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 71.33 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES 00 SECONDS EAST, 183.00 FEET; THENCE NORTH 89 DEGREES 04 MINUTES 00 SECONDS EAST, 50.00 FEET; THENCE SOUTH 00 DEGREES 56 MINUTES

- 3 -

00 SECONDS EAST, 37.00 FEET; THENCE SOUTH 89 DEGREES 04 MINUTES 00 SECONDS WEST, 246.00 FEET TO THE POINT OF BEGINNING.

ALSO DESCRIBED AS: THAT PART OF A TRACT OF LAND IN THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, ALSO BEING A PART OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION DESCRIBED AS FOLLOWS: REFERRING TO THE SOUTHWEST CORNER OF LOT 1, BLOCK A, WEST RIDGE PLAZA SUBDIVISION, A FOUND PIN; THENCE NORTHERLY, NORTH 00 DEGREES 29 MINUTES 23 SECONDS EAST, 46.95 FEET; THENCE SOUTH 89 DEGREES 31 MINUTES 08 SECONDS EAST, 67.02 FEET TO THE SOUTHWEST CORNER OF AN EXISTING BUILDING, SAID POINT BEING THE POINT OF BEGINNING; THENCE FOLLOWING THE EXISTING BUILDING LINE ON THE FOLLOWING DESCRIBED COURSES: THENCE NORTHERLY, NORTH 00 DEGREES 33 MINUTES 16 SECONDS EAST, 220.53 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 43.30 FEET; THENCE NORTHERLY, NORTH 00 DEGREES 28 MINUTES 06 SECONDS EAST, 10.00 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 81.59 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 28 MINUTES 06 SECONDS WEST, 10.00 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 54 SECONDS EAST, 71.24 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 33 MINUTES 27 SECONDS WEST, 183.48 FEET; THENCE EASTERLY, SOUTH 89 DEGREES 31 MINUTES 08 SECONDS EAST, 50.04 FEET; THENCE SOUTHERLY, SOUTH 00 DEGREES 39 MINUTES 53 SECONDS WEST, 37.10 FEET; THENCE WESTERLY, NORTH 89 DEGREES 31 MINUTES 08 SECONDS WEST, 246.09 FEET TO THE TRUE POINT OF BEGINNING.

ALSO: NON EXCLUSIVE EASEMENTS AND INGRESS-EGRESS, PARKING AND SUCH OTHER PURPOSES AS SET OUT IN OPERATION AND EASEMENT AGREEMENT BETWEEN DAYTON HUDSON CORPORATION AND TOPEKA SIMON, INC., RECORDED IN BOOK 2433 PAGE 207.

TRACT 2:

LOT 1, BLOCK A, IN WEST RIDGE PLAZA SUBDIVISION NO. 2, SHAWNEE COUNTY, KANSAS.

- 4 -

## WEST RIDGE MALL PROPERTY:

PARCEL I- FEE SIMPLE:

PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, AND PART OF LOTS 1 AND 2, BLOCK "A", WEST RIDGE MALL SUBDIVISION NO. 3, BEING A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., IN THE CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER, 1165.12 FEET; THENCE NORTH 02° 14' 41" WEST, 254.32 FEET TO THE POINT OF BEGINNING; THENCE NORTH 87° 17' 30" WEST, 205.26 FEET; THENCE NORTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 455.53 FEET; THENCE CONTINUING NORTHWESTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 300.00 FEET, AN ARC DISTANCE OF 222.35 FEET; THENCE NORTH 00° 10' 27" EAST, 1083.52 FEET; THENCE NORTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 400.00 FEET, AN ARC DISTANCE OF 488.69 FEET; THENCE NORTH 70° 10' 27" EAST, 620.69 FEET; THENCE NORTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 500.00 FEET, AN ARC DISTANCE OF 235.62 FEET; THENCE SOUTH 82° 49' 33" EAST, 288.00 FEET; THENCE SOUTHEASTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 250.00 FEET, AN ARC DISTANCE OF 268.34 FEET; THENCE CONTINUING SOUTHEASTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 1200.00 FEET, AN ARC DISTANCE OF 378.45 FEET; THENCE SOUTH 03° 15' 22" EAST, 276.00 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 225.23 FEET; THENCE CONTINUING SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 300.00 FEET, AN ARC DISTANCE OF 157.08 FEET; THENCE SOUTH 48° 59' 38" WEST, 177.34 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE LEFT HAVING A RADIUS OF 580.00 FEET, AN ARC DISTANCE OF 468.54 FEET; THENCE SOUTH 02° 42' 30" WEST, 8.95 FEET; THENCE SOUTHWESTERLY ON A CURVE TO THE RIGHT HAVING A RADIUS OF 375.00 FEET, AN ARC DISTANCE OF 464.69 FEET; THENCE CONTINUING SOUTHWESTERLY ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 800.00 FEET, AN ARC DISTANCE OF 265.29 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 1)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00'

- 5 -

12" EAST, 2,118.00 FEET ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 89° 59' 48" WEST, 60.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89° 59' 48" WEST, 60.51 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 320.25 FEET, A DISTANCE OF 117.62 FEET; THENCE SOUTH 68° 57' 37" WEST, 43.95 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 1,200.00 FEET, A DISTANCE OF 33.00 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 250.00 FEET, A DISTANCE OF 21.03 FEET; THENCE NORTH 68° 57' 37" EAST, 44.65 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 374.25 FEET, A DISTANCE OF 137.45 FEET; THENCE SOUTH 89° 59' 48" EAST, 60.51 FEET; THENCE SOUTH 00° 00' 12" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 2)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00' 12" EAST, 963.22 FEET; THENCE NORTH 89° 59' 48" WEST 60.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89° 59' 48" WEST, 144.15 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 190.70 FEET, A DISTANCE OF 163.06 FEET; THENCE NORTH 41° 00' 22" WEST, 41.70 FEET; THENCE NORTH 48° 59' 38" EAST, 54.00 FEET; THENCE SOUTH 41° 00' 22" EAST, 41.70 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 136.70 FEET, A DISTANCE OF 116.88 FEET; THENCE SOUTH 89° 59' 48" EAST, 144.15 FEET; THENCE SOUTH 00° 00' 12" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 3)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE SOUTH 87° 45' 19" WEST, 301.39 FEET; THENCE NORTH 47° 14' 41" WEST, 75.99 FEET TO THE POINT OF BEGINNING; THENCE NORTH 47° 14' 41" WEST, 67.27 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1,921.86 FEET, A DISTANCE OF 190.52 FEET; THENCE NORTH 41° 33' 53" WEST, 89.91 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 942.93 FEET, A DISTANCE OF 109.18 FEET; THENCE NORTH 48° 11' 57" WEST, 38.60 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 375.00 FEET, A DISTANCE OF 24.37 FEET; THENCE SOUTH 48° 11' 57" EAST, 42.83 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 966.93 FEET, A DISTANCE OF 111.96 FEET; THENCE SOUTH 41° 33' 53" EAST, 89.91

- 6 -

FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 1,897.86 FEET, A DISTANCE OF 188.14 FEET; THENCE SOUTH 47° 14' 41" EAST, 86.91 FEET; THENCE SOUTH 82° 02' 41" WEST, 31.01 FEET TO THE POINT OF BEGINNING.

ALSO (ENTRANCE NO. 4)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, IN SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE SOUTH 87° 45' 19" WEST, 1,327.42 FEET; THENCE NORTH 02° 14' 41" WEST, 50.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 02° 14' 41" WEST, 218.39 FEET; THENCE SOUTH 87° 17' 30" EAST, 54.20 FEET; THENCE SOUTH 02° 14' 41" EAST, 213.71 FEET; THENCE SOUTH 87° 45' 19" WEST, 54.00 FEET TO THE POINT OF BEGINNING.

ALSO (NEW ENTRANCE NO. 5)

COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., SHAWNEE COUNTY, KANSAS; THENCE NORTH 00° 00' 12" EAST, 2,656.54 FEET TO THE NORTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 88° 03' 39" WEST, 1,225.53 FEET; THENCE SOUTH 01° 56' 21" EAST, 40.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING SOUTH 01° 56' 21" EAST, 208.54 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 273.00 FEET, A DISTANCE OF 85.23 FEET; THENCE SOUTH 19° 49' 33" EAST, 69.38 FEET; THENCE SOUTH 70° 10' 27" WEST, 54.00 FEET; THENCE NORTH 19° 49' 33" WEST, 69.38 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 327.00 FEET, A DISTANCE OF 102.08 FEET; THENCE NORTH 01° 56' 21" WEST, 208.54 FEET; THENCE NORTH 88° 03' 39" EAST, 54.00 FEET TO THE POINT OF BEGINNING, A PART OF WHICH IS LOCATED IN WEST RIDGE MALL SUBDIVISION NO. 5.

EXCEPT THE FOLLOWING DESCRIBED TRACT (MERCANTILE TRACT):

PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, BEING A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 1300.42 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 02° 14' 41" WEST, 301.10 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 87° 17' 30" EAST, 138.83 FEET; THENCE ALONG A CURVE TO THE LEFT

- 7 -

HAVING A RADIUS OF 765.00 FEET, A DISTANCE OF 253.68 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 340.00 FEET, A DISTANCE OF 421.32 FEET; THENCE NORTH 02° 42' 30" EAST, 8.95 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 615.00 FEET, A DISTANCE OF 70.13 FEET; THENCE NORTH 60° 59' 48" WEST, 394.70 FEET; THENCE NORTH 15° 59' 48" WEST, 45.83 FEET; THENCE SOUTH 74° 00' 12" WEST, 348.16 FEET; THENCE SOUTH 15° 59' 48" EAST, 263.00 FEET; THENCE SOUTH 74° 00' 12" WEST, 472.12 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 545.00 FEET, A DISTANCE OF 411.58 FEET; THENCE SOUTH 87° 17' 30" EAST, 66.42 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (DILLARD TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,548.58 FEET; THENCE NORTH 74° 00' 12" EAST, 515.00 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 170.92 FEET; THENCE NORTH 74° 00' 12" EAST, 127.83 FEET; THENCE NORTH 15° 59' 48" WEST, 254.42 FEET; THENCE NORTH 74° 00' 12" EAST, 496.76 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 215.00 FEET, A DISTANCE OF 112.37 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1,165.00 FEET, A DISTANCE OF 367.41 FEET; THENCE SOUTH 03° 15' 22" EAST, 276.00 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 545.00 FEET, A DISTANCE OF 211.64 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 265.00 FEET, A DISTANCE OF 70.75 FEET; THENCE NORTH 60° 59' 48" WEST, 525.26 FEET; THENCE NORTH 15° 59' 48" WEST, 55.82 FEET; THENCE SOUTH 74° 00' 12" WEST, 63.55 FEET; THENCE NORTH 15° 59' 48" WEST, 113.33 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (PENNEY TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, AND PART OF LOT 2, BLOCK "A", WEST RIDGE MALL SUBDIVISION NO. 3,

DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,215.58 FEET; THENCE NORTH 74° 00' 12" EAST, 98.00 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 218.00 FEET; THENCE NORTH 74° 00' 12" EAST, 365.00 FEET; THENCE SOUTH 60° 59' 48" EAST, 120.00 FEET; THENCE NORTH 29° 00' 12" EAST, 43.42 FEET; THENCE SOUTH 60° 59' 48" EAST, 560.39 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 300.00 FEET, A DISTANCE OF 80.22 FEET; THENCE SOUTH 48° 59' 38" WEST, 33.24 FEET; THENCE SOUTH 41° 00' 22" EAST, 41.70 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 136.70 FEET, A DISTANCE OF 116.88 FEET; THENCE SOUTH 89° 59' 48" EAST, 144.15 FEET; THENCE SOUTH 0° 00' 12" WEST, 27.00 FEET; THENCE NORTH 89° 59' 48" WEST, 144.15 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 163.70 FEET, A DISTANCE OF 139.97 FEET; THENCE NORTH 41° 00' 22" WEST, 76.70 FEET; THENCE SOUTH 48° 59' 38" WEST, 117.10 FEET; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 615.00 FEET, A DISTANCE OF 267.57 FEET; THENCE NORTH 60° 59' 48" WEST, 515.78 FEET; THENCE NORTH 15° 59' 48" WEST, 115.63 FEET; THENCE SOUTH 74° 00' 12" WEST, 58.58 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE FOLLOWING DESCRIBED TRACT (SEARS TRACT):

A TRACT OF LAND IN THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 12 SOUTH, RANGE 15 EAST OF THE 6TH P.M., CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS; AND ALSO BEING A PART OF LOT 1, BLOCK "A", WEST RIDGE MALL SUBDIVISION, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER; THENCE SOUTH 87° 45' 19" WEST, 923.54 FEET ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 15° 59' 48" WEST, 1,605.62 FEET; THENCE NORTH 74° 00' 12" EAST, 52.79 FEET TO THE POINT OF BEGINNING; THENCE NORTH 15° 59' 48" WEST, 63.50 FEET; THENCE SOUTH 74° 00' 12" WEST, 15.00 FEET; THENCE NORTH 15° 59' 48" WEST, 60.00 FEET; THENCE SOUTH 74° 00' 12" WEST, 64.18 FEET; THENCE NORTH 60° 59' 48" WEST, 424.39 FEET; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 365.00 FEET, AN ARC DISTANCE OF 311.81 FEET WITH A CHORD WHICH BEARS NORTH 45° 42' 03" EAST, 302.42 FEET; THENCE NORTH 70° 10' 27" EAST, 518.19 FEET; THENCE SOUTH 15° 59' 48" EAST, 470.62 FEET; THENCE SOUTH 74° 00' 12" WEST, 115.70 FEET; THENCE SOUTH 15° 59' 48" EAST, 130.96 FEET; THENCE SOUTH 74° 00' 12" WEST, 288.33 FEET TO THE POINT OF BEGINNING.

-9-

PARCEL II- EASEMENTS:

THE RECIPROCAL AND NON-EXCLUSIVE RIGHTS, EASEMENTS AND PRIVILEGES OF USE, INGRESS AND EGRESS, PARKING AND FOR UTILITY, ENCROACHMENT AND OTHER PURPOSES CREATED AND GRANTED AS A BENEFIT FOR AND AN APPURTENANCE TO PARCEL I, CONSTITUTING RIGHTS AND REAL PROPERTY, ABOVE AS DESCRIBED IN THE FOLLOWING AGREEMENTS:

1.       INGRESS AND EGRESS EASEMENTS UNDER THE TERMS AND PROVISIONS OF ACCESS EASEMENT AGREEMENT BY AND BETWEEN CROWN CINEMA CORPORATION AND SIMON PROPERTY GROUP, L.P., D/B/A SIMON REAL ESTATE GROUP LIMITED PARTNERSHIP AND TOPEKA MALL ASSOCIATES, L.P., AN INDIANA LIMITED PARTNERSHIP, DATED FEBRUARY 9, 1996 AND RECORDED IN BOOK 3020, PAGE 129, IN SHAWNEE COUNTY, KANSAS.

2.       RECIPROCAL AND NON-EXCLUSIVE EASEMENT RIGHTS UNDER THE TERMS AND PROVISIONS OF RECIPROCAL EASEMENT AND OPERATING AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., CONSTRUCTION DEVELOPERS, INC., DILLARD DEPARTMENT STORES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED SEPTEMBER 16, 1988 AND RECORDED OCTOBER 27, 1988 IN BOOK 2504, PAGE 164; AMENDED IN FIRST AMENDMENT TO RECIPROCAL EASEMENT AND OPERATING AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 969; AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 6, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 584; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511; AND FURTHER ASSIGNED IN ASSIGNMENT AND ASSUMPTION OF OPERATING AGREEMENT, DATED FEBRUARY 2, 1996 AND RECORDED IN BOOK 3019, PAGE 243, ALL IN SHAWNEE COUNTY, KANSAS.

3.       RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF OPERATING AND EASEMENT AGREEMENT BY AND BETWEEN TOPEKA MALL COMPANY, L.P., AN INDIANA LIMITED PARTNERSHIP, MERCANTILE PROPERTIES, INC., A DELAWARE CORPORATION, THE JONES STORE CO., A DELAWARE CORPORATION, AND TOPEKA MALL ASSOCIATES, L.P., AN INDIANA LIMITED PARTNERSHIP, DATED APRIL 17, 1987 AND RECORDED MAY 4, 1987 IN BOOK 2413, PAGE 741; AMENDED IN FIRST AMENDMENT TO OPERATING AND EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 947;

106988157\V-2
US_Active\113749582\V-1

AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 19, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 560; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

4.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., J.C. PENNEY PROPERTIES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED NOVEMBER 7, 1988 AND RECORDED DECEMBER 30, 1988 IN BOOK 2515, PAGE 109: AMENDED IN FIRST AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 933; AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL AGREEMENT, DATED NOVEMBER 11, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 538; AND ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251 ALL IN SHAWNEE COUNTY, KANSAS.

5.    RECIPROCAL AND NON-EXCLUSIVE EASEMENT RIGHTS UNDER TIE-IN AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., CONSTRUCTION DEVELOPERS, INC., DILLARD DEPARTMENT STORES, INC., MERCANTILE PROPERTIES, INC., THE JONES STORE CO., J.C. PENNEY PROPERTIES, INC., AND TOPEKA MALL ASSOCIATES, L.P., DATED NOVEMBER 7, 1988 AND RECORDED DECEMBER 30, 1988 IN BOOK 2515, PAGE 246; AMENDED IN FIRST TIE-IN AGREEMENT, DATED MARCH 21, 1990 AND RECORDED FEBRUARY 18, 1991 IN BOOK 2638, PAGE 129; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511; AND FURTHER ASSIGNED IN ASSIGNMENT AND ASSUMPTION OF OPERATING AGREEMENT, DATED FEBRUARY 2, 1996 AND RECORDED IN BOOK 3019, PAGE 243, AND AS ASSIGNED

- 11 -

BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

6.      RECIPROCAL AND NON-EXCLUSIVE EASEMENT UNDER THE TERMS AND PROVISIONS OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT AMONG TOPEKA MALL COMPANY, L.P., SEARS, ROEBUCK AND CO., AND TOPEKA MALL ASSOCIATES, L.P., DATED MARCH 21, 1990 AND RECORDED FEBRUARY 18, 1991 IN BOOK 2638, PAGE 4, AND AMENDED IN FIRST AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 14, 1991 AND RECORDED FEBRUARY 28, 1992 IN BOOK 2704, PAGE 927, AND FURTHER AMENDED IN SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED NOVEMBER 9, 1992 AND RECORDED NOVEMBER 24, 1992 IN BOOK 2765, PAGE 516; ASSIGNMENT AND ASSUMPTION AGREEMENT, DATED DECEMBER 1, 1993 AND RECORDED DECEMBER 21, 1993 IN BOOK 2858, PAGE 511, AND AS ASSIGNED BY ASSIGNMENT OF OPERATING AGREEMENT FROM SIMON CAPITAL LIMITED PARTNERSHIP, A DELAWARE LIMITED PARTNERSHIP, TO WEST RIDGE MALL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DATED JUNE 30, 2004 AND RECORDED JULY 30, 2004 IN BOOK 4070, PAGE 251, ALL IN SHAWNEE COUNTY, KANSAS.

Together with all property located on or connected with the real property and as further described in the Mortgage.

TO HAVE AND TO HOLD THE SAME, unto COMM 2014-CCRE16 SW WANAMAKER ROAD, LLC, its successors and assigns, forever.

**(Remainder of Page Blank, Execution Page to Follow)**

- 12 -

IN TESTIMONY WHEREOF, I, the undersigned Sheriff of Shawnee County, Kansas, have hereunto set my hand this ___ day of December, 2019.

SHERIFF OF SHAWNEE COUNTY, KANSAS



STATE OF KANSAS    )
            ) ss
COUNTY OF SHAWNEE   )

  BE IT REMEMBERED, that on December 18, 2019, before me, the undersigned, a notary public in and for the county aforesaid, came the above-identified person, who is personally known to me to be the same person who executed the foregoing instrument and such person duly acknowledged the execution of the same in the capacity as above-identified on behalf of the Sheriff of Shawnee County, Kansas.

  IN TESTIMONY WHEREOF, I have hereunto subscribed my name and official seal on the day and year last above written.

           _Deborah A. Wells_
           Notary Public

           _DeBorAH A. Wells_
           Print Name of Notary Public

My Appointment Expires:

01/04/2022 DAW

**This instrument prepared by:**

Robert A. Hammeke, KS Bar #19707
DENTONS US LLP
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Phone: (816) 460-2400
Fax: (816) 531-7545
robert.hammeke@dentons.com

Deborah A. Wells
NOTARY PUBLIC - STATE OF KANSAS
MY APPT EXP. 1-4-2022

- 13 -

Attorney for Plaintiff

1069981157\V-2
US_Active\113749582\V-1